ROBBINS GELLER RUDMAN
  & DOWD LLP
DAVID C. WALTON (167268)
BRIAN E. COCHRAN (286202)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
davew@rgrdlaw.com
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
FRANK J. JOHNSON (174882)
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone: 619/230-0063
619/255-1856 (fax)
frankj@johnsonfistel.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUNG KYAW SOE, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>PROGENITY, INC., HARRY STYLLI, ERIC D'ESPARBES, JEFFREY ALTER, JOHN BIGALKE, JEFFREY FERRELL, BRIAN L. KOTZIN, SAMUEL NUSSBAUM, LYNNE POWELL, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, RAYMOND JAMES & ASSOCIATES, INC. and BTIG, LLC<br><br>　　　　　　　Defendants. | Case No. **'20 CV1683 WQH AHG**<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933<br><br><br><br><br><br><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Aung Kyaw Soe ("plaintiff"), individually and on behalf of all others similarly situated, alleges the following based upon personal knowledge as to plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through counsel, which included, among other things, a review of the public Securities and Exchange Commission ("SEC") filings of Progenity, Inc. ("Progenity" or the "Company"), Company press releases, and analyst and media reports and other public reports and information regarding the Company. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, which evidence will be developed after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

1. The claims alleged herein arise under §§11 and 15 of the Securities Act of 1933 ("1933 Act") [15 U.S.C. §§77k and 77o]. This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act.

2. This Court has personal jurisdiction over each of defendants and venue is proper in this District. Progenity is headquartered in this District and defendants drafted the offering materials issued in connection with Progenity's initial public offering ("IPO") in part here, disseminated the misleading statements at issue here, and solicited stock purchasers here. The Underwriter Defendants (as defined below) also have substantial operations and/or conduct substantial business in California (directly or via agents), and represented Progenity and all or some of the other defendants in carrying out the IPO.

## NATURE OF THE ACTION

3. This is a securities class action on behalf of all purchasers of Progenity common stock pursuant and/or traceable to the registration statement, as amended, issued in connection with Progenity's June 2020 IPO (the "Registration Statement"), seeking to pursue remedies under the 1933 Act against Progenity, certain of its

officers and directors (the "Individual Defendants") and the underwriters of the IPO ("Underwriter Defendants") (collectively "defendants").

4. Progenity is a biotechnology company based in San Diego, California. It specializes in developing and commercializing molecular testing products and precision medicine applications. The Company provides *in vitro* molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis.

5. On or about June 22, 2020, defendants conducted Progenity's IPO. In the IPO, defendants sold over 6.6 million shares of Progenity common stock to the investing public at a price of $15 per share, generating over $100 million in gross offering proceeds.

6. The Registration Statement for the IPO was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make the necessary disclosures required under the rules and regulations governing its preparation. Specifically, the Registration Statement failed to disclose, *inter alia*, the following adverse facts that existed at the time of the IPO, rendering numerous statements provided therein materially false and misleading: (i) that Progenity had overbilled government payors by $10.3 million in 2019 and early 2020 and, thus, had materially overstated its revenues, earnings and cash flows from operations for the historical financial periods provided in the Registration Statement; (ii) that Progenity would need to refund this overpayment in the second quarter of 2020 (the same quarter in which the IPO was conducted), adversely impacting its quarterly results; and (iii) that Progenity was suffering from accelerating negative trends in the second quarter of 2020 with respect to the Company's testing volumes, revenues and product pricing.

7. Shortly after the IPO, the price of Progenity stock suffered significant price declines. By August 14, 2020, Progenity stock closed at just $7.71 per share –

nearly **50% below** the $15 per share price investors paid for the stock in the IPO less than two months previously. This action seeks to recover damages for Progenity investors.

## PARTIES

8. Plaintiff Aung Kyaw Soe purchased Progenity common stock pursuant and/or traceable to the Registration Statement and has been damaged thereby.

9. Defendant Progenity, Inc. is a biotechnology company based in San Diego, California. The Company's common stock trades on the NASDAQ under the ticker symbol "PROG."

