**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

AUNG KYAW SOE, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PROGENITY, INC., HARRY STYLLI, ERIC D'ESPARBES, JEFFREY ALTER, JOHN BIGALKE, JEFFREY FERRELL, BRIAN L. KOTZIN, SAMUEL NUSSBAUM, LYNNE POWELL, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, ROBERT W. BAIRD & CO. INCORPORATED, RAYMOND JAMES & ASSOCIATES, INC., and BTIG, LLC,

Defendants.

Case No. 20-CV-01683-CAB-AHG

**ORDER CONSOLIDATING CASES, APPOINTING LEAD PLAINTIFF, AND APPOINTING CLASS COUNSEL**

[Doc. Nos. 23, 24, 25]

Plaintiff Aung Kyaw Soe (hereinafter "Plaintiff") brings this putative class action complaint (the "Complaint") alleging violations of the federal securities laws against Defendants Progenity, Inc.; Harry Stylli; Eric d'Esparbes; Jeffrey Alter; John Bigalke; Jeffrey Ferrell; Brian L. Kotzin; Samuel Nussbaum; Lynne Powell; Piper Sandler & Co.; Wells Fargo Securities, LLC; Robert W. Baird & Co. Incorporated;

Raymond James & Associates, Inc.; and BTIG, LLC (collectively, "Defendants"). [Doc. No. 1.][1]

On October 27, 2020, the following parties filed motions seeking consolidation, appointment as lead plaintiff, and approval of their respective selections to be lead counsel: Mohammed Abdul Wajid ("Abdul Wajid") [Doc. No. 23]; Phillip Matz [Doc. No. 24]; and Lin Shen, Lingjun Lin, and Fusheng Lin (together, the "Lin group") [Doc. No. 25] (the "Competing Motions").[2]

On November 17, 2020, the Lin group [Doc. No. 29] and Abdul Wajid [Doc. No. 30] filed oppositions to each other's Competing Motions. That same day, Defendants filed statements of non-opposition to all Competing Motions, advising that they did not oppose appointment of any lead plaintiff or the proposed consolidation and took no position as to the other relief requested in the Competing Motions. [Doc. Nos. 27, 28.] On November 24, 2020, the Lin group [Doc. No. 31] and Abdul Wajid [Doc. No. 32] filed replies in support of their respective motions.

The Court finds the Competing Motions appropriate for resolution without a hearing. After considering the papers filed in support of, and in opposition to, the Competing Motions, the Court **GRANTS** the Lin group's motion for lead plaintiff and appointment of counsel [Doc. No. 25], and **DENIES** both Abdul Wajid's and Matz's competing motions [Doc. Nos. 23 and 24], for the reasons outlined below. The Court also **GRANTS** the parties' requests to consolidate.

## I. BACKGROUND

Pursuant to the Complaint filed in this matter, Progenity is a biotechnology company based in San Diego, California that "specializes in developing and commercializing molecular testing products and precision medicine applications," including "*in vitro* molecular tests designed to assist parents in making informed

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.
[2] On November 17, 2020, Phillip Matz filed a Notice of Non-Opposition to Competing Motions. [Doc. No. 26.] Accordingly, "Competing Motions" refers to the motions filed by the Lin group and Abdul Wajid.

decisions related to family planning, pregnancy, and complex disease diagnosis." [Doc. No. 1 at p. 3, ¶ 4.] Plaintiff alleges that Progenity conducted its Initial Public Offering ("IPO") on June 22, 2020,[3] where Defendants sold over 6.6 million shares of Progenity common stock at a price of $15 per share, generating over $100 million in gross offering proceeds. [*Id.* at p. 3, ¶ 5.]

