BRIAN M. LUTZ, SBN 255976
(*application pending*)
  blutz@gibsondunn.com
JEFFREY S. ROSENBERG
(*pro hac vice*)
  jsrosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200

ALEXANDER K. MIRCHEFF, SBN 245074
  amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000

MATTHEW W. CLOSE, SBN 188570
  mclose@omm.com
YUAN (GRACE) ZHONG, SBN 318808
  yzhong@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:  213.430.6000

DANIEL L. CANTOR
(*pro hac vice*)
  dcantor@omm.com
O'MELVENY & MEYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone:  212.326.2000

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | CASE NO. 20cv1683-CAB-AHG<br><br>**DECLARATION OF ALEXANDER K. MIRCHEFF IN SUPPORT OF DEFENDANTS' REPLY AND REQUEST FOR JUDICIAL NOTICE**<br><br>Hearing<br>Date:        May 10, 2021<br>Courtroom: 15A<br>Judge:      Hon. Cathy Ann Bencivengo |

I, ALEXANDER K. MIRCHEFF, declare and state as follows:

1.    I am an attorney duly licensed by the State Bar of California and admitted to practice before this Court.  I am a partner at the law firm of Gibson, Dunn & Crutcher LLP, and I represent Defendants Progenity, Inc. ("Progenity"), Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell in the above-captioned case.  I make this Declaration in support of Defendants' Reply in Support of Defendants' Motion to Dismiss and Request for Judicial Notice, filed concurrently herewith.  I have personal knowledge of the facts stated in this Declaration and, if called upon, could and would testify competently thereto.

2.    Attached hereto as **Exhibit E** are excerpts of a true and correct copy of the Financial Accounting Standards Board's ("FASB") Accounting Standards Codification ("ASC") 606.

I declare under penalty of perjury that the foregoing is true and correct.  This Declaration is executed on this 19th day of July, 2021, at Los Angeles, California.


By:  _s/ Alexander K. Mircheff_
     Alexander K. Mircheff
     amircheff@gibsondunn.com

Gibson, Dunn &
Crutcher LLP

DECLARATION OF ALEXANDER K. MIRCHEFF
CASE NO. 20CV1683-CAB-AHG

**In re Progenity Securities Litigation, Case No. 20cv1683-CAG-AHG**
**Table of Exhibits Pursuant to Electronic Filing Procedures Section II(k)**

Exhibit E ...................................................................................................................1

# Exhibit E

**Financial Accounting Standards Board:
Accounting Standards Codification**

Checkpoint | Document

Checkpoint Contents
Accounting, Audit & Corporate Finance Library
  Editorial Materials
    Accounting and Financial Statements (US GAAP)
      GAAP Reporter
        Revenue
          Revenue from Contracts with Customers (606)
            Overall (606-10)
              606-10-32 Measurement
                Explanations for 606-10-32
                  606-10-32EX10 Recognition of a liability for consideration that an entity expects to refund to a customer.

---

## EXP ¶ 606-10-32EX10 Recognition of a liability for consideration that an entity expects to refund to a customer.

**After the adoption of ASU No. 2014-09:**

If an entity receives consideration from a customer and expects to refund all or part of the consideration received, the entity must recognize a liability for the refund. The entity must measure the liability equal to the amount of consideration received or receivable to which it does not expect to be entitled. The amount is not included in the transaction price of the contract.

(FASB ASC **606**-**10**-**32**-10)

At the end of each reporting period, the entity must remeasure the refund liability for changes in circumstances. The remeasurement also affects the transaction price, and as a result, the contract liability.

(FASB ASC **606**-**10**-**32**-10)

If an entity transfers goods or services to a customer and gives the customer a right of return, an entity must follow the Implementation Guidance and Illustrations at FASB ASC 606-10-55-22 to 55-29 to account for any refund liability.

