ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
CASEY E. SADLER (#274241)
  *csadler@glancylaw.com*
GARTH A. SPENCER (#335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | Case No. 3:20-cv-01683-CAB-AHG |
| | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF REPLY; REQUEST FOR ORAL ARGUMENT** |
| | Judge: Hon. Cathy Ann Bencivengo |

## I.   DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF THEIR REPLY BRIEF SHOULD BE DENIED

Defendants submitted a Request for Judicial Notice in Support of Reply (Dkt. No. 44-2) in which they ask the Court to take judicial notice of, or to incorporate by reference, certain excerpts of Financial Accounting Standards Board ("FASB") Accounting Standards Codification ("ASC") 606. Defendants claim to have submitted excerpts of ASC 606 as Exhibit E to the Declaration of Alexander K. Mircheff in Support of Defendants' Reply and Request for Judicial Notice (Dkt No. 44-1). Defendants' request should be denied because Exhibit E to the Mircheff Declaration does not contain excerpts of ASC 606.

As is clear from the table of contents reproduced at the top of Exhibit E pages 2 and 6 and the internet URL at the bottom of each page of Exhibit E, what Defendants have attached as Exhibit E is material from the Thomson Reuters "Checkpoint" research database. Checkpoint is an online research database focused on tax and accounting, akin to WestLaw or LexisNexis.[1] More specifically, as shown by the tables of contents reproduced in Exhibit E pages 2 and 6, Defendants have reproduced Checkpoint "Editorial Materials" from the "GAAP Reporter." The GAAP Reporter is a secondary source providing "interpretation and analysis" of the FASB Codification.[2] Comparison of Exhibit E with the actual text of ASC 606, as available on the FASB's website (https://asc.fasb.org/home), reveals that Exhibit E paraphrases ASC 606 and provides editorial commentary.[3]

---

[1] *See generally* https://checkpoint.riag.com/

[2] *See* https://store.tax.thomsonreuters.com/accounting/Audit-and-Accounting/GAAP-Reporter-with-FASB-Codification/p/100201753

[3] When Defendants sought judicial notice of excerpts of ASC 450 in connection with their opening brief, they appear to have attached information from the FASB website, containing actual excerpts of the text of ASC 450, and not editorial paraphrasing from secondary sources. *See* Dkt No. 40-2 at Exhibit D.

1

OPPOSITION TO JUDICIAL NOTICE;                    Case No. 20cv01683
ORAL ARGUMENT REQUEST

Defendants' error regarding the identity of their proposed Exhibit E "highlights [a] risk in overuse of the incorporation-by-reference doctrine." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1005 (9th Cir. 2018). As recognized by the Ninth Circuit in *Khoja*:

> When parties pile on volumes of exhibits to their motion to dismiss, hoping to squeeze some into the complaint, their submissions can become needlessly unwieldy. Simply reviewing these submissions demands precious time. It is the parties' duty to ensure their own accuracy. Otherwise, as here, materials may be inserted into pleadings when they should not be there.

*Id.* Therefore, Defendants' request for judicial notice or incorporation by reference of Checkpoint "Editorial Materials" relating to ASC 606 should be denied.

Furthermore, Defendants' failure to even correctly *identify* ASC 606 severely undermines their arguments that Progenity correctly *applied* ASC 606 in the financial information presented in its IPO Registration Statement, and raises serious doubt as to whether Defendants are now correctly applying ASC 606 in their reply brief. As such, and as Plaintiffs argued in their opposition brief, to the extent that an ASC "is subject to judicial notice, only its contents may be noticed and not Defendants' proposed interpretation or application thereof." Dkt No. 41; *see also Khoja*, 899 F.3d at 1000 ("It is improper to judicially notice a transcript when the substance of the transcript is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes").

## II. PLAINTIFFS REQUEST ORAL ARGUMENT ON DEFENDANTS' MOTION TO DISMISS

Plaintiffs hereby request oral argument on Defendants' motion to dismiss. In accord with Part II.A of the Court's Civil Case Procedures, which require Plaintiffs to "explain[] why oral argument would be helpful to the Court," Plaintiffs respectfully submit that oral argument may help the Court to understand the numerous instances where Defendants in their reply brief have raised new

2

arguments, misrepresented Plaintiffs' arguments, mischaracterized the facts, and misapplied case law. That Defendants' reply papers cannot be uncritically relied on for their accuracy, and that Plaintiffs' responses may assist the Court to better evaluate Defendants' assertions, is perfectly illustrated by Defendants' erroneous request for judicial notice.

