BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
JEFFREY S. ROSENBERG
(*pro hac vice*)
  jsrosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200

ALEXANDER K. MIRCHEFF, SBN 245074
  amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000

*Attorneys for Defendants Progenity, Inc.,
Harry Stylli, Eric d'Esparbes, Jeffrey Alter,
John Bigalke, Jeffrey Ferrell, Brian L.
Kotzin, Samuel Nussbaum, and Lynne
Powell*

MATTHEW W. CLOSE, SBN 188570
  mclose@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:  213.430.6000

DANIEL L. CANTOR
(*pro hac vice*)
  dcantor@omm.com
O'MELVENY & MEYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone:  212.326.2000

*Attorneys for Defendants Piper Sandler
& Co., Wells Fargo Securities, LLC,
Robert W. Baird & Co. Incorporated,
Raymond James & Associates, Inc., and
BTIG LLC*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| IN RE PROGENITY, INC. SECURITIES LITIGATION | CASE NO. 20cv1683-LL-AHG |
|---|---|
| | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |
| | Judge:      Hon. Linda Lopez |
| | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

# TABLE OF CONTENTS

Page

I.  PLAINTIFFS HAVE NOT REMEDIED THEIR FAILURE TO PLEAD ANY ACTIONABLE MISLEADING STATEMENT OR OMISSION ............. 1

    A.  Alleged Improper Billing And Overpayments ............................................ 2

    B.  Alleged Improper Marketing Practices ....................................................... 5

    C.  Negative Trends ......................................................................................... 7

II.  PLAINTIFFS' CLAIMS BASED ON ITEMS 105 AND 303 OF REGULATION S-K REMAIN INADEQUATE ...................................................... 7

III.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 15 ................... 8

IV.  PLAINTIFFS' ATTEMPTS TO AMEND ARE IMPROPER ............................. 9

    A.  The Opposition's Inclusion Of Documents Outside The Complaint Is An Attempt to Amend Without Court Permission ................................. 9

    B.  Plaintiffs' Request For Leave To Amend Is Inappropriate At This Stage ....................................................................................................... 10

CONCLUSION ............................................................................................................ 10

i

Gibson, Dunn & Crutcher LLP

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Alphabet, Inc. Sec. Litig.*,
 1 F.4th 687 (9th Cir. 2021) ........................................................................................... 4

*Ascon Properties, Inc. v. Mobil Oil Co.*,
 866 F.2d 1149 (9th Cir. 1989) .................................................................................... 10

*Atossa Genetics Inc. Sec. Litig.*,
 868 F.3d 784 (9th Cir. 2017) ......................................................................................... 4

*Berg v. Velocity Fin., Inc.*,
 2021 WL 268250 (C.D. Cal. Jan. 25, 2021) ............................................................. 3, 4

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014) .......................................................................................... 6

*Ferreira v. Funko, Inc.*,
 2021 WL 880400 (C.D. Cal. Feb. 25, 2021) ................................................................. 2

*Kuschner v. Nationwide Credit, Inc.*,
 256 F.R.D. 684 (E.D. Cal. 2009) ................................................................................. 10

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011) ......................................................................................................... 4

*Miller v. Thane Int'l, Inc.*,
 519 F.3d 879 (9th Cir. 2008) ......................................................................................... 6

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
 575 U.S. 175 (2015) ....................................................................................................... 6

*In re Paypal Holdings, Inc. S'holder Derivative Litig.*,
 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) ................................................................. 5

*In re Pivotal Sec. Litig.*,
 2020 WL 4193384 (N.D. Cal. July 21, 2020) ........................................................... 6, 8

*In re Resonant Inc. Sec. Litig.*,
 2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) ............................................................. 2, 6

*Rubke v. Capitol Bancorp. Ltd*,
 551 F.3d 1156 (9th Cir. 2009) ....................................................................................... 2

ii

## TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Schneider v. Cal. Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998) ........................................................................... 9

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ........................................................................... 8

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
   669 Fed. Appx. 787 (9th Cir. 2016) .................................................................. 8

*In re Verifone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) ................... 8

**STATUTES**

15 U.S.C. § 77k(a) ................................................................................................ 1

**OTHER AUTHORITIES**

*2 Moore's Federal Practice,* § 12.34[2] (Matthew Bender 3d ed.) ................................. 9

