BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:  415.393.8200

ALEXANDER K. MIRCHEFF, SBN 245074
  amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:  213.229.7000

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

MATTHEW W. CLOSE, SBN 188570
  mclose@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone:  213.430.6000

DANIEL L. CANTOR
(*pro hac vice*)
  dcantor@omm.com
O'MELVENY & MEYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone:  212.326.2000

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | CASE NO. 20cv1683-RBM-AHG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>Judge: Hon. Ruth Bermudez Montenegro<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT |

Gibson, Dunn & Crutcher LLP

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND .....................................................................................................2

    A.    Relevant Background Allegations .................................................................3

    B.    Procedural History .......................................................................................4

        1.    The Court Dismisses Plaintiffs' Prior Two Amended Complaints In Full ...............................................................................4

        2.    Plaintiffs File A Nearly Identical Third Amended Complaint ........6

I.    LEGAL STANDARD ..............................................................................................7

III.  ARGUMENT ...........................................................................................................8

    A.    Plaintiffs Fail To Plead Any Actionable Misleading Statement Or Omission Under Section 11. .........................................................................8

        1.    All of Plaintiffs' Unamended and Uncured Theories Should be Dismissed. ...........................................................................8

        2.    The TAC Does Not Cure Plaintiffs' Defective "Improper Billing" Theory ..............................................................................9

    B.    The Complaint Fails To State A Claim Under Section 15 ........................11

    C.    The TAC Should Be Dismissed With Prejudice.......................................12

IV.  CONCLUSION ......................................................................................................12

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RMB-AHG

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 7

*Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*,
2012 WL 7683452 (C.D. Cal. Nov. 20, 2012) ...................................................... 12

*In re Atossa Genetics Inc. Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017) ................................................................................... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................ 7

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ............................................................................ 7, 10

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................ 8, 12

*Mallen v. Alphatec Holdings, Inc.*,
2013 WL 1294640 (S.D. Cal. Mar. 28, 2013), *aff'd sub nom. Fresno Cty. Emps.'
Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).......... 11, 12

*Noble v. Caliber Home Loans, Inc.*,
2017 WL 4573349 (N.D. Cal. Oct. 13, 2017) ...................................................... 10

*Oceanside Organics v. Cnty. of San Diego*,
341 F. Supp. 3d 1129 (S.D. Cal. 2018) ................................................................. 9

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) ............................................................... 11

*Rubke v. Capitol Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009) .......................................................................... 7, 11

*Rutman Wine Co. v. E. & J. Gallo Winery*,
829 F.2d 729 (9th Cir. 1987) ................................................................................. 8

ii

Gibson, Dunn &
Crutcher LLP

*Taylor v. Apple, Inc.*,
  2022 WL 35601 (N.D. Cal. Jan. 4, 2022), *appeal dismissed in part*, No. 22-15180,
  2022 WL 18635795 (9th Cir. Aug. 22, 2022) ............................................................... 9

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
  669 Fed. Appx. 878 (9th Cir. 2016) ........................................................................... 11

*United States v. Valley Campus Pharmacy, Inc.*,
  2021 WL 5406148 (C.D. Cal. Oct. 12, 2021), *aff'd sub nom. Gharibian ex rel.
  United States v. Valley Campus Pharmacy, Inc.*, 2023 WL 195514 (9th Cir. Jan. 17,
  2023) ......................................................................................................................... 12

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) ..................................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ..................................................................................... 12

iii

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
CASE NO. 20CV1683-CAB-AHG

Defendants submit this memorandum in support of their motion to dismiss the Third Amended Class Action Complaint (Doc. 64) (the "TAC").

## I.    INTRODUCTION

This Court and Judge Cathy Ann Bencivengo have twice dismissed Plaintiffs' pleadings for failure to state a claim. Now in their fourth complaint, Plaintiffs advance—mostly verbatim—the same arguments and legal theories the Court already considered and rejected. The scant new allegations offered by Plaintiffs do not address, let alone remedy, the pleading deficiencies identified in the Court's dismissal orders. The TAC—like its predecessors—should again be dismissed, this time with prejudice.

