BRIAN M. LUTZ, SBN 255976
  blutz@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200

ALEXANDER K. MIRCHEFF, SBN 245074
  amircheff@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

MATTHEW W. CLOSE, SBN 188570
  mclose@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: 213.430.6000

DANIEL L. CANTOR
(*pro hac vice*)
  dcantor@omm.com
O'MELVENY & MEYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone: 212.326.2000

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | CASE NO. 20cv1683-RBM-AHG **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** Judge: Hon. Ruth Bermudez Montenegro |

Gibson, Dunn & Crutcher LLP

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ...................................................................................................1

II.    PLAINTIFFS' MINOR AMENDMENTS DO NOT REMEDY THEIR FAILURE TO PLEAD ANY ACTIONABLE MISLEADING STATEMENT OR OMISSION. ....................................................................2

    A.    Plaintiffs' Unamended and Uncured Theories Should be Dismissed.........2

    B.    The TAC Does Not Cure Plaintiffs' Defective "Improper Billing" Theory. ........................................................................3

        1.    Plaintiffs Allege No Facts Showing That Progenity Knew Or Reasonably Could Have Known Of The Overbilling And Refund Liability Prior To The IPO......................................3

        2.    Plaintiffs Allege No Facts Showing That Progenity's Financial Statements for Q1 2020 Violated Accounting Standards.....................................................................5

        3.    The Court Has Already Rejected Plaintiffs' Claim That Progenity's Knowledge of Overbilling Alone Could Be Material. ...........................................................7

III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 15 ...................................................................................9

IV.    THE TAC SHOULD BE DISMISSED WITH PREJUDICE ...........................9

V.     CONCLUSION ...................................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................2

*Berg v. Velocity Fin., Inc.*,
    2021 WL 268250 (C.D. Cal. Jan. 25, 2021)..........................................................7, 8

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) .............................................................................2, 5, 9

*Hunt v. Bloom Energy Corp.*,
    2021 WL 4461171 (N.D. Cal. Sept. 29, 2021).........................................................6

*Mehedi v. View, Inc.*,
    2023 WL 3592098 (N.D. Cal. May 22, 2023)...........................................................6

*Noble v. Caliber Home Loans, Inc.*,
    2017 WL 4573349 (N.D. Cal. Oct. 13, 2017) ..........................................................4

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)................................................................................................2, 6

*In re Resonant Inc. Sec. Litig.*,
    2016 WL 1737959 (C.D. Cal. Feb. 8, 2016) ............................................................2

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ..................................................................................6

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
    669 Fed. Appx. 878 (9th Cir. 2016) ..........................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ....................................................................................9

**RULES**

Rule 8 ...........................................................................................................................4

Rule 9(b) ...................................................................................................................2, 4

ii

Gibson, Dunn &
Crutcher LLP

**REGULATIONS**

17 C.F.R. § 240.13a-13 ................................................................................................. 7

iii

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-CAB-AHG

## I.   **INTRODUCTION**[1]

In opposing dismissal of their fourth complaint, Plaintiffs concede that the TAC advances—with just one exception—the exact same allegations and legal theories from the SAC that the Court already rejected.  Opp. Br. at 16.  Plaintiffs' claims based on these unchanged and deficient theories of liability should be summarily dismissed.

That leaves just one theory—regarding alleged improper billing.  But just as the Court held before, Plaintiffs' "evidence that the $10.3 million liability was 'knowable' at the time of the IPO" amounts to "no more than speculation."  Op. at 14.  Plaintiffs still allege no *facts* whatsoever showing that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3 million to government payors."  *Id*.  The TAC instead doubles down on exactly the type of speculative allegations that the Court has already addressed and rejected.  Plaintiffs rely entirely on correspondence with two states (Michigan and Florida), and "claims data" from one of those states (Michigan), which they allege shows that Progenity knew by early 2019 that it was required to use a new billing code for Preparent tests and that services billed using that code would not be reimbursed.  Opp. Br. at 1, 6–8.  As this Court has already explained, however, simply because Defendants were aware that there was a new billing code for Preparent tests by the time of the IPO "does not warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration Statement took effect."  Op. at 13.

Plaintiffs' new allegations change nothing, and the TAC should be dismissed with prejudice.