10. Defendant Harry Stylli ("Stylli") served as Progenity's Chief Executive Officer ("CEO") and Chairman of the Progenity Board of Directors (the "Board") at the time of the IPO.

11. Defendant Eric d'Esparbes ("d Esparbes") served as Progenity's Chief Financial Officer ("CFO") at the time of the IPO.

12. Defendant Jeffrey Alter served as a member of the Board at the time of the IPO.

13. Defendant John Bigalke served as a member of the Board at the time of the IPO.

14. Defendant Jeffrey Ferrell served as a member of the Board at the time of the IPO.

15. Defendant Brian L. Kotzin served as a member of the Board at the time of the IPO.

16. Defendant Samuel Nussbaum served as a member of the Board at the time of the IPO.

17. Defendant Lynne Powell served as a member of the Board at the time of the IPO.

18. The defendants identified in ¶¶10-17 above are referred to herein as the "Individual Defendants. All of the Individual Defendants signed the Registration

Statement for the IPO. Each of the Individual Defendants also reviewed and helped prepare the Registration Statement and, as directors and/or executive officers of the Company, participated in the solicitation and sale of the Company's common stock to investors in the IPO for their own financial benefit and the financial benefit of Progenity.

19. Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc. and BTIG, LLC (the "Underwriter Defendants") served as underwriters for the IPO. Collectively, they sold more than 6.6 million Progenity shares in the IPO at $15 per share and shared $7 million in underwriting discounts and commissions. Their failure to conduct adequate due diligence in connection with the IPO and the preparation of the Registration Statement was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

**Progenity's Business**

20. Based in San Diego, California, Progenity is a biotechnology company focused on developing and commercializing molecular testing products and precision medicine applications. The Company provides *in vitro* molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis.

21. Since the Company's inception, it has accessioned 1.5 million diagnostic tests. Progenity claimed in the lead up to the IPO that its testing volume was accelerating and had positioned the Company to achieve continued growth in what it characterized as a $2.5 billion addressable market in the United States alone. Progenity emphasized to investors that it had achieved consistent year-over-year test volume growth since 2010 and was continuing to develop and commercialize new, innovative products related to prenatal care, pregnancy and molecular diagnostics. In 2015, Progenity launched both its Innatal Prenatal Screen, a Non-Invasive Prenatal Testing, or "NIPT," offering and its Preparent Carrier Test, followed by the launch of

its Riscover Hereditary Cancer Test in 2017. At the time of the IPO, the Company's product pipeline included a rule-out test for preeclampsia and a proprietary ingestible capsule to treat gastrointestinal disorders, among other diagnostic tools and treatments.

22. Beginning in April 2018, Progenity became the subject of various state and federal investigations into the Company's marketing, sales and billing practices, in particular regarding legacy billing practices for Progenity's NIPT and microdeletion tests and the provision of alleged kickbacks or inducements to physicians and patients.

23. In March 2020 – a few months before the IPO – Progenity claimed to have reached a settlement with respect to total monetary terms with various federal and state governmental entities to resolve allegations of wrongdoing by the Company and its agents. Progenity agreed to pay $49 million in the aggregate over a five-year period to resolve civil claims contemplated by the U.S. Attorney's Office for the Southern District of California, the U.S. Attorney's Office for the Southern District of New York, and various offices of state Attorneys General. In addition, the Company entered into a deferred prosecution agreement to avoid criminal penalties pursuant to which it agreed to enhance its compliance programs and reporting and disclosure policies and practices.

24. The fact that the Company had purportedly resolved the negative monetary impact of its improper billing practices prior to the IPO was of material importance to investors, as was the Company's ability to maintain its testing volume and revenue growth.

**Progenity's IPO**

25. Progenity filed the Registration Statement on Form S-1 with the SEC on May 27, 2020. Following several amendments, the Registration Statement was declared effective by the SEC on June 18, 2020. On June 22, 2020, the Company filed its final prospectus (which incorporated and formed part of the final Registration Statement) with the SEC on Form 424B4.