On August 28, 2020, Plaintiff filed the present class action lawsuit against Progenity, certain of its officers and directors, and the underwriters of its IPO, alleging violations of Sections 11 and 15 of the Securities Act of 1933. [*Id.*] Plaintiff represents a class of those who purchased Progenity common stock pursuant and/or traceable to Progenity's Registration Statement, issued in connection with its June 22, 2020 IPO. [*Id.* at p. 13, ¶ 39.] Plaintiff alleges that the Registration Statement contained untrue statements of material fact, omitted material facts, and failed to make the necessary disclosures required under the rules governing its preparation, thereby causing damage to the class. [*Id.* at p. 3, ¶ 6.] Plaintiff seeks to recover damages for Progenity investors. [*Id.* at p. 16.]

On September 11, 2020, Brickman Investments Inc. filed a substantially identical class action lawsuit against Progenity in this district, captioned *Brickman Investments Inc. v. Progenity, Inc., et al.*, Case No. 3:20-cv-01795 (the "*Brickman* action"). The complaint in the *Brickman* action alleges three counts for violations of Sections 11, 12, and 15 of the Securities Act of 1933, arising out of Progenity's issuance of the Registration Statement in connection with its June 22, 2020 IPO. [*Brickman* Doc. No. 1.] Abdul Wajid also filed a Motion to Consolidate Cases, Appoint Lead Plaintiff, and Appoint Lead Counsel in the *Brickman* action. [*Brickman* Doc. No. 10.] On November 24, 2020, the Court issued an Order of Transfer Pursuant to the "Low-Number" Rule, transferring the *Brickman* action to this Court's docket. [*Brickman* Doc. No. 16.]

[3] In his motion for appointment as lead plaintiff, Abdul Wajid contends that Progenity's IPO began on June 19, 2020. [Doc. No. 23-1 at p. 7 n.3.]

## II. REQUEST FOR CONSOLIDATION

Federal Rule of Civil Procedure 42(a) provides that "when actions involving common questions of law or fact are pending before the court, it . . . may order all the actions consolidated." FED. R. CIV. P. 42(a). The district court has "broad discretion under this rule to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S. Dist. Ct.*, 877 F.2d 777 (9th Cir. 1989). In determining whether consolidation is appropriate, the district court "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984) (subsequent history omitted). The purpose of consolidation is to avoid the unnecessary costs or delays that would ensue from proceeding separately with claims or issues sharing common aspects of law or fact. *EEOC v. HBE Corp.*, 135 F.3d 543, 550 (8th Cir. 1998).

Additionally, the Private Securities Litigation Reform Act ("PSLRA") directs that cases should be consolidated when more than one action is filed on behalf of a class asserting substantially the same claim or claims. *See In re Cendant Corp. Litig.*, 182 F.R.D. 476, 478 (D. N.J. 1998) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)). 15 U.S.C. § 78u-4(a)(3)(B)(ii) also requires that any motions for consolidation be decided first, and that "as soon as practicable" thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Here, there are two actions which plaintiffs wish to consolidate: *Soe v. Progenity, Inc.*, Case No. 3:20-cv-01683-CAB-AHG, and *Brickman Investments Inc. v. Progenity, Inc.*, Case No. 3:20-cv-01795-CAB-AHG. All parties moving for appointment as lead plaintiff support consolidation of these two cases. [Doc. No. 23 at p. 6; Doc No. 25-1 at p. 6.] Defendants have also indicated that they do not oppose consolidation. [Doc. Nos. 27, 28.] A review of the two complaints filed reveals that

both cases involve the same defendants, identical classes and factual allegations, and largely identical claims for violations of the Securities Act of 1933. Because both cases involve similar factual and legal issues surrounding the same alleged misconduct by Defendants, consolidation of the two cases would promote judicial economy. Accordingly, the Court **GRANTS** Abdul Wajid's and the Lin group's motions to consolidate. [Doc Nos. 23, 25.]