Exhibit E
Page 2

(FASB ASC **606**-**10**-**32**-10)

✔️ **Observation:** As FASB ASC **606**-**10**-**32**-10 provides, if a contract gives the customer a right to a refund or return, the entity must consider not only the guidance regarding variable consideration, but also the guidance that specifically addresses refund or return FASB ASC 606-10-55-22 to 55-29. These guidelines provide the following:

- To account for contract that gives a customer a right of return, an entity must record revenue for the amount of consideration to which it expects to be entitled, a liability for the refund, and an asset or adjustment to the cost of sales for the right to recover the items (see FASB ASC 606-10-55-23);

- An entity's promise to accept a returned product is not a performance obligation (see FASB ASC 606-10-55-24);

- The amount of consideration expected under the contract excludes amounts that relate to items that the entity expects the customer to return (see FASB ASC 606-10-55-25);

- The entity must apply the guidance at FASB ASC **606**-**10**-**32**-11 to 32-13 (see ¶606-10-32EX11 to ¶606-10-32EX13 concerning constraints on variable consideration (see FASB ASC 606-10-55-25);

- The entity only recognizes a liability for a refund if it has recorded a receivable or already received payment from the customer (see FASB ASC 606-10-55-25); and

- The entity must consider whether a refund or exchange relates to a warranty (see FASB ASC 606-10-55-29 to 55-35).

✔️ **Observation:** The Codification distinguishes between a customer's right of return and a customer's right to sell back a good. If the customer has the right to return a good in exchange for the initial price paid, the customer has exercised a right of return that the seller accounts for under Topic 606 (see FASB ASC 606-10-55-22 to 55-29. The contract contains a put option (not a right of return), as described at FASB ASC 606-10-55-72 to 55-78, if it allows a customer to sell back a good and receive an amount from the entity that is either:

- Less than the original price paid by the customer but significantly more than the market value of the good at the repurchase date; or

- More than the original price paid by the customer and more than the market value of the good at the repurchase date.

The revenue guidance at FASB ASC 606-10-55-72 requires an entity to account for these types of put options as either a lease or a financing and follow the applicable guidance in Topic 840, Leases, or Topic 860, Transfers and Servicing.

✔️ **Illustration:** During its December 20X6 broadcasts, a 24-hour television retailer sells merchandise with holiday themes, including jewelry, tree ornaments, sweaters, robes, and

Exhibit E

Page 3

footwear. The retailer shows the items during a broadcast, and customers can either call a special phone number or go online to purchase an item by using a credit card. The credit card company deducts a financing charge of 2.5 percent. The customer can have the item shipped to their own address or directly to a gift recipient. The retailer gives either the customer or the gift recipient the right to return a holiday item for a refund until January 31, 20X7.

On December 12, the retailer sells 10,000 pairs of men's slippers (item #022768) for a price of $49 per pair. Based on its past experience, the retailer expects that 8 percent of these sales (equal to $39,200) will be returned with a claim for a refund. The retailer does not expect to be entitled to consideration for items that customers return. The retailer, therefore, reduces the revenue that it recognizes from the sales and records a liability for the refunds.

*December 12, 20X6*

| | | |
|---|---|---|
| Dr. Cash | 477,750 | |
| Dr. Financing expenses - credit card sales | 12,250 | |
| Cr. Revenue | | 450,800 |
| Cr. Liability - expected returns | | 39,200 |

To record sales and expected returns for item #022768.

At the time of sale, the retailer records the cost of sales and the reduction of merchandise inventory. Assuming that the cost of the slippers are 50 percent of their full retail price, the reduction to inventory is $238,875 (50 percent of $477,750). In addition, in accordance with FASB ASC 606-10-55-23, the retailer adjusts cost of sales for $19,600 (50 percent of $39,200) to reflect the merchandise inventory that it expects customers to return. The retailer makes the following journal entry:

*December 12, 20X6*

| | | |
|---|---|---|
| Dr. Cost of sales | 219,275 | |
| Dr. Other assets - expected returns | 19,600 | |
| Cr. Merchandise inventory - item #022768 | | 238,875 |

To record the sale of merchandise inventory and estimated product returns for item #022768.