Regarding new arguments raised on reply, for example, Defendants in their opening brief asserted that Plaintiffs had not identified any statement that was false or misleading due to Progenity's failure to disclose negative trends in average selling prices ("ASPs"). Opening Br. (Dkt No. 40-1) at 19-20. In opposition, Plaintiffs pointed out that the Amended Complaint (Dkt No. 38) clearly alleges three such statements at ¶¶129-32, and that Defendants had waived any argument as to the falsity of these statements by ignoring them in the opening brief. Opposition Br. at 24; *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief"). In reply, Defendants for the first time argue that such statements were not rendered false or misleading by Progenity's failure to disclose negative trends in ASPs. Reply Br. at 10. If the Court were inclined to entertain Defendants' new arguments (which it need not do), then at oral argument Plaintiffs would address this and Defendants' other new arguments raised for the first time on reply (*see also* Reply Br. at 4).

At oral argument, Plaintiffs would also correct the record regarding instances where Defendants in their reply brief have misrepresented Plaintiffs' arguments. *See* Reply Br. at 3, 5, 5 n.3, 6, 9 n.4. For example, Defendants claim that "[t]he allegedly omitted material information here was not that overbilling occurred, but that Progenity would need to refund $10.3 million for overpayments." Reply Br. at 3. However, this erroneous and unfair summary of Plaintiffs' claims ignores their explicit argument that "[r]egardless of when Progenity bothered to quantify its precise liability, the Registration Statement was required to disclose the existence of substantial Preparent overbilling." Opposition Br. at 10. As another particularly

3

egregious example, Defendants claim that Plaintiffs "[r]ecogniz[e] that the financial results in Progenity's Offering Materials were prepared in accordance with GAAP," and for support cite to a portion of Plaintiffs' opposition brief arguing that Progenity's financials *did not* comply with GAAP. Reply Br. at 5 (*citing* Opposition Br. at 12).[4]

At oral argument, Plaintiffs would identify where Defendants have mischaracterized, or simply made up, facts in their reply brief. For example, Defendants appear to claim that it is "nonsense" for Plaintiffs to argue that Progenity "accrued a $10.3 million liability for the Preparent overbilling in the second quarter (April-June) of 2020." Reply Br. at 4 (*quoting* Opposition Br. at 9). But this fact was disclosed by Progenity itself in public SEC filings.[5] And while Defendants now assert that a third-party review of Progenity's billing practices was completed shortly before the filing of Progenity's August 14, 2020 Form 10-Q, the record is silent as to when (or if) that review was completed, and Defendants provide no citation to support their assertion.[6]

Finally, at oral argument Plaintiffs would distinguish inapposite case law cited by Defendants for the first time in their reply brief. *See, e.g.*, Reply Br. at 2, 4,

---

[4] "Progenity's claim that its 'financial statements are prepared in accordance with GAAP' is merely a conclusory assertion that fails to rebut Plaintiffs' plausible allegations that Progenity violated ASC 606, overstated its revenues, and understated its refund liabilities." Opposition Br. at 12.

[5] *See* Amended Complaint at ¶ 62 ("*[D]uring the three months ended June 30, 2020*, the Company accrued $10.3 million for refunds to government payors related to reimbursement for the Company's Preparent expanded carrier screening tests during 2019 and early 2020.") (*quoting* Progenity Form 10-Q filed on Aug. 14, 2020) (emphasis added).

[6] In any event, when this review was completed is wholly irrelevant, since it says nothing about when the third party or Progenity first identified Progenity's Preparent overbilling, let alone when it was first *knowable* that Progenity had substantially overbilled government payors for Preparent tests.

4

5, 6, 7. For example, Defendants now rely (Reply Br. at 6-7) on *Ikeda v. Baidu, Inc.*, to argue that Progenity's IPO Registration Statement risk factors were not misleading regarding Preparent overbilling. 2021 WL 1299046 (N.D. Cal. Apr. 7, 2021). Defendants quote *Ikeda* as stating that the risk factor at issue was not misleadingly "abstract," because "Baidu explicitly stated that it had been subject to past enforcement penalties." *Id.* at *13. However, Defendants fail to inform the Court that critical to *Ikeda*'s reasoning on this point was that the plaintiffs merely alleged that Baidu should have disclosed additional "facts about *past* investigations," which had already been resolved by publicly disclosed enforcement penalties that were reported on in the media. *Id.* at *10, 13 (emphasis added). Here, in stark contrast to *Ikeda*, investors in Progenity's IPO could not have known that Progenity substantially overbilled government payors for Preparent tests, because this had not been revealed by any public disclosures or media reports, and Defendants did not disclose Progenity's Preparent test overbilling until their August 13, 2020 admissions, after which Progenity's stock price plummeted by 13.8%. *See* Amended Complaint ¶ 81.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' request for judicial notice of their proposed Exhibit E, and that the Court hear oral argument on Defendants' motion to dismiss.

5

DATED: July 23, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Garth A. Spencer*
ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
CASEY E. SADLER (#274241)
  *csadler@glancylaw.com*
GARTH A. SPENCER (#335424)
  *gspencer@glancylaw.com*
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiffs*

6

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On July 23, 2021, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 23, 2021, at Los Angeles, California.

*s/ Garth A. Spencer*
Garth A. Spencer