**RULES**

Fed. R. Civ. P. 78 ................................................................................................. 5

Local Civil Rule 7.1(d)(1) ...................................................................................... 5

**REGULATIONS**

17 C.F.R. § 229.105(a) ........................................................................................... 7

17 C.F.R. § 240.13a-13 ........................................................................................... 4

42 C.F.R. § 401.305(b)(1) ....................................................................................... 4

iii

Gibson, Dunn &
Crutcher LLP

Instead of meaningfully confronting the requirements of the federal securities laws, Plaintiffs now resort to arguing that the Court's Order dismissing the First Amended Complaint (the "Prior Complaint")—a pleading that parallels the present Second Amended Complaint (the "SAC") in nearly every material aspect—"was in error." Doc. No. 54 ("Opp'n") 14. Yet nothing in the Opposition, including the new documents it seeks to introduce and its continued misplaced emphasis on a purported (but irrelevant) shift in the Company's marketing practices, changes the fact that Progenity's alleged improper billing and overpayments "could not be material until the amount of that overbilling and resulting liability was quantified," which occurred well after the Company's IPO. Doc. No. 48 ("Order") 10. Plaintiffs' other arguments are unchanged. None is enough to state a viable claim.

What's more, Plaintiffs seek to convince this Court that they deserve yet another shot at stating a claim. Having filed three complaints, Plaintiffs now introduce documents outside the complaint in a last-ditch effort to shore up their latest set of inadequate allegations. Yet their "evidence" is offered for a proposition—Progenity's awareness that it was using a new billing code—that this Court already found was insufficient to state a claim under the federal securities laws. Plaintiffs all but concede that this latest complaint still is deficient, asking the Court for permission to file another complaint to "further supplement their allegations with additional research, witness interviews, and other sources." Opp'n 24. No amount of additional factual development could help Plaintiffs state a viable claim.

Enough is enough. The SAC should be dismissed, this time with prejudice.

## I. PLAINTIFFS HAVE NOT REMEDIED THEIR FAILURE TO PLEAD ANY ACTIONABLE MISLEADING STATEMENT OR OMISSION

To state a claim under Section 11, a plaintiff must plead facts demonstrating that a company's registration materials either "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The question is whether the

1

pleading contains specific facts demonstrating that the alleged misrepresentation or omission "would have misled a reasonable investor about the nature of his or her investment." *Rubke v. Capitol Bancorp. Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted); *see also In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *7 (C.D. Cal. Feb. 8, 2016) (plaintiff must adequately plead "that a purported misstatement in a registration statement was misleading *at the time the registration statement was issued.*" (emphasis added)). Here, Plaintiffs still fail to plead facts identifying inaccurate or omitted material facts in Progenity's Registration Statement, let alone with the "particularity" required under Rule 9(b). *See* Doc. No. 52-1 ("Mem.") 8–9 (internal quotation marks omitted).

### A.    Alleged Improper Billing And Overpayments

In a detailed order, Judge Bencivengo granted Progenity's motion to dismiss the Prior Complaint, explaining that "an actionable omission under Section 11 must be material, and the fact that Progenity had overbilled some payors *could not be material until the amount of that overbilling and resulting liability was quantified* . . . Plaintiffs have failed to establish that the accrual of the $10.3 million refund liability existed at the time that Progenity's Registration Statement took effect." Order 10–11 (emphasis added).[1]    Plaintiffs claim they have "cure[d]" the Prior Complaint's pleading deficiencies by adding allegations (1) from Confidential Witnesses ("CW") purporting to show Progenity knew it was required to use a new billing code for Preparent tests, but failed to do so; and (2) that "Progenity's failure to disclose its improper billing and receipt of overpayments was material to reasonable investors and violated relevant accounting standards." Opp'n 1. These new allegations change nothing. Plaintiffs still

---

[1] Judge Bencivengo also rejected Plaintiffs' unchanged arguments regarding risk factor disclosures (Opp'n 17–18) on similar grounds. *See* Order 12 n. 10 ("Plaintiffs cannot show that the risk of accruing a $10.3 million refund liability had materialized by the time the Registration Statement took effect."). And to the extent Plaintiffs label Progenity's discussion of improper billing "hypothetical," *see* Opp'n 18, they fail to allege "an objectively-verifiable amount [that] should have [been] disclosed," *see Ferreira v. Funko, Inc.*, 2021 WL 880400, at *13 (C.D. Cal. Feb. 25, 2021).