As before, Plaintiffs challenge statements in documents filed by Progenity, Inc. ("Progenity" or the "Company") with the U.S. Securities and Exchange Commission ("SEC") in June 2020 in connection with Progenity's initial public offering (the "IPO"). Plaintiffs claim Progenity's IPO materials (the "Offering Materials") were false and misleading because they allegedly led investors to believe the Company's "core testing business [was] poised for success," supposedly without telling investors that: (1) due to a coding error, Progenity had incorrectly billed government payors beginning in 2019 and ending in early 2020 and would be required to refund them at least $10.3 million; (2) Progenity's testing volumes, average selling prices ("ASPs"), and revenues were declining; and (3) in February 2020 the Company purportedly had ended an allegedly illegal marketing practice. TAC ¶ 12.

The Court previously rejected each of these theories in dismissing the Second Amended Class Action Complaint ("SAC") in its entirety. The TAC contains no new allegations whatsoever in support of Plaintiffs' second and third theories. Plaintiffs' Section 11 claim based on these unchanged and deficient theories of liability should be dismissed without further consideration.

As to Plaintiffs' first theory—regarding alleged improper billing—the Court previously dismissed it because "Plaintiffs' evidence that the $10.3 million liability was 'knowable' at the time of the IPO amount[ed] to no more than speculation" and,

1

Gibson, Dunn &
Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RMB-AHG

"[m]oreover, Defendants were under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter."  Order Granting Defs.' Mot. to Dismiss Second Am. Compl. (Doc. 63) ("Op.") at 14.  Plaintiffs' amendments do not cure these defects.

Instead, Plaintiffs put forth correspondence with two states (Michigan and Florida) that they claim is relevant to showing that Progenity allegedly knew by early 2019 that it was required to use a new billing code for Preparent tests and that services represented by that code would not be reimbursed.  But as this Court has already explained, Defendants' alleged awareness of new billing code requirements for Preparent tests by the time of the IPO "does not warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration Statement took effect."  Op. at 13.  The TAC thus offers the same type of speculative allegations that the Court has already addressed and rejected, while offering no allegations that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3 million to government payors." *Id.* at 14.

In sum, the TAC offers only minimal changes that do not cure any—let alone all—of the deficiencies in Plaintiffs' previous three pleadings.  The TAC should therefore be dismissed, this time with prejudice, for failing to plead facts sufficient to state a claim for violation of the federal securities laws.

## II.    BACKGROUND

The TAC largely repeats the same allegations from Plaintiffs' three prior complaints, which are detailed in the parties' earlier briefing and the Court's decisions granting dismissal of those pleadings.  *See, e.g.,* Mem. in Supp. of Mot. to Dismiss Second Am. Compl. (Doc. 52-1) at 2-8; Op. at 2-6.  Defendants briefly recount the relevant allegations below.

Gibson, Dunn & Crutcher LLP

2

## A.    Relevant Background Allegations

Progenity is a biotechnology company that, at the time of the IPO, specialized in developing and commercializing molecular testing products and precision applications in maternal and gastrointestinal health.  *See* TAC ¶¶ 2, 62.  Progenity derived the majority of its revenue from billing government health care programs and private commercial health insurance companies for its testing products.  *Id*. ¶ 76. Billing for these tests required the assignment of a Current Procedure Terminology ("CPT") code describing the medical procedure performed, which also dictated the basis for reimbursement by government healthcare programs.  *Id*. ¶ 78.