---

[1] Capitalized terms used but not defined in this reply have the meanings given to them in the Defendants' opening brief ("Mem.") (Doc. No. 67-1). References to "Opposition" or "Opp. Br." are to Plaintiffs' opposition brief to the instant motion (Doc No. 68). Unless otherwise noted, all emphasis is added, and all internal quotation marks and citations are omitted.

1

## II.    PLAINTIFFS' MINOR AMENDMENTS DO NOT REMEDY THEIR FAILURE TO PLEAD ANY ACTIONABLE MISLEADING STATEMENT OR OMISSION.

Section 11's omissions clause "affords a cause of action only when an issuer's failure to include a *material* fact has rendered a published statement misleading." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015).  Moreover, a plaintiff must adequately plead "that a purported misstatement in a registration statement was misleading *at the time the registration statement was issued*."  *In re Resonant Inc. Sec. Litig.*, 2016 WL 1737959, at \*7 (C.D. Cal. Feb. 8, 2016).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Here, the Court previously held that Plaintiffs failed to plead facts giving rise to a plausible claim that the Offering Materials contained material misstatements or omissions.  *See* Op. at 9 n.3.  Nothing in the TAC changes this conclusion—let alone comes close to satisfying the heightened pleading standards of Rule 9(b).  *See* Mem. at 7–8.  The TAC thus fails to plead a Section 11 claim.

### A.    Plaintiffs' Unamended and Uncured Theories Should be Dismissed.

In dismissing the SAC, the Court granted Plaintiffs leave to amend "to file an amended complaint which cures *all* the deficiencies of pleading noted."  Op. at 31.  Plaintiffs admit that "they have not amended their allegations concerning" two of their three "omission" theories: (1) Progenity allegedly omitted that its testing volumes, ASPs and revenues were declining and (2) in February 2020, the Company purportedly ended an alleged illegal marketing practice.  *See* Opp. Br. at 16.  Plaintiffs likewise offer no new allegations and no new substantive arguments for their incorrect assertion that

2

Defendants failed to meet disclosure obligations under Items 105 and 303 of SEC Regulation S-K. Opp. Br. at 8–9, 17–19; *see also, e.g.*, Doc. 54 at 23–24. All of these claims thus fail for the same reasons set out in the briefing on Defendants' motion to dismiss the SAC—which Defendants incorporate in full—and the Court's prior Order dismissing the SAC. *See* Op. at 15–30; *see also* Doc. 52-1 at 9–25; Doc. 55 at 5–8. The Court should therefore dismiss Plaintiffs' Section 11 claim based on each of these theories without further consideration and with prejudice. Mem. at 8–9.

## B. The TAC Does Not Cure Plaintiffs' Defective "Improper Billing" Theory.

As Plaintiffs admit, this Court previously held that to plead a Section 11 claim based on their "improper billing" theory, Plaintiffs must plead facts that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3 million to government payors." Op. at 14; *see also* Opp. Br. at 5. Despite Plaintiffs' assertion that they "could further supplement their allegations with additional research, witness interviews, and other sources," see Op. at 31, Plaintiffs have not done so; rather, the TAC relies on precisely the same "speculation" about what Progenity knew or supposedly should have known that this Court previously rejected. Op. at 14; *see also* Opp. Br. at 5–16. None of Plaintiffs' new arguments offered in support of their improper billing theory resolve this defect, so the Section 11 claim based on this theory should be dismissed.

### 1. Plaintiffs Allege No Facts Showing That Progenity Knew Or Reasonably Could Have Known Of The Overbilling And Refund Liability Prior To The IPO.

Plaintiffs' claim that "new allegations" in the TAC supply the evidence of Progenity's knowledge of overbilling "that the Court found to be lacking when it dismissed the SAC," Opp. Br. at 6–8, is wrong and easily rebutted. The only new allegations in the TAC concerning Plaintiffs' improper billing theory relate to (i) correspondence between Progenity and Florida and Michigan health agencies in

3

January 2019, and (ii) Progenity "claims data" provided to Plaintiffs by Michigan in 2021 (the "Michigan Data"). Mem. at 6–7. But by Plaintiffs' own account, the Florida and Michigan correspondence merely suggests that "Progenity was on notice that government health care programs required use of the new 81443 billing code, and that in some cases this would reduce or eliminate reimbursements to Progenity for its Preparent tests." Opp. Br. at 7; TAC ¶ 149. And as this Court has already held, Defendants' alleged awareness of new billing code requirements for Preparent tests by the time of the IPO "does not warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration Statement took effect." Op. at 13–14; *see also* Mem. at 9–11. The Florida and Michigan correspondence therefore changes nothing. *See* TAC ¶ 149; *see also Noble v. Caliber Home Loans, Inc*., 2017 WL 4573349, at \*2 (N.D. Cal. Oct. 13, 2017) (dismissing complaint with prejudice "[b]ecause Plaintiffs did not even attempt to cure certain deficiencies identified in the Court's [prior] Order").