26. The Registration Statement was used to sell over 6.6 million shares of Progenity common stock to the investing public at a price of $15 per share, generating over $100 million in gross offering proceeds.

**The Materially Misleading Registration Statement**

27. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make necessary disclosures required under the rules and regulations governing their preparation.

28. For example, the Registration Statement failed to disclose that Progenity had overstated its revenues for 2019 and the first quarter of 2020 by more than $10 million because the Company had overbilled government payors during these periods. In addition, this overstatement of historical revenues consequently materially inflated the Company's profits and profit margins. Furthermore, because Progenity had overbilled government payors it was required to refund these payors, which had the effect of materially reducing the Company's revenues, profits and cash flows from operations by more than $10 million in the second quarter of 2020 – the *same quarter* in which defendants conducted the IPO. The Company provided the following materially inaccurate statements regarding its historical financial results in the Registration Statement in pertinent part as follows:

|  | Year Ended December 31, | | Three Months Ended March 31, | |
|---|---|---|---|---|
|  | 2018 | 2019 | 2019 | 2020 |
|  | (in thousands, except share and per share data) | | (in thousands, except share and per share data) (unaudited) | |
| Revenue | $ 127,974 | $ 143,985 | $ 47,507 | $ 16,828 |
| Cost of sales | 92,076 | 100,492 | 24,421 | 26,570 |
| Gross profit | 35,898 | 43,493 | 23,086 | (9,742) |
| Operating expenses: | | | | |
| Research and development | 48,712 | 63,400 | 15,248 | 11,240 |
| Selling and marketing | 50,187 | 58,888 | 15,567 | 14,436 |
| General and administrative | 51,238 | 61,324 | 14,278 | 17,108 |
| Total operating expenses | 150,137 | 183,612 | 45,093 | 42,784 |
| Loss from operations | (114,239) | (140,119) | (22,007) | (52,526) |
| Interest expense | (9,091) | (9,199) | (2,269) | (2,302) |
| Equity loss of equity method investee | (2,327) | — | — | — |
| Interest and other income, net | 1,801 | 575 | 257 | (20) |
| Loss before taxes | (123,856) | (148,743) | (24,019) | (54,848) |
| Income tax expense (benefit) | 5,250 | (706) | — | (37,696) |
| Net loss | $ (129,106) | $ (148,037) | $ (24,019) | $ (17,152) |
| Dividend paid to preferred stockholders | — | (3,652) | (3,652) | — |
| Stock dividend on exchange of Series A-1 for Series B Preferred Stock | — | (27,637) | — | — |
| Stock dividend on Series B Preferred Stock | — | (49,501) | — | — |
| Net loss attributable to common stockholders | $ (129,106) | $ (228,827) | $ (27,671) | $ (17,152) |
| Net loss per share attributable to common stockholders, basic and diluted | $ (27.72) | $ (46.87) | $ (5.88) | $ (3.43) |

29. The Registration Statement also highlighted the purported total monetary payment of $49 million that would be made in order to rectify the Company's past billing non-compliance and related alleged wrongdoing, without disclosing that Progenity had overbilled government payors an *additional* $10.3 million in 2019 and early 2020. Thus, the Registration Statement understated the negative hit to Progenity's cash flows as a result of its billing errors by at least 20%. The Registration Statement stated in pertinent part:

> On March 31, 2020, **we reached an agreement on the monetary terms** with the DOJ and the State of New York (with the State of New York Attorney General representing or facilitating the interests of all States participating in the settlement, which we refer to collectively as the State AGs) with respect to relevant government health benefit programs **to resolve all of the government's outstanding civil and criminal investigations**, including the investigations by the U.S. Attorney's Office for the Southern District of California and the U.S. Attorney's Office for the Southern District of New York, as well as the investigation by the State AGs. **The terms of this agreement in principle contemplate that we will enter into a civil settlement agreement providing that we will pay $49.0 million in the aggregate over a five-year period** . . . .