## III. APPOINTMENT OF LEAD PLAINTIFF

Under the PSLRA, the district court "shall appoint as lead plaintiff the member or members of the purported class that the court determines to be the most capable of adequately representing the interest of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group that: (1) either filed the complaint or brought the motion for appointment of lead plaintiff in response to the publication of notice, (2) has the "largest financial interest" in the relief sought by the class, and (3) otherwise satisfies the requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc). The presumption may be rebutted only upon proof by a purported class member that the presumptively most adequate plaintiff: (1) will not fairly and adequately protect the interests of the class or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

By its terms, the PSLRA "provides a simple three-step process for identifying the lead plaintiff" in a private securities class action litigation. *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002). "The first step consists of publicizing the pendency of the action, the claims made and the purported class period." *Id.* At the second step, "the district court must consider the losses allegedly suffered by the various plaintiffs," and select as the "presumptively most adequate plaintiff . . . the one who has the largest financial interest in the relief sought by the class and otherwise

satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 729–30 (internal citations omitted). Finally, at the third step, the district court must "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730.

**1. All Movants Met the PSLRA's Procedural Requirements**

Under the PSLRA, a plaintiff who files a securities litigation class action must provide notice to class members via publication in a widely-circulated national business-oriented publication or wire service within 20 days of filing the complaint. 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must: (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within 60 days of the date on which notice was published, any members of the purported class may move the court to serve as lead plaintiff in the purported class. 15 U.S.C. § 78u-4(a)(3)(A)(i)(I)–(II).

On August 28, 2020, Plaintiff published a notice of the instant securities class action in *Business Wire*, a widely circulated national business-oriented wire service. [Doc. Nos. 23-3, 25-3.] Plaintiff's notice was published the same day that the Complaint was filed, stating that:

> "Robbins Geller Rudman & Dowd LLP . . . today announced that it has filed a class action seeking to represent purchasers of Progenity, Inc. common stock pursuant and/or traceable to the registration statement . . . issued in connection with Progenity's June 2020 initial public offering ("IPO"). This action was filed in the Southern District of California and is captioned *Soe v. Progenity, Inc*."

[*Id.*] The Court finds that Plaintiff's notice met the requirements set forth in the PSLRA. Further, both Abdul Wajid and the Lin group timely moved for appointment as lead plaintiff by the October 27, 2020 deadline. [Doc Nos. 23, 25.] Thus, both candidates for lead plaintiff have met the PSLRA's procedural requirements.

/ / /

/ / /

**2. The Lin Group is the Most Adequate Lead Plaintiff**

As noted above, the Court must presume a plaintiff as the "most adequate plaintiff" if that candidate (1) either filed the complaint or made a motion in response to the early notice, (2) has the largest financial interest in the relief sought by the class, and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The PSLRA also "provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *Cavanaugh*, 306 F.3d at 732 (emphasis in original).

**a. Largest Financial Interest**

In determining which of the candidates for lead plaintiff has the largest financial interest, the Court must "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id.* at 730. In making this comparison and calculating each candidate's financial interest, the court "may select accounting methods that are both rational and consistently applied." *Id.* at 730 n.4.

Abdul Wajid alleges that he has the largest financial interest because he "lost $91,563.30 on his Progenity investments." [Doc. No. 30 at p. 5.] Abdul Wajid purchased 19,198 shares of Progenity stock from June 19–26, 2020 for a total cost of $250,846.30. [Doc. No. 23-5 at p. 2.] He then sold all his shares on July 1, 2020 for a net loss of $91,663.30 (of which $91,563.30 is available to recover under 15 U.S.C. § 77k(e)). [*Id.*] The Lin group also alleges that they have the largest financial interest with a combined loss of $18,540.00 on their Progenity investments. [Doc. No. 25-5 at p. 2.] Each member of the Lin group remains in possession of their collective 3,800 shares of Progenity stock. [*Id.*]

The Lin group does not dispute that Wajid's claimed loss makes him the plaintiff with largest financial interest in the relief sought by the class. [Doc. No. 29

at p. 5.] However, they argue that Wajid ultimately has no recoverable loss because the affirmative defense of negative causation applies to him. The Court finds that this argument is better addressed under its analysis of typicality below. Thus, based on his alleged loss of $91,563.30, it is easily ascertained that Abdul Wajid has the largest financial interest in this lawsuit.