Subsequently, as each customer returns the merchandise, the retailer records the refund of cash by reducing the liability for refunds. In addition, the retailer records the receipt of the inventory from the customer by reducing the Other assets - expected returns account. The retailer further considers whether the returned holiday merchandise is impaired due to damage or obsolescence and whether it must make adjustments to inventory. To do so, the retailer follows the guidance in Section 330-10-35, Inventory—Overall—Subsequent Measurement.

**Viewpoint:** The accounting for product returns requires a seller to record the amount of inventory that it expects customers to return as an other asset. This accounting represents a change from previous practice. The Catalyst: US GAAP–Revenue Recognition at Refunds and

Exhibit E
Page 4

Returns, available on Checkpoint, explains the accounting for merchandise returns under Topic 606, Revenue from Contracts with Customers, as follows:

> One way to think of this approach is that a return is a failed sale. If a customer chooses to return a good, the customer is essentially unwinding the transaction. Put simply, an entity must only recognize revenue for sales the entity does not expect will fail. [2014-09.BC364]
>
> (...)
>
> In addition to a refund liability, an entity is required to recognize an asset that represents the entity's right to the expected returns. The entity has to measure this asset at the amount the entity previously measured the goods in inventory less both of the following: [606-10-55-27]
>
> • Any anticipated cost to the entity to recover the returned goods; and
>
> • Any potential decrease in the value of the goods (through the date of return).

**Caution:** In May 2014, the FASB issued Accounting Standards Update (ASU) No. 2014-09, *Revenue from Contracts with Customers (Topic 606)*. The ASU eliminates the guidance in Topic 605, Revenue Recognition, and replaces it with a new Topic 606. ASU No. 2014-09 establishes a new framework for an entity's recognition of revenue from its contracts with customers. Under the new guidance, an entity must recognize revenue in a manner that represents the entity's transfer of goods and services to customers as promised, measured at the amount that reflects the consideration the entity expects to receive from the exchange. See ¶606-10-99EX1 to ¶606-10-99EX12 for explanation of ASU No. 2014-09. ¶606-10-99EX7 specifically addresses the third step for the recognition of revenue, determining the transaction price.

Exhibit E
Page 5

Checkpoint Contents
  Accounting, Audit & Corporate Finance Library
    Editorial Materials
      Accounting and Financial Statements (US GAAP)
        GAAP Reporter
          Revenue
            Revenue from Contracts with Customers (606)
              Overall (606-10)
                606-10-32 Measurement
                  Explanations for 606-10-32
                    606-10-32EX12 Constraints on revenue recognition due to variable consideration: Assessing the likelihood and magnitude of a potential revenue reversal.

---

## EXP ¶ 606-10-32EX12 Constraints on revenue recognition due to variable consideration: Assessing the likelihood and magnitude of a potential revenue reversal.

**After the adoption of ASU No. 2014-09:**

Under FASB ASC **606**-**10**-**32**-11 (see ¶606-10-32EX11), an entity can recognize revenue from variable consideration only to the extent that it is probable that the entity will not reverse a significant portion of the cumulative amount of revenue recognized under the contract when an uncertainty relating to pricing subsequently resolves. To assess the risk, an entity must consider both the likelihood and magnitude of the potential reversal.

(FASB ASC **606**-**10**-**32**-12)

Certain factors may increase either the likelihood or magnitude of an entity's reversal of revenue. Examples of these factors are as follows:

  a. Contingencies outside the entity's influence that relate to the amount of consideration: The amount of variable consideration may vary widely from circumstances that an entity cannot influence. Examples include market volatility, third-party decisions or activities, and weather. Similarly, the promised goods or services may carry a high risk of obsolescence;

Exhibit E
Page 6

b. Timing: The uncertainties related to the variable consideration may not resolve for a substantial period of time;

c. Past experience: An entity may have limited past experience or related facts from previous, similar contracts. Alternatively, the entity's past experience or related facts may have limited predictive value;

d. History of offering concessions: In the past, an entity may have offered customers a broad range of price concessions. Alternatively, in past situations with similar contracts, the entity may have changed the payment terms; and

e. Range of the consideration amount: The contract terms may indicate that the number of possible outcomes is large or the range of possible outcomes is broad.