2

plead no facts showing that the amount of the reimbursement accrual "was available when the offering materials became effective," Order 12 (quoting *Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at \*5 (C.D. Cal. Jan. 25, 2021)), or that the Company at the time actually knew of an amount to be refunded per Accounting Standards Codification 450 or 606. Plaintiffs still plead broad, conclusory, and general statements: that there was a "high probability that Progenity had received, and would have to refund, a material amount of [refunds from government payors]." Opp'n 2. But not only does this allegation lack any supporting facts, specifically those demonstrating Progenity had or could have calculated the specific amount of the accrual at the time the Registration Statement was released,[2] there is no corresponding allegation that Progenity knew at the time of the IPO it would have to make any reimbursement whatsoever.[3]

Plaintiffs' Section 11 claim has always focused on the allegation that, at the time of the IPO, Progenity's "Registration Statement failed to disclose that Progenity had improperly billed for Preparent tests, that the Company had uncovered this issue, and that it had resulted in substantial overpayments." Opp'n 13–14. Shortly after the IPO, the Company explained to investors it had discovered a new billing issue related to historic coding practices that would require it to accrue an expense on its financial statements. *Id*. Noting that "the final analysis of the amount of the overpayment is *still being completed*," the Company announced that it would accrue a $10.3 million charge

---

[2] Plaintiffs argue that Defendants improperly "assert that they were not obligated to disclose the improper billing because *they* were not aware it was material until the precise amount of the overpayment was finally calculated." Opp'n 16. But that is exactly what the Court held. *See* Order 10–11. Plaintiffs cannot sidestep the Court's holding by repeatedly insisting that the mere fact that improper billing occurred was material. And the "absurd result[]" Plaintiffs posit, in which companies could "shield themselves from liability" by "decid[ing] never to quantify the effects of known, material adverse information," Opp'n 16, is inconsistent with the SEC regulations and accounting rules (relied upon by the Court in dismissing the Prior Complaint, *see* Order 11) that govern when public companies must accrue liabilities and report their financial data.

[3] This is particularly salient because Plaintiffs' own CW allegations indicate that certain coding errors may have been caused or requested by *payors*, decreasing the likelihood reimbursement would be required. *See* SAC ¶¶ 131, 137.

3

for reimbursement, "*as a result of analysis to date*." SAC ¶ 220 (emphases added). The deadline to report and return the overpayment to government programs was 60 days "from the time the overpayment was *determined and quantified*," and thus the Company expected to make such repayments by October 2020, well after the IPO. *Id*. (emphasis added). Plaintiffs misconstrue the 60-day regulatory deadline to "report and return the overpayment . . . after the date on which the overpayment was identified," 42 C.F.R. § 401.305(b)(1), to impose an unsupported free-standing obligation on the Company to determine and quantify reimbursement amounts prior to its IPO, *see* Opp'n 4. But Plaintiffs plead no facts explaining why the Company should have known of and quantified reimbursements for Preparent tests prior to the IPO.

Plaintiffs also argue that Progenity was required to immediately disclose its as-of-yet-unquantified potential liability, *see* Opp'n 14–16, but that assertion is unfounded. As the Court recognized, SEC regulations afford issuers 45 days from the end of a fiscal quarter to file their quarterly disclosures, *see* 17 C.F.R. § 240.13a-13, and courts recognize that companies "need[] time to audit [financial] data before including it in any public materials," *Berg*, 2021 WL 268250 at *5 n.1; *see* Order 11 ("Publicly reporting companies have at least [45] days to file Forms 10-Q following the end of a fiscal quarter."). Progenity complied with these disclosure obligations, and Plaintiffs allege no facts to the contrary.[4] As for Plaintiffs' argument that the Company had a duty to immediately disclose based on its access to "real-time" data, Judge Bencivengo specifically held "Defendants were under no obligation to disclose their real-time

---

[4] Plaintiffs mistakenly cite (at Opp'n 16–17) *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), *In re Alphabet, Inc. Securities Litigation*, 1 F. 4th 687 (9th Cir. 2021), and *Atossa Genetics Inc. Securities. Litigation*, 868 F.3d 784, 803 (9th Cir. 2017), but those cases are inapposite. Each speaks to the failure to disclose to shareholders known, extant, and measurable risks. Here, the "liability accrual reported in Progenity's second quarter 2020 Form 10-Q *did not exist* when the Registration Statement became effective." Order 12 (emphasis added).