On May 27, 2020, Progenity filed its Registration Statement on Form S-1 (the "Registration Statement") with the SEC.  *Id.* ¶ 220.   The Registration Statement described the potential business impact of the Company's reimbursement-related billing practices, including the risk that Progenity would need to refund payments based on incorrect coding.  Specifically, Progenity explained that while the Company "submit[s] for reimbursement using CPT codes that we believe are appropriate for our testing," "payors may seek refunds of amounts that they claim were inappropriately billed to a specified CPT code."  *Id.* ¶ 345.  The Company further cautioned that while it engaged in "efforts to implement appropriate monitoring of" its practices, "we have experienced situations in which employees may have failed to fully adhere to our policies and applicable laws in the past," and "[t]here can be no assurance that we will not experience similar issues in the future."  *Id*. ¶ 346.  Progenity explained that, in the event of coding errors, "[t]hird-party payors may decide to . . . recoup payment for testing . . . for which they have otherwise overpaid" and the Company "may be required to refund reimbursements already received."  *Id*. ¶ 347.  If this happened, refund "amounts could be significant and would impact [Progenity's] operating results and financial condition, and it may decrease reimbursement going forward."  *Id*.

On June 23, 2020, the Company completed its IPO and issued and sold 6,666,667 shares of common stock at $15.00 per share.  TAC ¶¶ 223–24.  Almost immediately

3

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT CASE NO. 20CV1683-RMB-AHG

after Progenity's IPO, the Company's stock price traded below the $15.00 per share offer price, dropping to as low as $7.98 per share the next month.[1]  This stock price decline occurred before any of the disclosures that Plaintiffs claim corrected the alleged misstatements in Progenity's Offering Materials—a judicially noticeable fact Plaintiffs still fail to acknowledge in the TAC.  *See* Op. at 8; *see also In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 799 (9th Cir. 2017); TAC ¶¶ 225–26.

On August 13, 2020, Progenity reported that, during a compliance review, it discovered a government-payor billing issue that would require the Company to accrue an expense on its financial statements to account for the reimbursement of overbilled amounts.  TAC ¶¶ 226–29.  As a result of this review, Progenity determined that "over the last 18 months, [it] received an overpayment of approximately $10.3 million from government payors during 2019 and early 2020."  *Id*. ¶ 228.

The Company's Form 10-Q, filed the next day, made clear that the potential overpayments were still being calculated.  TAC ¶¶ 226, 230.  Progenity stated that while "the final analysis of the amount of the overpayment is *still being completed*," the Company took prophylactic action to accrue a $10.3 million charge for reimbursement, "*as a result of the analysis to date*."  *Id*. ¶ 230 (emphasis added).  The Company explained that its "deadline to report and return the overpayment to the government programs is 60 days from the time the overpayment was *determined and quantified*, thus the Company expects to repay this amount to the relevant government programs by early October 2020."  *Id*. (emphasis added).

### B.  Procedural History

#### 1.  The Court Dismisses Plaintiffs' Prior Two Amended Complaints In Full

Following consolidation and appointment of lead plaintiffs pursuant to the PSLRA, Plaintiffs filed a first amended complaint ("FAC") on February 4, 2021,

---

[1] *See* Doc. 52-1 at 5; Doc. 52-2, Declaration of Alexander K. Mircheff, Ex. A at 13; *see also* Op. at 8 (taking judicial notice of Progenity's stock price history in Exhibit A).

4

alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). Doc. 38. On September 1, 2021, Judge Bencivengo dismissed the FAC with leave to amend. Doc. 48.

Plaintiffs filed a second amended complaint ("SAC") on September 22, 2021. Doc. 49. In that complaint, Plaintiffs claimed Progenity's IPO materials were false and misleading because they allegedly led investors to believe the Company's "core testing business [was] poised for success," supposedly without telling investors that: (1) due to a coding error, Progenity had incorrectly billed government payors beginning in 2019 and ending in early 2020; (2) Progenity's testing volumes, average selling prices ("ASPs"), and revenues were declining; and (3) in February 2020 the Company purportedly had ended "the illegal marketing practice on which the competitiveness of its business depended." SAC ¶ 12. On November 15, 2021, Defendants moved to dismiss, arguing that the SAC failed to remedy any deficiency the Court previously identified in the FAC, and that Plaintiffs' new theory—that "Progenity failed to disclose the 'decision' in February 2020 to end an allegedly improper marketing practice"—also failed to state a claim. Doc. 52-1 at 6, 13, 25–28.