Plaintiffs' reliance on the Michigan Data also fails. Plaintiffs claim the Michigan Data "shows" that Progenity "incorrectly failed" to use the 81443 code when billing Michigan Medicaid for eleven months between June 2019 and April 2020, before "recogniz[ing] its error." Opp. Br. at 7–8. But neither the TAC nor the annexed exhibits show any such thing; instead, the TAC merely alleges that Progenity did not submit claims under the 81443 code to Michigan Medicaid from June 2019 until October 2019 (when Progenity did submit a claim) and then from November 2019 through May 2020.[2] TAC ¶¶ 145–54; TAC Exhibits 2–6. The TAC pleads no facts whatsoever showing that Progenity incorrectly billed Michigan Medicaid for Preparent tests during this period under a different code—let alone that Progenity "recognized" an error in its billing and

---

[2] Plaintiffs admit as much later in their Opposition when they ask the Court to "infer[]" that Progenity incorrectly billed Michigan. Opp. Br. at 15–16. But conclusory allegations and unwarranted inferences do not suffice to state a claim under Rule 8—let alone under Rule 9(b)'s heightened pleading standard. Op. at 14; *see also* Mem. at 10–11.

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RBM-AHG

"was aware of its overbilling prior to the IPO." Opp. Br. at 7–8 (emphasis omitted); *see* Mem. at 10–11.[3] Plaintiffs' suggestion otherwise relies entirely on the same type of speculative allegations that the Court has already addressed and rejected. *See* Op. at 11–13 (addressing claim that "Progenity improperly billed government payors for Preparent tests beginning in 2019, but identified and stopped this practice in or before early 2020, prior to the IPO"); *see also Daniels-Hall*, 629 F.3d at 998.

### 2. Plaintiffs Allege No Facts Showing That Progenity's Financial Statements for Q1 2020 Violated Accounting Standards.

Plaintiffs' assertion that Progenity's financial statements for the first quarter of 2020 ("Q1 2020") violated accounting standards—and were supposedly misleading for purposes of Section 11 as a result—(Opp. Br. at 9–11) also collapses under minimal scrutiny. Plaintiffs' sole argument is that the TAC's new allegations purportedly demonstrate that "Progenity had discovered and corrected its overbilling for Preparent tests" prior to the IPO, and so was supposedly required under ASC 450 "to take this information into account" in its Q1 2020 financial statements. Opp. Br. at 9; *see also id.* at 10. But as discussed in the preceding section, none of Plaintiffs' new allegations show any such thing. *See* TAC ¶¶ 145–54. Indeed, the TAC does not challenge Progenity's disclosure that the amount of the overpayment was not "determined and quantified" by Progenity until nearly *two months after the IPO*. TAC ¶ 230. The law is clear: "[a] claim under [S]ection 11 based on the omission of information must demonstrate that the omitted information existed at the time the registration statement

---

[3] In attempt to bolster their inadequate allegations, Plaintiffs fall back on allegations—unchanged from the SAC—that Progenity supposedly audited its billing processes beginning in late 2019. Opp. Br. at 8. But the Court has already addressed and rejected Plaintiffs' argument that these unchanged allegations "warrant the conclusory deduction that Progenity's overbilling and $10.3 million refund liability was knowable by the time the Registration Statement took effect." Op. at 12–13.