30. Moreover, the Registration Statement highlighted the "consistent year-over-year test volume growth" that Progenity had enjoyed in the years leading up to the IPO, despite the fact that, at the time of the IPO, the Company was suffering from a severe and accelerating downturn in the sales of its testing products and related revenues. The Registration Statement stated in pertinent part:

> **Since 2010, our molecular testing business has achieved consistent year-over-year test volume growth** through our robust product portfolio and our strong commercial organization. Our internal core competencies, deep research and development pipeline and strategic acquisitions of novel technologies have fueled our innovation in women's health, supporting the development and launch of complementary molecular testing products that inform critical healthcare decision-making across a woman's lifetime.

31.     While the Registration Statement acknowledged the declines in testing volumes that had impacted Progenity's business beginning in March 2020 as a result of the COVID-19 pandemic, the Registration Statement claimed that Progenity's business was "resilient" and had already "observed positive signs of recovery" at the time of the IPO.  These representations were materially false and misleading because they failed to disclose that Progenity was actually suffering ***accelerating*** sequential declines in its testing-related volumes during the second quarter of 2020 (at the end of which defendants conducted the IPO and issued the Registration Statement). Furthermore, Progenity was suffering an undisclosed 8% sequential decline in revenues (when factoring in various accruals), accelerating year-over-year revenue declines and deterioration in pricing for its products with long-term negative implications for the Company's revenues, profits and cash flows from operations.  The Registration Statement stated in pertinent part:

> Since our inception, we have accessioned approximately 1.5 million tests in the United States and the growth rate of our test volume [is] accelerating . . . . ***The figure below shows our test volume growth from 2016 through 2019, as well as the first quarter of 2020, in which quarter we observed volumes largely consistent with the fourth quarter of 2019 despite the challenges presented by the COVID-19 pandemic. We believe our business is resilient and we have observed positive signs of recovery so far***.



\* \* \*

Beginning in March 2020, we began to observe significant declines in the volumes of our molecular tests as well as the pathology tests conducted by Avero Diagnostics due to the impact of the COVID-19 pandemic and work-from-home policies and other operational limitations mandated by federal, state and local governments as a result of the pandemic. ***However, we believe our business is resilient and we have observed positive signs of recovery so far***. While we are implementing mitigation strategies to address these limitations, such as supporting patients and physicians virtually, there can be no assurance that the rate of decline in our testing volumes will not continue or accelerate in future periods. Our initial assessment of the impact of the COVID-19 pandemic is that our NIPT test volumes have proved more resilient than our carrier screening test volumes; however, the comparative impact may change over time.

32. These issues arose from circumstances existing before the IPO, which were known by defendants and were in fact quickly worsening at the time of the IPO the material adverse effects on the Company's business and financial results, yet defendants fail to disclose them to investors until after the IPO. In fact, the Registration Statement misleadingly presented "future" contingent risks without

disclosing the adverse material facts that had *already* occurred at the time of the IPO. For example, the Registration Statement stated in pertinent part:

> We have implemented compliance policies and procedures intended to train and monitor our sales, billing, marketing and other personnel. Our efforts to implement appropriate monitoring of such personnel are ongoing and we have experienced situations in which employees may have failed to fully adhere to our policies and applicable laws in the past. There can be no assurance that we will not experience similar issues *in the future*.

33. The undisclosed adverse facts and circumstances detailed above presented known trends, uncertainties and risks that required disclosure in the Registration Statement. Specifically, Item 303 of SEC Regulation S-K required the Company to disclose "any known trends or uncertainties that have had or that [Progenity] reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Moreover, Item 105 of Regulation S-K required disclosure in the Registration Statement of "the most significant factors that ma[d]e an investment in [the IPO] speculative or risky," and an explanation of "how the risk affect[ed] [Progenity] or the securities being offered." The Registration Statement failed to disclose material facts necessary to apprise common stock purchasers of the true risks inherent in investing in the Company.