**b. Rule 23(a) Requirements**

After determining which candidate has the largest financial stake in the controversy, the Court must then "focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Cavanaugh*, 306 F.3d at 730 (emphasis in original). If that candidate satisfies the requirements of typicality and adequacy, "he becomes the presumptively most adequate plaintiff." *Id.* However, if that plaintiff does not satisfy Rule 23(a)'s criteria, "the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* Because Abdul Wajid has the largest financial interest in this matter, the Court first analyzes whether he satisfies Rule 23(a)'s requirements of typicality and adequacy.

**i. Typicality**

Federal Rule of Civil Procedure 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotations omitted). Representative claims are "typical" if they are "reasonably co-extensive with those of absent class members," although "they need

not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). However, a plaintiff should not be appointed as class representative "if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotations omitted); *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (the presumption of most adequate plaintiff may be rebutted by proof that the person "is subject to unique defenses that render such plaintiff incapable of adequately representing the class.").

Abdul Wajid contends that his claims are typical because "[l]ike all class members, Mr. Abdul Wajid purchased Progenity common stock pursuant and/or traceable to Progenity's IPO at allegedly inflated prices and suffered damages as a result." [Doc. No. 23-1 at p. 13.] However, the Lin group argues that Abdul Wajid's claims for recovery are subject to a unique "negative causation" defense, thereby making his claims atypical of the putative class. [Doc. No. 31 at p. 7.] The Lin group maintains that because Abdul Wajid sold all his Progenity shares before any of the corrective disclosures alleged in the Complaint were made, he "cannot attribute the price decline that caused his loss to an alleged corrective disclosure," and thus Defendants will inevitably assert a negative causation defense to "eliminate Wajid's claim." [*Id.*] As a result, Abdul Wajid will spend "substantial energy defending his claim at the expense of the claims of other class members who held through at least one corrective disclosure." [*Id.*]

For claims brought under Section 11 of the Securities Act of 1933, "[t]he affirmative defense of negative causation prevents recovery for losses that the defendant proves are not attributable to the alleged misrepresentation or omission in the registration statement." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013). The defendant bears a "heavy burden" of proof on this defense, and must

show that the depreciation in value of a plaintiff's stock "resulted from factors other than the alleged material misstatement" in the defendant's registration statement. *Id.*; *see also* 15 U.S.C. § 77k(e). Generally, a defendant's misstatement "will not be deemed to have caused a loss if the shares at issue were sold before the defendant discloses its misleading statement." *In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1181 (N.D. Cal. 2017).

At this stage of the litigation, the Court need not determine whether a negative causation defense would be successful to defend against Abdul Wajid's claims. Such a fact-intensive analysis is "generally established by a defendant on a motion for summary judgment or at trial," rather than at the motion to appoint lead plaintiff stage. *See Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272-73 (S.D.N.Y. 2007); *see also In re Lyft Sec. Litig.*, No. 19-cv-02690-HSG, 2020 WL 1043628, at *6 (N.D. Cal. Mar. 4, 2020) ("[T]his is a highly fact-intensive affirmative defense, and the Court is not aware of any case in which a court has tried to definitively resolve its applicability at this stage of the proceedings."). Nevertheless, the Court may "consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." *Hanon*, 976 F.2d at 509.

The Court finds the fact that Abdul Wajid sold all his Progenity shares over three weeks before any of the alleged corrective disclosures were issued makes his claims atypical of the putative class. The Complaint alleges that Progenity publicly released new information regarding its financial position on July 23, 2020 and August 13, 2020, thereby revealing that the Registration Statement it previously issued was false or misleading. Abdul Wajid was not affected by any of these alleged corrective disclosures, as he was no longer a Progenity shareholder at the time such disclosures were made. He had sold his 19,198 shares and incurred his $91,563.30 loss weeks before Progenity released any updated financial data to the public. While Abdul

Wajid may still be entitled to recover his losses as a class member—and Defendants would carry a "heavy burden" to establish otherwise—his situation is distinct from the typical class member who seeks to recover losses sustained after the alleged corrections were disclosed to the market.