(FASB ASC **606**-**10**-**32**-12)

For related guidance, refer to the following:

- FASB ASC **606**-**10**-**32**-5 to 32-10 (or ¶606-10-32EX5 to ¶606-10-32EX10) regarding the estimation of variable consideration that is part of the transaction price of a customer contract; and

- FASB ASC **606**-**10**-**32**-11 to 32-13 (or ¶606-10-32EX11 to ¶606-10-32EX13) for additional guidance regarding constraints on the recognition of revenue from variable consideration.

**Illustration:** A sports arena hires a contractor to upgrade its electrical systems for $10 million. To ensure satisfactory and timely completion, the facility can withhold $50,000 per day from the contractor's fee as liquidated damages if the contractor fails to finish its work by July 1. The liquidated damages provision compensates the arena owner for risks related to the effects of construction delays on its event schedule. The transaction price, therefore, contains a variable component. The contractor must assess whether revenue related to the variable consideration is constrained. To do so, management assesses the likelihood that recognizing revenue subject to the contract provisions for liquidated damages will require subsequent reversal. After assessment of its experience with construction jobs of similar complexity and its relationship with the property owner, the contractor cannot conclude that it is probable that recognition of the amount would not be subject to future reversal. In this case, the contractor concludes that recognition of the portion of the transaction price subject to liquidated damages is constrained until it satisfies its performance obligations under the contract on time.

**Observation:** Large construction projects are complex. These projects inherently have uncertainties. Therefore, many construction contracts contain variable consideration terms, and often, recognition of portions of the transaction price are subject to constraint.

The complexity of large construction projects requires that contractors complete certain phases on schedule. Therefore, contracts in the construction industry often contain penalties (commonly

Exhibit E

Page 7

called liquidated damages) or performance bonuses to incentivize timely completion. The portion of the transaction price subject to these contractual provisions represents variable consideration, because at the time the parties execute the contract, the contractor's entitlement to consideration is subject to future events (see FASB ASC **606-10-32**-2, or ¶606-10-32EX2).

Similarly, many contracts in the construction industry contain retainage provisions. Formally, retainage represents the right of the property owner to retain a portion of the contract price after work concludes as compensation for modifications and repairs related to construction that are not apparent when the physical on-site work concludes. Industry-specific and company-specific practices affect the interpretation of retainage provisions in a contract. Sometimes, the parties understand that retainage is a permanent reduction in the transaction price. In other cases, when a project is concluded, the parties evaluate how the project was executed, and they renegotiate the amount that the property owner can continue to retain as compensation for future corrections. Therefore, in some cases, at the time the parties execute the contract, the contractor's entitlement to consideration may be subject to future events. If so, the portion of the transaction price that is subject to retainage terms may represent variable consideration that is subject to constraint.

**Caution:** In May 2014, the FASB issued Accounting Standards Update (ASU) No. 2014-09, *Revenue from Contracts with Customers (Topic 606)*. The ASU eliminates the guidance in Topic 605, Revenue Recognition, and replaces it with a new Topic 606, Revenue from Contracts with Customers. ASU No. 2014-09 establishes a new framework for an entity's recognition of revenue from its contracts with customers. Under the new guidance, an entity must recognize revenue in a manner that represents the entity's transfer of goods and services to customers as promised, measured at the amount that reflects the consideration the entity expects to receive from the exchange. See ¶606-10-99EX1 to ¶606-10-99EX12 for explanation of ASU No. 2014-09. ¶606-10-99EX7 specifically addresses the third step for recognizing revenue, determining the transaction price.

Exhibit E
Page 8