*(Cont'd on next page)*

4

Gibson, Dunn & Crutcher LLP

revenue data at the time that the Registration Statement took effect," Order 22, and Plaintiffs offer no reason to depart from this ruling.[5]

Finally, Plaintiffs assail Judge Bencivengo's prior Order, arguing the "holding was in error" and that it "was decided without a complete record or argument." Opp'n 14. It is not clear what exactly Plaintiffs take issue with, but to the extent it concerns Plaintiffs' request for oral argument, *see* Doc. No. 45, their request was declined by the Court, including because "Plaintiffs' filing was improper under the Local Rules," Order 7 n.3. The Federal Rules of Civil Procedure, Local Rules, and Judge Bencivengo's Chambers Rules are clear that Plaintiffs are not entitled to oral argument on a motion to dismiss, nor is it clear how argument would remedy their pleading failures. *See* Fed. R. Civ. P. 78; Local Civil Rule 7.1(d)(1); Bencivengo Chambers Rules for Civil Cases II.A. Accordingly, Plaintiffs' claims based on alleged improper billing should be dismissed just as before.

## B.    Alleged Improper Marketing Practices

The Opposition also reiterates the SAC's claims that Progenity's Registration Statement failed to disclose that, prior to the IPO, the Company's genetic testing business purportedly relied on improper marketing practices. *See* Opp'n 18–19. Plaintiffs argue that the purported February 2020 decision to end these practices should have been disclosed to shareholders because (they claim) "all of Progenity's historical results substantially depended on the [allegedly] recently discontinued practice." *Id*. 6–7, 19.

Plaintiffs are wrong. The "[f]ederal securities laws do not impose . . . a 'duty to disclose uncharged, unadjudicated wrongdoing,'" which is exactly what Plaintiffs allege here. *In re Paypal Holdings, Inc. S'holder Derivative Litig*., 2018 WL 466527, at *3

---

[5] Plaintiffs also argue that Defendants failed to raise lack of materiality in their first motion to dismiss. *See* Opp'n 14. Not true. Progenity's brief discussed materiality extensively, including that "the $10.3 million charge cannot be a material omission because this fact did not exist at the time Progenity filed the Registration Statement." Doc. No. 40-1 at 12.

5

(N.D. Cal. Jan. 18, 2018) (*quoting City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F. 3d 173, 184 (2d Cir. 2014)).  A Section 11 claim must adequately plead "that a purported misstatement in a registration statement was misleading *at the time the registration statement was issued*."  *In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at *7 (emphasis added).   Here, Plaintiffs identify no statement in the Offering Materials—let alone an inaccurate or misleading one—that speaks to the Company's pre-IPO marketing practices.  Instead, they rely on the Company's explanation that as of June 2020, Progenity "generally seek[s] to collect co-payments and deductibles directly from patients in cases where we have billed the payor," Opp'n 19 (citing SAC ¶ 360), and "believe[s] that our sales and marketing practices comply in all material[] respects with all applicable federal and state laws," *id*. (citing SAC ¶ 363).  But Plaintiffs in no way explain how these references to *current* practices were misleading at the time the Registration Statement was issued, offering only the conclusory assertion that the disclosures' plain meaning "is not how a reasonable investor would understand the[m]." *Id.*   The reasonable investor inquiry, however, is "objective,"  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 187 (2015), and the court must look to "[t]he fair and reasonable implication an ordinary investor would derive" from the statement's plain language, not Plaintiffs' own strained reading, *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).