Plaintiffs opposed Defendants' motion on January 14, 2022, and requested leave to amend "if necessary" because, "[a]s they did in the SAC, Plaintiffs could further supplement their allegations with additional research, witness interviews, and other sources." Doc. 54 at 24. As discussed below, Plaintiffs also attached the same documents relating to Michigan and Florida and asserted the same allegations as they do in the TAC. *Id.* at 25; Doc. 54-1, Exhs. 1-5

This Court dismissed the SAC in full. Op. at 1, 31. Relevant here, the Court found that (1) the Company "made various statements in the Registration Statement disclosing the possibility that payors could seek refunds of amounts paid," Op. at 29; (2) Defendants' alleged awareness of new billing code requirements for Preparent tests by the time of the IPO "does not warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration

5

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT CASE NO. 20CV1683-RMB-AHG

Statement took effect," *id.* at 13; (3) the Company's "overpayment was not 'determined and quantified' until August 2020 following a third-party review," and "[t]hus, the scope of the potential overpayment was not determined until nearly two months after the June 2020 IPO," *id*. at 12; and (4) Defendants "were under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter," *id.* at 14. The Court granted Plaintiffs leave "to file an amended complaint which cures all the deficiencies of pleading noted." *Id*. at 31.

### 2.    Plaintiffs File A Nearly Identical Third Amended Complaint

On February 3, 2023, Plaintiffs filed the TAC. In this fourth bite at the apple, Plaintiffs advance the exact same theories of liability and challenge the same allegedly misleading statements. *See* TAC, Ex. 7 ¶¶ 321–412 (redline of TAC). The TAC is nearly a verbatim copy of the SAC, save for two exceptions which fail to address the pleading deficiencies noted in the Court's prior order. *See* TAC, Ex. 7.

First, Plaintiffs add background allegations that, since the IPO, Progenity has allegedly exited the genetic testing business and changed its business activities, Defendant Stylli has left Progenity, and Progenity has changed its name. TAC ¶ 16. These allegations are irrelevant, and the TAC does not suggest otherwise. Second, Plaintiffs add a single new subsection in support of their theory that Defendants failed to disclose at the time of the IPO that Progenity had improperly billed government payors for Preparent tests. TAC ¶¶ 145–54. According to Plaintiffs, these new allegations—which were also asserted in Plaintiff's opposition to Defendants' prior motion to dismiss, Doc. 54 at 25,[2] and are based on correspondence between Progenity and Florida and Michigan health agencies in January 2019 and Progenity "claims data" provided to Plaintiffs by Michigan in 2021 (the "Michigan Data")—show that "from at least January 2019, Progenity was on notice that government health care programs

---

[2] Plaintiffs also claimed in their prior opposition that, if granted leave to amend, they "could further supplement their allegations with additional research, witness interviews, and other sources." Doc. 54 at 24. Tellingly, the TAC does no such thing.

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RMB-AHG

would require use of the new 81443 billing code, and that in some cases this would reduce or eliminate reimbursements to Progenity for its Preparent tests," TAC ¶ 149, and that "from at least March 2019, Progenity used []the new 81443 billing code for claims to Michigan, and was on notice that Michigan was not reimbursing those claims," *id.* ¶ 154. Plaintiffs do not offer any allegations showing that Defendants knew of the $10.3 million refund liability or that this liability had been calculated at the time of the IPO, and the TAC contains no other substantive changes. *See id*., Ex. 7.