5

became effective." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1164 (9th Cir. 2009). Plaintiffs' failure to do so forecloses their claim.[4]

In any event, statements in Progenity's financial reports reflect accounting judgments, and are therefore opinion statements that must be analyzed under the framework established by the Supreme Court in *Omnicare*. *See Hunt v. Bloom Energy Corp.*, 2021 WL 4461171, at *5 (N.D. Cal. Sept. 29, 2021) (dismissing Section 11 claim premised on ASC 450). Under *Omnicare*, it is not enough to plead that an accounting judgment "was wrong." *Omnicare, Inc.*, 575 U.S. at 194. Rather, as an initial step, Plaintiffs must identify particular *facts* that Progenity omitted "about the inquiry [it] did or did not conduct or the knowledge [it] did or did not have" in issuing its Q1 2020 financial statements. *Id.* at 194; *see also Hunt*, 2021 WL 4461171, at *5. Plaintiffs plead no such facts, but instead rely exclusively on the conclusory and incorrect assertion—unsupported by the actual allegations in the TAC or the exhibits thereto— that Progenity had "identified and corrected [its] overbilling for Preparent tests" prior to the IPO. Opp. Br. at 10. It is well settled that "[c]onclusory assertions are insufficient." *Hunt*, 2021 WL 4461171, at *5 (rejecting "allegations about Defendants' alleged knowledge" that were "conclusory and belied by other allegations in the complaint"). Further, Plaintiffs expressly disclaim any allegations of fraud, TAC ¶ 422, which "would be inconsistent with any allegation that [Progenity] knew that its statements were false." *See Mehedi v. View, Inc.*, 2023 WL 3592098, at *10 (N.D. Cal. May 22, 2023) (finding Plaintiff could not "plead falsity of an opinion under *Omnicare*" where, "within the Section 11 claim, Plaintiff disclaim[ed] any allegations of fraud"). Accordingly, the

---

[4] Moreover, in dismissing the FAC, the Court held that "Defendants would only be required by ASC 450 to accrue the refund liability in the first quarter of 2020 if it were 'probable that . . . a liability had been incurred at the date of the financial statements' and the 'amount of loss [could] be reasonably estimated.'" Doc. No. 48 at 11 (omission and alterations in original).

6

Gibson, Dunn & Crutcher LLP

TAC fails to plead a Section 11 claim based on Progenity's Q1 2020 financial statements.[5]

### 3. The Court Has Already Rejected Plaintiffs' Claim That Progenity's Knowledge of Overbilling Alone Could Be Material.

Plaintiffs again fail to show that Progenity knew or reasonably could have known that the overbilling of Preparent tests was material until the existence and amount of the overbilling became known. Opp. Br. at 11–13. Plaintiffs suggest there is some "doubt" about whether Defendants' alleged failure to disclose the overbilling of Preparent tests itself could be materially misleading, regardless of when Progenity determined the amount of the overbilling. *Id.* at 11. There is none. Judge Bencivengo directly addressed and rejected this exact argument in dismissing the FAC, ruling that "an actionable omission under Section 11 must be material, and the fact that Progenity had overbilled some payors could not be material until the amount of that overbilling and resulting liability was quantified." Doc. No. 48 at 10 ("[I]t is the actual accrual of the . . . refund liability itself—and more specifically the calculation of the exact amount of that liability—that is material and potentially actionable under Section 11."). In dismissing the SAC, this Court found Plaintiffs' allegations of overbilling failed to state a claim because "Plaintiffs [had] not established that Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled *and would have to refund $10.3 million to government payors*." Op. at 14.

In any event, Plaintiffs' final argument relies on the same incorrect contentions addressed above regarding Progenity's supposed knowledge of the overbilling of Preparent tests at the time of the IPO and its purported failure to disclose the risk of

---

[5] Plaintiffs ignore the Court's prior holding in this case that "Defendants were under no obligation to disclose their real-time revenue data at the time that the Registration Statement took effect," Op. at 12, 24, as well as the limits of Progenity's disclosure obligations, *see* 17 C.F.R. § 240.13a-13 (affording issuers 45 days from the end of a fiscal quarter to file their quarterly disclosures); *see also Berg v. Velocity Fin., Inc.*, 2021 WL 268250, at *5 n.1 (C.D. Cal. Jan. 25, 2021) (recognizing that companies "need[] time to audit [financial] data before including it in any public materials").