34. On July 23, 2020, Progenity announced that it had reached a partial resolution with various government entities related to its past business, promotional and billing practices. Progenity entered into a non-prosecution agreement with the DOJ to avoid criminal charges in parallel with civil settlements. Progenity agreed to pay $35.8 million to settle federal claims and an additional $13.2 million to settle outstanding claims by various states Attorneys General, for a total of $49 million. Furthermore, Progenity agreed to enhance its internal controls and compliance programs to prevent further unlawful billing practices as part of a five year "corporate

1 integrity agreement" with the Office of Inspector General of the Department of Health
2 and Human Services.

3       35.    Then, on August 13, 2020, Progenity reported its financial and operating
4 results for the second quarter ended June 30, 2020 – the *same quarter* during which
5 defendants conducted the IPO. The Company reported deeply disappointing financial
6 results, including a dramatic slowdown in sales and ballooning losses. Progenity
7 generated only $17.3 million in consolidated revenues for the quarter, *70% below* the
8 prior year period. In addition, the Company's gross margin fell to negative 26.5% and
9 its net losses more than tripled year over year to $53.1 million.

10       36.    Also on August 13, 2020, Progenity held an earnings call to discuss the
11 Company's second quarter financial results. During the call, defendant Stylli,
12 Progenity's CEO and Chairman, stated that, despite the Company's recent settlement
13 with authorities regarding its billing practices and other issues, Progenity had failed to
14 properly bill the government over the preceding 18 months for goods and services
15 rendered. As a result, he stated that Progenity had received an overpayment of
16 approximately $10.3 million in 2019 and early 2020 from government payors that the
17 Company was required to refund. This amount was material to the Company's prior
18 financial results, representing nearly a *quarter* of Progenity's entire annual gross
19 profits for 2019. Furthermore, factoring in the Company's $10.3 million provision for
20 refunds taken during the second quarter and the $13.2 million settlement accrual taken
21 in the first quarter, the Company's consolidated revenues had actually *declined 8%* on
22 a sequential basis. During the question-and-answer portion of the call, defendant
23 Stylli confirmed that the $10.3 million accrual was entirely *separate* from the
24 Company's settlements with various government entities and thus represented a new,
25 previously undisclosed billing issue.

26       37.    Defendant d'Esparbes, Progenity's CFO, meanwhile stated that the
27 Company's average selling price, or "ASP," per test had suffered sustained declines
28 during the quarter. These declines were not only due to the $10.3 million refund

accrual, but also due to a deterioration in the Company's product mix towards lower cost items such as NIPT tests and as a consequence of Progenity's ongoing in-network transition, which offered lower average rates. The lower ASP for Progenity tests had materially impacted the Company's margins during the second quarter and at the time of the IPO and was expected to have a continuing negative impact on the Company's gross profit margins and cash flows from operations.

38. Progenity's stock price has declined significantly subsequent to the IPO. By August 14, 2020, Progenity stock closed at just $7.71 per share – nearly **50% below** the price investors paid for Progenity shares in the IPO less than two months previously.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action on behalf of all purchasers of Progenity common stock pursuant and/or traceable to the Registration Statement (the "Class"). Excluded from the Class are defendants and their families; the officers, directors and affiliates of defendants and members of their immediate families; the legal representatives, heirs, successors or assigns of any of the foregoing; and any entity in which any defendant has or had a controlling interest.

40. The members of the Class are so numerous that joinder is impracticable. Progenity common stock is actively traded on the NASDAQ and millions of shares were sold in the IPO. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through discovery, plaintiff believes there are hundreds, if not thousands, of members in the Class. Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

41. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

(a) whether defendants violated the 1933 Act, as alleged herein;

    (b)  whether the Registration Statement misrepresented and/or omitted material information in violation of the 1933 Act; and

    (c)  whether and to what extent Class members have sustained damages, as well as the proper measure of damages.

42.  Plaintiff's claims are typical of the claims of the Class, as all Class members were similarly affected by defendants' conduct.

43.  Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in securities class actions.