Having determined that Abdul Wajid does not satisfy Rule 23(a)'s criteria, the Court must then look at the moving party with the next largest financial stake in the matter—here, the Lin group. The Court finds that the Lin group's claims are typical of those of the putative class. In their motion, the Lin group contends that "[l]ike all members of the class, [the Lin group] purchased Progenity common stock pursuant to or traceable to the Registration Statement and suffered losses as a result of their transactions." [Doc. No. 25-1 at p. 9.] They allege that their damages, "like the losses suffered by all other members of the Class, arise from the artificial inflation of Progenity common stock caused by defendants' alleged misrepresentations and omissions." [*Id.* at p. 10.] Further, each member of the Lin group purchased their Progenity shares on June 19, 2020 (the IPO date) and maintained their ownership through all three alleged corrective disclosures and the filing of this lawsuit. [Doc. No. 25-5 at p. 2.] The Lin group's claims are therefore typical of other class members' claims.

**ii. Adequacy**

Federal Rule of Civil Procedure 23(a)(4) requires that the named plaintiff suing on behalf of a class fairly and adequately protect the interests of that class. The test for adequacy asks whether the lead plaintiff and his counsel "have any conflicts of interest with other class members" and whether they will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

Here, it appears that the Lin group's interests do not conflict with the interests of the putative class members. The Lin group's joint declaration demonstrates their commitment to prosecuting the class's claims, working with class counsel "to obtain

the largest possible recovery for the putative class in good faith and with vigorous advocacy," and providing fair and adequate representation to the class. [Doc. No. 25-6 at p. 5.] Further, the Lin group's selection of such experienced counsel as Glancy Prongay & Murray LLP suggests that they will adequately represent the class with its best interests in mind. Accordingly, the Court finds that the Lin group meets the requirements to be appointed lead plaintiff under Rule 23.

**3. Abdul Wajid Fails to Rebut the Presumption that the Lin Group Should be Appointed Lead Plaintiff**

Finally, the PSLRA requires that other plaintiffs be given an opportunity to present evidence rebutting the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. *See Cavanaugh*, 306 F.3d at 730. The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the court finds that the presumptive lead plaintiff does not meet the typicality or adequacy requirements, it must then look to the plaintiff with the next lower stake in the litigation, and then repeat this process "sequentially until all challenges have been exhausted." *Cavanaugh*, 306 F.3d at 731.

As discussed above, the Lin group successfully rebutted the presumption that Abdul Wajid is the most adequate lead plaintiff in this matter. However, Abdul Wajid failed to provide the Court with any meaningful evidence challenging the Lin group's typicality or adequacy. In his reply, Abdul Wajid claims that by acknowledging the possibility of a negative causation defense, the Lin group "effectively sells out the class by limiting its recoverable damages, just so it can claim the largest losses" and thereby "establishes its own inadequacy." [Doc. No. 32 at p. 6.] However, as Abdul Wajid points out throughout his reply, "this Court should not

presume that defendants will successfully establish their affirmative defense." [*Id.* at p. 11.] By showing why Abdul Wajid's claims are atypical, the Lin group has not done harm to the class—rather, they present evidence for the Court to consider in selecting the best plaintiff to adequately represent and serve the class. In sum, there is no evidence before this Court to rebut the presumption that the Lin group is the most adequate lead plaintiff and satisfies the requirements of Rule 23.

## IV. APPOINTMENT OF LEAD COUNSEL

The PSLRA provides that the lead plaintiff shall select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). In determining whether to approve a lead plaintiff's attorney as lead counsel, the court must consider:

> "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."

FED. R. CIV. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.* However, a court may disturb the lead plaintiff's choice of counsel only if "necessary to protect the interests of the plaintiff class." Statement of Manager—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also Cavanaugh*, 306 F.3d at 732-33 (noting that "the district court has no authority to select for the class what it considers to be the best possible lawyer," unless the named plaintiff's choice of counsel "is so irrational . . . [as to] cast[] doubt on his ability to handle the responsibilities of lead plaintiff."). In other words, "the district court should not reject a lead plaintiff's proposed counsel merely because it would have chosen differently." *Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 711 (9th Cir. 2009).