The SAC also fails to plead facts regarding the purported policy change (including whether it was a change at all), how the alleged prior practice constituted illegal conduct, and how the alleged change impacted Progenity's business. *See, e.g.*, Mem. 20–23.  The vague, unsubstantiated statements of CWs—such as "CW2 believe[d] this policy change was effectively immediately," SAC ¶ 177, or according to CW7, "everyone was kind of up-in-arms," *id.* ¶ 175, about the alleged change in policy—are exactly the kind of "unreliable hearsay" and "conclusory assertions" that courts routinely reject, *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *13 (N.D. Cal. July 21, 2020).  But even if the CW statements are considered, they say nothing about whether anything in Progenity's

6

Registration Statement was wrong. At most, the CW statements merely suggest "uncharged, unadjudicated wrongdoing," which, as explained above, need not be disclosed.

### C.   Negative Trends

The Opposition also reiterates the SAC's allegations that Progenity failed to disclose decreases in the Company's test volumes, average test selling prices ("ASP"), and revenue. *See* Opp'n 21 (citing SAC ¶¶ 183–94, 195–203, 204–09). Judge Bencivengo dismissed these same allegations in the Prior Complaint, and Plaintiffs have made no meaningful effort to adjust their approach since. As to testing volume, "[a]lthough the statements [in the Offering Materials] have slight inconsistencies between them, a reasonable investor reviewing the Registration Statement in its entirety would not be misled to believe that Progenity's test volume was increasing at the time of the IPO." Order 15. As to ASP, there is only a single reference in the Offering Materials, and "Plaintiffs do not identify any statements that were rendered misleading because of the failure to disclose the alleged decline in ASP." *Id.* 19. And, as to revenue, "the Registration Statement actually discloses negative trends in Progenity's revenue that Defendants had observed by the time the Registration Statement took effect." *Id*. 21–22. Nothing in the SAC or Opposition attempts to address, let alone changes, the analysis already conducted by the Court.

## II.   PLAINTIFFS' CLAIMS BASED ON ITEMS 105 AND 303 OF REGULATION S-K REMAIN INADEQUATE

The SAC's assertions that Defendants failed to meet their disclosure obligations under Items 105 and 303 of SEC Regulation S-K are fundamentally unchanged from the Prior Complaint. The Court should dismiss them again for the same reasons. *See* Order 22–25.

Item 105 requires "a discussion of the material factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105(a). Plaintiffs allege, as they did in the Prior Complaint, *see* Prior Compl. ¶ 161, that Progenity's Preparent

7

Gibson, Dunn & Crutcher LLP

billing decisions "presented the risk of material refunds and materially decreased future revenues," and that the Company's "undisclosed decision to abandon its key illegal marketing practice" "presented the risk that Progenity would lose customers and be forced to slash test prices in an effort to compete on a level playing field," Opp'n 21. Both allegations fail because Progenity's Offering Materials explicitly warned investors of these risks. The Company warned that "payors may seek refunds of amounts that they claim were inappropriately billed to a specified CPT code," SAC ¶ 335, and that "[i]t is possible that we will not generate sufficient revenue from the sale of our products to cover our costs . . . and achieve or sustain profitability," Order 22, the exact circumstance Plaintiffs associate with the Company's purported decision to end improper marketing practices. *See In re Pivotal*, 2020 WL 4193384, at *8.

Item 303 requires disclosure "where a trend, demand, commitment, event or uncertainty is both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of operation." *Steckman v. Hart Brewing, Inc.*, 143 F. 3d 1293, 1296 (9th Cir. 1998) (internal quotation marks omitted). The Opposition does nothing to cure this claim's pleading deficiencies because Progenity was under no obligation to "disclose the future." *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1483 (N.D. Cal. 1992), *aff'd*, 11 F.3d 865 (9th Cir. 1993) (internal quotation marks omitted). Even so, the Company explicitly disclosed that "we are currently observing a slowdown in volume growth," SAC ¶ 378, "we began to observe significant declines in the volumes of our [tests]," *id.* ¶ 379, and "there can be no assurance that the rate of decline in our testing volumes will not continue or accelerate in future periods," *id.*

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER SECTION 15

Because "[t]here can be no Section 15 violation without an underlying Section 11 violation," Plaintiffs' Section 15 claim necessarily fails. Order 25 (quoting *In re Ubiquiti Networks, Inc. Sec. Litig.,* 669 Fed. Appx. 787, 880 (9th Cir. 2016).