## I.    LEGAL STANDARD

A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court is not required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

As this Court recognized in its prior order, Section 11 claims that "sound in fraud" must satisfy the heightened pleading standards of Rule 9(b). *See* Op. at 9 n.3; *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003). The TAC doubles down on Plaintiffs' allegations that the Company was "aware" or "knew" of the billing issues and their potential impact on revenue. *See, e.g.*, TAC ¶¶ 145–54; *see also* Doc. 52-1 at 8–9. Because the TAC—like the SAC—attempts again to ground liability on a "unified course of fraudulent conduct," Plaintiffs must "state with particularity the circumstances constituting fraud" by "set[ting] forth what is false or misleading about [the challenged] statement[s], and why [they are] false." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (internal quotation marks omitted). Plaintiffs fail once again to plead each challenged misstatement or omission with specificity, which again defeats their claims.

Gibson, Dunn & Crutcher LLP

Even if Rule 9(b)'s heightened pleading standard does not apply, Plaintiffs' Section 11 claim fails to satisfy Rule 8's notice pleading standard.  The Court previously held that Plaintiffs failed to plead facts giving rise to a plausible claim that the Offering Materials contained material misstatements or omissions.  *See* Op. at 9 n.3.  Nothing in the TAC changes this conclusion.

## III.    ARGUMENT

### A.    Plaintiffs Fail To Plead Any Actionable Misleading Statement Or Omission Under Section 11.

In granting Plaintiffs leave to amend the SAC, the Court instructed Plaintiffs to "file an amended complaint which cures all the deficiencies of pleading noted."  Op. at 31.  Plaintiffs make no attempt to follow this instruction.  Instead, with one minor exception, the TAC repleads the exact same legal theories and allegations in support of Plaintiffs' Section 11 claim as the SAC and fails to correct *any* of the deficiencies identified by the Court.

### 1.    All of Plaintiffs' Unamended and Uncured Theories Should be Dismissed.

Plaintiffs offer no new allegations with respect to two of their three "omission" theories, i.e., that: (1) Progenity allegedly omitted that its testing volumes, ASPs and revenues were declining, and (2) in February 2020, the Company purportedly ended an alleged illegal marketing practice.  *See generally* TAC Ex. 7.  Plaintiffs likewise do not offer any new allegations in support of their theory that Defendants' alleged omissions violate Items 105 and 303 of Regulation S-K.  *See id.*  Because the Court addressed and rejected each of these theories in its prior order, *see* Op. at 15–30, and because Plaintiffs have made no attempt to cure the defects identified by the Court, and have instead "re-pled the same facts and legal theories," the Court should dismiss Plaintiffs' Section 11 claim based on each of these theories without further consideration and with prejudice.  *See Loos v. Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014) (internal quotation marks omitted); *see also Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738

8

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT CASE NO. 20CV1683-RMB-AHG

(9th Cir. 1987) (affirming denial of leave to amend where amended complaint failed to cure defects identified in order dismissing prior complaint); *Taylor v. Apple, Inc.*, 2022 WL 35601, at *1 (N.D. Cal. Jan. 4, 2022), *appeal dismissed in part*, No. 22-15180, 2022 WL 18635795 (9th Cir. Aug. 22, 2022) ("Because the amendments do not cure the defects identified in the dismissal order, the amended complaint will be dismissed, without further leave to amend."); *Oceanside Organics v. Cnty. of San Diego*, 341 F. Supp. 3d 1129, 1147 (S.D. Cal. 2018) (denying leave to amend where plaintiffs failed multiple times to cure the same pleading defects).

### 2. The TAC Does Not Cure Plaintiffs' Defective "Improper Billing" Theory

As in the two prior complaints, Plaintiffs allege that statements in the Offering Materials regarding Progenity's financial statements, and billing and revenue practices, were false as a result of the Company's failure to disclose that "Progenity had improperly billed government payors for Preparent tests beginning in 2019 and ending in or before early 2020." TAC ¶ 322. But Plaintiffs still allege no facts demonstrating that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3 million to government payors." Op. at 14.