overbilling in its Q1 2020 financial statements, Opp. Br. at 11–13, and so fails for the same reasons. *See supra* § II.B.1–II.B.2. Plaintiffs attempt to mask this defect by once again overstating their allegations. Specifically, citing paragraphs 349–59 of the TAC (which merely recycle allegations from the SAC), Plaintiffs suggest it would be material to reasonable investors that Progenity had "systemically overbilled" for Preparent testing. Opp. Br. at 12–13. But nowhere in these paragraphs or anywhere else does the TAC allege facts showing Progenity was aware of any "systemic" overbilling at the time of the IPO. *See Berg*, 2021 WL 268250, at *5 (liability under Section 11 "only attaches for misrepresenting [or omitting] information that was available *when the offering materials became effective*"). Indeed, based on the Michigan Data, Progenity received only $25,755.91 in total payments from Michigan (including payments Plaintiffs do not claim were improper) for the period July 1, 2018 to September 30, 2020. *See* TAC Exhibit 6 at 36. This further undermines the reasonableness of Plaintiffs' inference that Progenity was aware of material overpayments that would need to be reimbursed—let alone that Progenity "knew or reasonably could have known" at the time of the IPO that it "had overbilled and would have to refund $10.3 million to government payors." Op. at 14. As the Court recognized in dismissing the SAC, "Plaintiffs' limited allegations do not indicate that Defendants had reason to believe a 'significant reversal in the amount of cumulative revenue recognized' would occur at the time the Registration Statement took effect." Op. at 13 n.5. The TAC thus does not—and, as the Court previously held, cannot—plead a Section 11 claim based only on Defendants' alleged failure to disclose the overbilling of Preparent tests itself. Op. at 14; *see also* Doc. No. 48 at 10.

******

Each of Plaintiffs' arguments fail due to the same core defect: Plaintiffs cannot plead a Section 11 claim based on conclusory allegations and speculation, and they must—but have not—plead *facts* showing that "Defendants knew or reasonably could have known by June 18, 2020 that they had overbilled and would have to refund $10.3

8

million to government payors."[6]  Op. at 14; *see also Daniels-Hall*, 629 F.3d at 998. Accordingly, Plaintiffs' claims based on alleged improper billing should be dismissed just as before.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 15

Because "[t]here can be no Section 15 violation without an underlying Section 11 violation," Plaintiffs' Section 15 claim necessarily fails once again.  Op. at 30 (quoting *In re Ubiquiti Networks, Inc. Sec. Litig*., 669 Fed. Appx. 878, 880 (9th Cir. 2016)).

## IV.   THE TAC SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' failure to correct their prior pleading deficiencies in the TAC is "a strong indication that the plaintiffs have no additional facts to plead."  *Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1007 (9th Cir. 2009).  Plaintiffs have had four bites at the proverbial apple; dismissal with prejudice is now appropriate.  Mem. at 12.

## V.   CONCLUSION

The TAC should be dismissed with prejudice.

---

[6] In Section III.D of their Opposition, Plaintiffs try but fail to rebut Defendants' showing that the TAC's new allegations are insufficient, but tellingly focus on discrete issues raised in Defendants' opening memorandum—that the new allegations relate just to two states and that the TAC alleges that some payors asked Progenity to bill under the old code because they had not switched to the new code yet.  Opp. Br. at 13.  But both of these statements are unquestionably true and, regardless, the fact remains that the TAC's new allegations *do not* show that "Progenity knew it had overbilled for its Preparent tests" at the time of the IPO, as Plaintiffs try to claim.  Opp. Br. at 13; *see* Mem. at 10–11.  Plaintiffs' remaining arguments in Section III.D, Opp. Br. at 14–16, are duplicative of their affirmative arguments raised in Sections III.A–C, and all fail for the reasons discussed above.  *See supra* § II.B.1–II.B.3.

9

Dated: June 5, 2023

GIBSON, DUNN & CRUTCHER LLP

By: /s/ Alexander K. Mircheff
Brian M. Lutz
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Email: blutz@gibsondunn.com

Alexander K. Mircheff
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Email: amircheff@gibsondunn.com

*Attorneys for Defendants Progenity, Inc., Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell*

O'MELVENY & MEYERS LLP

By: /s/ Daniel L. Cantor
Daniel L. Cantor
Times Square Tower
7 Times Square
New York, NY 10036-6537
Telephone: 212.326.2000
Email: dcantor@omm.com

Matthew W. Close
400 South Hope Street
Los Angeles, CA 90071-2899
Telephone: 213.430.6000
Email: mclose@omm.com

*Attorneys for Defendants Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG LLC*

Gibson, Dunn & Crutcher LLP

REPLY BRIEF IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
CASE NO. 20CV1683-RBM-AHG

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to the above listed counsel, and that I have obtained authorization to affix all electronic signatures to this document.

Dated: June 5, 2023                         GIBSON, DUNN & CRUTCHER LLP

By: */s/ Alexander K. Mircheff*
Alexander K. Mircheff

11