44.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it exceedingly difficult, if not impossible and impracticable, for Class members to individually redress the wrongs alleged. There will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

45.  Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

46.  This Count is brought under §11 of the 1933 Act [15 U.S.C. §77k], on behalf of the Class, against all defendants. This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §11, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

47.  The Registration Statement for the IPO contained inaccurate and misleading statements of material fact, omitted facts necessary to render statements therein non-misleading, and omitted to state material facts required to be stated therein.

48. Progenity is the registrant for the IPO. Defendants were responsible for the contents and dissemination of the Registration Statement. The Individual Defendants signed or authorized the signing of the Registration Statement on their behalves. The Underwriter Defendants marketed and underwrote the IPO and sold the Progenity stock issued in the IPO to plaintiff and the Class.

49. As the issuer of the shares, Progenity is strictly liable to plaintiff and the Class for the Registration Statement's material misstatements and omissions. Signatories of the Registration Statement, and possibly other defendants, may also be strictly liable to plaintiff and the Class for such material misstatements and omissions. None of the defendants made a reasonable investigation or possessed reasonable grounds to believe that the statements in the Registration Statement were complete, accurate or non-misleading.

50. By reason of the conduct alleged herein, defendants violated §11 of the 1933 Act. Plaintiff and the Class members purchased common stock pursuant and/or traceable to the Registration Statement and have sustained damages as a result. The value of the stock has declined substantially subsequent and due to defendants' violations. At the time of their purchases, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein.

51. Less than one year has elapsed from the time that plaintiff discovered, or reasonably could have discovered, the facts upon which these claims are based to the time that plaintiff filed this action. Less than three years has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this action.

## COUNT II

**For Violation of §15 of the 1933 Act
Against Progenity and the Individual Defendants**

52. Plaintiff repeats, incorporates, and realleges each and every allegation set forth above as if fully set forth herein.

53. This Count is brought under §15 of the 1933 Act [15 U.S.C. §77o], against Progenity and the Individual Defendants. This Count does not allege, and does not intend to allege, fraud or fraudulent intent, which is not a required element of §15, and any implication of fraud or fraudulent intent is hereby expressly disclaimed.

54. As detailed herein, each of defendants committed primary violations of the 1933 Act by committing conduct in contravention of §11 of the 1933 Act.

55. The Individual Defendants were each control persons of Progenity by virtue of their positions as directors, senior officers and/or significant shareholders of the Company. They each had direct and/or indirect business and/or personal relationships with other directors, officers and/or major shareholders of the Company. The Company also controlled the Individual Defendants, given the influence and control the Company possessed and exerted over the Individual Defendants and all of its employees.

56. By reason of the conduct alleged herein, these defendants violated §15 of the 1933 Act, and plaintiff and the Class have suffered harm as a result.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, individually and on behalf of the proposed Class, respectfully prays for judgment against defendants as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding plaintiff and the Class compensatory damages against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, together with prejudgment interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

      D.    Granting such other, further and/or different relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: August 28, 2020

ROBBINS GELLER RUDMAN
   &amp; DOWD LLP
DAVID C. WALTON
BRIAN E. COCHRAN

*s/ Brian E. Cochran*
BRIAN E. COCHRAN

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
davew@rgrdlaw.com
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
FRANK J. JOHNSON
655 West Broadway, Suite 1400
San Diego, CA 92101
Telephone:  619/230-0063
619/255-1856 (fax)
frankj@johnsonfistel.com

Attorneys for Plaintiff

# CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

AUNG KYAW SOE ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 28 day of August, 2020.

DocuSigned by:

AKS
F53740BDFFCF458... AUNG KYAW SOE

PROGENITY

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 06/22/2020 | 386 | $13.94 |

| Date Sold | Amount of Shares Sold | Price |
|---|---|---|
| 08/21/2020 | 78 | $9.55 |
| 08/21/2020 | 208 | $9.38 |
| 08/21/2020 | 100 | $9.39 |

Prices listed are rounded up to two decimal places.