Here, Glancy Prongay & Murray LLP (GPM) satisfies the statutory requirements for lead class counsel and would fairly and adequately represent the class under Rule 23(g)(1)(A) and the PSLRA. GPM specializes in representing investors in nationwide class actions and has served as lead or co-lead counsel in numerous securities class actions that resulted in significant recoveries for class members. [Doc. No. 25-7, Firm Resume.] Because GPM appears competent to represent the class, the Court defers to the Lin group's choice and hereby approves GPM as Lead Counsel.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Lin group's motions for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel. [Doc. No. 25]. The Court **DENIES** both Abdul Wajid's and Matz's competing motions. [Doc. Nos. 23, 24.] The Court **ORDERS** as follows:

1. Pursuant to Federal Rule of Civil Procedure 42(a), *Soe v. Progenity, Inc.*, Case No. 3:20-cv-01683, and *Brickman Investments Inc. v. Progenity, Inc.*, Case No. 3:20-cv-01795, and all related actions are consolidated for all purposes (the "Consolidated Action"). This Order will apply to the Consolidated Action and to each case that relates to the same subject matter that is subsequently filed in this District or is transferred to this District, and is consolidated with the Consolidated Action.

2. A Master File is established for this proceeding. The Master File will be Case No. 3:20-cv-01683-CAB-AHG. The Clerk will file all pleadings in the Master File and note such filings on the Master Docket.

3. An original of this Order will be filed by the Clerk in the Master File.

4. The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

5. Every pleading in the Consolidated Action must have the following caption:

| IN RE PROGENITY, INC. SECURITIES LITIGATION | Case No. 20-cv-1683-CAB-AHG |
|---|---|

6. The Court requests the assistance of counsel in calling to the attention of the Clerk of this Court the filing or transfer of any case that may properly be consolidated as part of the Consolidated Action.

7. When a case that arises out of the same subject matter as the Consolidated Action is hereinafter filed in this Court or transferred from another court, the Clerk of this Court will:

a. File a copy of this Order in the separate file for such action; and

b. Make the appropriate entry in the Master Docket for the Consolidated Action.

8. Each new case that arises out of the subject matter of the Consolidated Action will be consolidated with the Consolidated Action. This Order will apply thereto, unless a party objects to consolidation (as provided for herein), or to any provision of this Order, within 10 days after the date upon which a copy of this Order is served on counsel for such party by filing an application for relief, and this Court deems it appropriate to grant such application. Nothing in the foregoing will be construed as a waiver of Defendants' right to object to consolidation of any subsequently filed or transferred related action.

9. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Lin group (comprised of Lin Shen, Lingjun Lin, and Fusheng Lin) is appointed to serve as Lead Plaintiff in the Consolidated Action.

10. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lin group's selection of Glancy Prongay & Murray LLP as Lead Counsel for the class is approved. Lead Counsel will have the authority to speak for all plaintiffs and class members in all matters regarding the litigation, including, but not limited to, pre-trial proceedings, motion practice, trial, and settlement. Additionally, Lead Counsel shall have the following responsibilities:

a. To brief and argue motions;
b. To initiate and conduct discovery, including, but not limited to, coordination of discovery with Defendants' counsel, and the preparation of written interrogatories, requests for admissions, and requests for production of documents;
c. To direct and coordinate the examination of witnesses in depositions;
d. To act as spokesperson at pretrial conferences;
e. To call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;
f. To initiate and conduct any settlement negotiations with Defendants' counsel;
g. To consult with and employ experts; and
h. To perform such other duties as may be expressly authorized by further order of this Court.

It is **SO ORDERED**.

Dated: December 3, 2020

Hon. Cathy Ann Bencivengo
United States District Judge