8

## IV.   PLAINTIFFS' ATTEMPTS TO AMEND ARE IMPROPER

### A.   The Opposition's Inclusion Of Documents Outside The Complaint Is An Attempt to Amend Without Court Permission

Plaintiffs attach to the Opposition a declaration from Plaintiffs' counsel, *see* Doc. No. 54-1 ("Ligman Decl."), and five exhibits purporting to be documents produced in response to "freedom of information requests" submitted to three state healthcare agencies, *see* Doc. Nos. 54-2–54-6.  Plaintiffs then go on to discuss these documents in their Opposition.  *See* Opp'n 24–25.  This is wholly improper.  Plaintiffs cannot amend their complaint by relying on documents outside their pleading in opposition to a dismissal motion.  This is an improper attempt to amend the SAC and should be stricken.

It is a fundamental precept of civil procedure that "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."  *E.g.*, *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998); *see also 2 Moore's Federal Practice,* § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").  Here, the five documents in question were not referenced in the SAC, nor could they be, as Plaintiffs admit, "[a]fter filing the SAC Plaintiffs have obtained documentary evidence."  Opp'n 24.  Accordingly, the declaration, exhibits, and portions of the Opposition that reference them must be stricken.

Even if these documents were properly before the Court on this motion, they would change nothing.  As Plaintiffs admit, the exhibits at most point to when Progenity employees knew of the newly announced billing code.  *See* Opp'n 25.  They shed no light whatsoever on the crux of Plaintiffs' Section 11 claim or the basis on which this Court previously dismissed it: whether Progenity could, at the time of the Registration Statement, quantify the volume of its reimbursements.  As the Court has held, "Defendants' awareness that the Preparent billing code had changed in January 2019

9

does not mean Progenity's . . . refund liability existed" at the time of Progenity's IPO. Order 11. The newly added documents are therefore irrelevant.

## B. Plaintiffs' Request For Leave To Amend Is Inappropriate At This Stage

After filing three complaints, Plaintiffs seek leave to amend their pleading *again*, asserting without elaboration that they could "further supplement their allegations with additional research, witness interviews, and other sources." Opp'n 24.

The Ninth Circuit has explained that "[l]eave [to amend] need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "The district court's discretion to deny leave to amend is particularly broad where," as here, "plaintiff has previously amended the complaint." *Id*. Further, "[t]he court determines whether [amendment] would be futile upon application of the Rule 12(b)(6) standard, that is, whether there are no set of facts under which the [claimant] could recover on his causes of action." *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009).

Here, it is clear that any additional amendment would be futile. Plaintiffs' Prior Complaint was dismissed in full, with leave to amend. *See* Order 26. By seeking leave to amend in such a preemptory fashion in their Opposition—and after improperly attempting amendment *through* their Opposition—Plaintiffs acknowledge the insufficiency of their current complaint. *See* Opp'n 24–25. Although Plaintiffs suggest "additional research" may cure their continued pleading deficiencies, *id*. at 24, at this point—17 months after the initial complaint was filed—there is no set of facts to support Plaintiffs' theory of liability. An open-ended request for additional amendment would merely prolong the inevitable. Leave to amend should be denied.

## CONCLUSION

Defendants respectfully request the Court dismiss the SAC with prejudice.

10

Gibson, Dunn & Crutcher LLP

Dated: February 22, 2022

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Alexander K. Mircheff*
Brian M. Lutz
Jeffrey S. Rosenberg
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Email: blutz@gibsondunn.com
Email: jsrosenberg@gibsondunn.com

Alexander K. Mircheff
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Email: amircheff@gibsondunn.com

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

O'MELVENY & MEYERS LLP

By: */s/ Daniel L. Cantor*
Daniel L. Cantor
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone: 212.326.2000
Email: dcantor@omm.com

Matthew W. Close
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: 213.430.6000
Email: mclose@omm.com

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

11

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the above listed counsel, and that I have obtained authorization to affix all electronic signatures to this document.

Dated: February 22, 2022          GIBSON, DUNN & CRUTCHER LLP

By: */s/ Alexander K. Mircheff*
Alexander K. Mircheff

12

Gibson, Dunn & Crutcher LLP