Plaintiffs contend that their new allegations somehow prove that Progenity was aware that "government health care programs" would require use of the 81443 billing code, and that "in some cases this would reduce or eliminate reimbursements to Progenity for its Preparent tests." TAC ¶ 149. Plaintiffs further contend that the Michigan Data shows that Michigan "never reimbursed Progenity for any claims billed with the 81443 billing code." *Id.* ¶ 153. As an initial matter, Plaintiffs' allegations concern stated billing positions of just two states, and not what Progenity was told by "government health care programs" more broadly. Moreover, Plaintiffs repeat their allegation from the SAC that, according to confidential witnesses, "some [payors] asked Progenity to bill under the old code because they had not switched to the new code yet," *id.* ¶ 137, and that "some private and governmental payors did not adopt or recognize

9

the new code, which gave rise to inconsistencies between coding for different payors," *id*. ¶ 131. Regardless, Plaintiffs new allegations ignore and do not cure the specific deficiencies identified by this Court and by Judge Bencivengo and do not suffice to state a claim.

In dismissing the SAC, this Court held that "Plaintiffs' evidence that the $10.3 million liability was 'knowable' at the time of the IPO amount[ed] to no more than speculation" and, ["m]oreover, Defendants were under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter." Op. at 14. Plaintiffs' new allegations require exactly the same improper speculation and do not alter this Court's conclusion that Plaintiffs failed to plead a Section 11 claim based on an alleged omission of the $10.3 million refund liability. Op. at 10–15; *see also Noble v. Caliber Home Loans, Inc.*, 2017 WL 4573349, at \*2 (N.D. Cal. Oct. 13, 2017) (dismissing complaint with prejudice "[b]ecause Plaintiffs did not even attempt to cure certain deficiencies identified in the Court's [prior] Order"). As this Court explained, Defendants' alleged awareness of new billing code requirements for Preparent tests by the time of the IPO "does not warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration Statement took effect." Op. at 13 (citing *Daniels-Hall*, 629 F.3d at 998). Accepting Plaintiffs' own characterization, the Florida and Michigan correspondence thus does not move the needle. TAC ¶ 149. Plaintiffs' reliance on the Michigan Data is likewise beside the point and is insufficient under both Rule 9(b) and Rule 8(a). According to Plaintiffs, this data shows (i) that Michigan "never reimbursed Progenity for any claims billed with the 81443 billing code," *id*. ¶ 153, and (ii) that Progenity supposedly stopped "regular[]" use of the 81443 billing code for Michigan in June 2019 before resuming in May 2020 prior to the IPO, *id*. ¶ 151–52. In other words, Plaintiffs allege that Michigan *did not pay* Progenity for certain claims, but they offer no facts showing that Progenity knew it had been *overpaid* by Michigan—let alone that Progenity knew of overpayments from any other payor. Likewise, Plaintiffs invite speculation about Progenity's use of

10

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT CASE NO. 20CV1683-RMB-AHG

the 81443 code for Michigan, but offer no facts that Progenity incorrectly billed Michigan.[3]  The Michigan Data thus does not and cannot show that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3 million to government payors."  Op. at 14.

Nor do Plaintiffs offer any new allegations rebutting the Court's prior conclusion that "Defendants were under no obligation to audit and report their second quarter 2020 financial results prior to the end of that fiscal quarter."  Op. at 14.  Accordingly, just as before, Progenity's refund liability did not exist *until it was determined*, and "the scope of the potential overpayment was not determined until nearly two months after the June 2020 IPO."  Op. at 12; *see also Rubke*, 551 F.3d at 1164 ("A claim under section 11 based on the omission of information must demonstrate that the omitted information *existed* at the time the registration statement became effective." (emphasis added)); *In re Restoration Robotics, Inc. Sec. Litig*., 417 F. Supp. 3d 1242, 1254 (N.D. Cal. 2019) ("[O]missions are actionable only if a defendant has a duty to disclose information and fails to do so.").

In sum, the TAC does not cure any of the deficiencies in Plaintiffs' SAC. Plaintiffs' Section 11 claim should therefore be dismissed with prejudice.

### B.    The Complaint Fails To State A Claim Under Section 15

"'[T]here can be no Section 15 violation without an underlying Section 11 violation.'"  Op. at 30 (quoting *In re Ubiquiti Networks, Inc. Sec. Litig*., 669 Fed. Appx. 878, 880 (9th Cir. 2016)).  "Because the [TAC] fails to adequately plead a primary violation under the Securities Act . . . the claims brought under § 15 of the Securities Act" necessarily fail once again.  *Mallen v. Alphatec Holdings, Inc*., 2013 WL 1294640, at *13 (S.D. Cal. Mar. 28, 2013) (dismissing amended complaint with prejudice), *aff'd*

---

[3] Notably, the Court has already rejected similar billing-activity allegations as insufficient.  Op. at 11 (addressing claim that "Progenity improperly billed government payors for Preparent tests beginning in 2019, but identified and stopped this practice in or before early 2020, prior to the IPO.").

11

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RMB-AHG

*sub nom. Fresno Cty. Emps.' Ret. Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).

### C.     The TAC Should Be Dismissed With Prejudice

Plaintiffs have filed four complaints.  Their first and second amended complaints were dismissed in full for failure to state a claim.  The TAC does not cure any of the prior deficiencies.  Plaintiffs' failure to correct the SAC's deficiencies in the TAC is "a strong indication that the plaintiffs have no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotation marks omitted).  Dismissal with prejudice is now appropriate.  *See Loos*, 762 F.3d at 890–91 (affirming dismissal with prejudice where "Plaintiff failed to correct the deficiencies identified in his original complaint" and "'essentially re-pled the same facts and legal theories'"); *United States v. Valley Campus Pharmacy, Inc.*, 2021 WL 5406148, at *5–6 (C.D. Cal. Oct. 12, 2021) (denying leave to amend where plaintiff's "new allegation d[id] not fix the issues identified in the Court's Dismissal Order"), *aff'd sub nom. Gharibian ex rel. United States v. Valley Campus Pharmacy, Inc.*, 2023 WL 195514 (9th Cir. Jan. 17, 2023); *Mallen*, 2013 WL 1294640, at *14 ("Because of Plaintiff's inability to cure the deficiencies in its pleading, the Court's dismissal is with prejudice." (emphasis omitted)); *Ass'n for Info. Media & Equip. v. Regents of the Univ. of California*, 2012 WL 7683452, at *8 (C.D. Cal. Nov. 20, 2012) ("None of the new allegations in the SAC change the Court's analysis. The Court therefore grants the motion to dismiss with prejudice as to this claim.").

## IV.     CONCLUSION

The TAC should be dismissed with prejudice.

Gibson, Dunn & Crutcher LLP

Dated: March 20, 2023

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Alexander K. Mircheff*
Brian M. Lutz
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Email: blutz@gibsondunn.com

Alexander K. Mircheff
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Email: amircheff@gibsondunn.com

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

O'MELVENY & MEYERS LLP

By: */s/ Daniel L. Cantor*
Daniel L. Cantor
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone: 212.326.2000
Email: dcantor@omm.com

Matthew W. Close
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: 213.430.6000
Email: mclose@omm.com

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

13

# SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the above listed counsel, and that I have obtained authorization to affix all electronic signatures to this document.

Dated: March 20, 2023          GIBSON, DUNN & CRUTCHER LLP

By: /s/ Alexander K. Mircheff
Alexander K. Mircheff

Gibson, Dunn & Crutcher LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RMB-AHG