ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
CASEY E. SADLER (#274241)
  *csadler@glancylaw.com*
GARTH SPENCER (#335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | Case No. 3:20-cv-01683-RBM-AHG |
| | **MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Hon. Ruth Bermudez Montenegro |
| | Noticed Hearing Date: November 4, 2024 |
| | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

MEMORANDUM IN SUPPORT OF MOTION

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ................................................................1

II.     SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ...............2

        A.    Nature of the Action................................................................2

        B.    Initial Complaint and Lead Appointment Process ...............................3

        C.    Lead Counsel's Investigation and the First Amended Complaint ..........3

        D.    Lead Counsel's Continuing Investigation and the Second Amended Complaint.................................................................4

        E.    Lead Counsel's Continuing Investigation and the Third Amended Complaint.................................................................5

        F.    Lead Plaintiffs' Appeal From The Court's Dismissal Of the Action, Settlement Negotiations, And Remand.................................................5

III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)....6

IV.     ARGUMENT ....................................................................................7

        A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors.....................7

              1.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class................................................................7

              2.    The Settlement Is the Result of Arm's-Length Negotiations ...................................................................8

              3.    The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ................................................................9

              4.    Rule 23(e)(2)(C)(ii)-(iv) ...........................................................12

              5.    The Settlement Treats All Class Members Equitably Relative To Each Other........................................................................13

              6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval.................................................14

i
MEMORANDUM IN SUPPORT OF MOTION

B.   Class Certification is Appropriate for Settlement Purposes .................16

1.   The Settlement Class is Sufficiently Numerous .........................18

2.   Common Questions of Law or Fact Exist .................................18

3.   Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class.................................................................19

4.   Lead Plaintiffs and Lead Counsel Adequately Represent the Settlement Class.................................................................19

5.   The Predominance and Superiority Requirements Are Satisfied .................................................................20

6.   The Court Should Appoint Lead Counsel as Counsel for the Class .................................................................22

C.   The Court Should Approve the Proposed Form and Method of Notice .................................................................22

V.   PROPOSED SCHEDULE OF EVENTS ........................................................24

VI.   CONCLUSION .................................................................25

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor*,
521 U. S. 591 (1997)................................................................................21, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)...............................................................................19, 20

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ...........................................................................11

*Barani v. Wells Fargo Bank, N.A.*,
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .......................................................24

*Barnes v. AT&T Pension Benefit Plan*,
270 F.R.D. 488 (N.D. Cal. 2010) ......................................................................18

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ............................................................................17

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .....................................................20

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)................................................13, 23

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..............................................................................7

*Erica P. John Fund, Inc., v. Halliburton Co.*,
563 U.S. 804 (2011)..........................................................................................20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ....................................................................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
329 F.2d 909 (9th Cir. 1964) ............................................................................18

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .......................................................... 14

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................ 17

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................ 24

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ........................................................... 19

*In re Diamond Foods, Inc.*,
295 F.R.D. 240 (N.D. Cal. 2013) ........................................................................... 19

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................... 11

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005 .......................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................. 13

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ............................................................................ 21

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008) .................................................................. 11

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................... 13

*In re Priceline.com, Inc. Sec. Litig.*,
2007 WL 2115592 (D. Conn. July 20, 2007) .......................................................... 23

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................................................... 9

*In re Talis Biomedical Corp. Sec. Litig.*,
2024 WL 536303 (N.D. Cal. Feb. 9, 2024) ........................................................ 19, 20

*In re Verisign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)........................................................18

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................10

*Ivan Baron v. HyreCar Inc. et al.*,
  2024 WL 3504234 (C.D. Cal. July 19, 2024) .......................................................12

*Jaffe v. Morgan Stanley & Co., Inc.*,
  2008 WL 346417 (N.D. Cal. Feb. 7, 2008).............................................................17

*Kaplan v. Rose*,
  49 F.3d 1363 (9th Cir. 1994) ...............................................................................20

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017)...................................................................10

*McMahan & Co. v. Wherehouse Entm't*,
  65 F.3d 1044 (2d Cir. 1995) .................................................................................21

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................................................8, 20

*Officers for Justice v. Civ. Serv. Comm.*,
  688 F.2d 615 (N.D. Cal. 1982).............................................................................15

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)..............................................................................................21

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................11

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................................9

*Scott v. ZST Digital Networks, Inc.*,
  2013 WL 12123989 (C.D. Cal. Mar. 27, 2013) .......................................................9

*Siemer v. Assocs. First Capital Corp.*,
  2001 WL 35948712 (D. Ariz. March 30, 2001)....................................................18

MEMORANDUM IN SUPPORT OF MOTION

*Stewart v. Applied Materials, Inc.*,
   2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ........................................................ 16

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ......................................................... 15

*Vikram v. First Student Mgmt., LLC*,
   2019 WL 1084169 (N.D. Cal. March 7, 2019) ....................................................... 14

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ..................................................................... 16, 17

*Wong v. Arlo Techs., Inc.,*
   2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) .............................................. 7, 9, 10

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ......................................................... 13

STATUTES

15 U.S.C. § 77k(a) ........................................................................................ 10

15 U.S.C. § 77k(e) ................................................................................... 10, 21

15 U.S.C. § 77o........................................................................................... 2

15 U.S.C. § 77z-1(a)(7) ................................................................................. 22

15 U.S.C. § 77z–1(b)(1) ................................................................................. 15

RULES

Fed. R. Civ. P. 23.................................................................................*passim*

## I.   PRELIMINARY STATEMENT

The Parties[1] have reached a proposed Settlement of the above-captioned action (the "Action") that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $1,000,000. Lead plaintiffs Lin Shen, Lingjun Lin, and Fusheng Lin ("Lead Plaintiffs") and lead counsel Glancy Prongay & Murray LLP ("Lead Counsel" or "GPM") respectfully submit that this Settlement represents an excellent result for the Settlement Class given the procedural posture of the Action and the potentially recoverable damages. The Settlement warrants preliminary approval, and should ultimately (after preliminary approval, notice to the Settlement Class, and submission of a motion for final approval) be approved by this Court, especially given the risks, costs, and delays of continued litigation. Indeed, the Settlement was only reached on appeal, after Lead Plaintiffs' claims had been dismissed three times, meaning that in the absence of the Settlement there was a substantial likelihood of no recovery at all to the Settlement Class.

The Settlement was reached after approximately four years of contested litigation, which included: (i) Lead Counsel's comprehensive investigation into the alleged claims asserted against Defendants, which was assisted by an investigator, and by consultations with damages and accounting experts; (ii) drafting three amended complaints, including the 126-page Third Amended Complaint; (iii) opposing three motions to dismiss; (iv) briefing an appeal to the Ninth Circuit of the Action's dismissal; (v) months of arm's-length negotiations between the Parties related to the amount and terms of the Settlement, and the drafting and execution of a Settlement Term Sheet and subsequently the Stipulation and its exhibits. Thus, the $1 million Settlement is the result of arm's-length

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated September 19, 2024 (the "Stipulation"). A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Garth Spencer in Support of Lead Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (the "Spencer Decl.").

negotiations conducted by experienced counsel with sufficient information to evaluate the Settlement in light of the risks and uncertainties, of continued litigation.

As set forth herein, the Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

## II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.   Nature of the Action

Lead Plaintiffs assert claims on behalf of a putative class of investors pursuant to Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o, against defendants: (i) Progenity, Inc. ("Progenity") (n/k/a Biora Therapeutics, Inc.); (ii)  Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell (collectively, the "Individual Defendants"); and (iii) Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG, LLC (collectively, the "Underwriter Defendants," and, together with Progenity and the Individual Defendants, the "Defendants").[2]

Lead Plaintiffs allege that Progenity's IPO Registration Statement was materially misleading for failing to disclose that: (i) Progenity had overbilled government payors for its Preparent genetic tests; (ii) shortly before the IPO Progenity abandoned its key illegal marketing practice of waiving patient payment amounts; and (iii) at the time of the IPO Progenity suffered from negative trends in test volumes, test average selling prices, and revenue. Defendants deny these allegations and the Settlement, as proposed, is entered into by Defendants without any admission of wrongdoing.

---

[2] The Individual Defendants were executives or directors of Progenity, and the Underwriter Defendants served as underwriters for Progenity's initial public offering of its stock, completed over June 18-23, 2020 (the "IPO").

MEMORANDUM IN SUPPORT OF MOTION

**B.      Initial Complaint and Lead Appointment Process**

Beginning on August 28, 2020, two class action complaints were filed in the United States District Court for the Southern District of California (the "Court"), styled *Soe v. Progenity, Inc., et al.*, Case No. 20-cv-01683, and *Brickman Investments Inc. v. Progenity, Inc., et al.*, Case No. 3:20-cv-01795. By Order dated December 3, 2020, the Court ordered: (i) that the cases be consolidated and recaptioned as *In re Progenity, Inc. Securities Litigation*, Case No. 20-cv-1683; (ii) appointed Lin Shen, Lingjun Lin, and Fusheng Lin as Lead Plaintiffs for the consolidated action; and (iii) approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class. ECF No. 33.

**C.      Lead Counsel's Investigation and the First Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Progenity's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, and news articles concerning Progenity, (c) Progenity's investor call transcripts, and (d) other publicly available material related to Progenity, including court filings and settlement agreements between Progenity and governmental regulators relating to allegations of improper billing and illegal kickback payments; and (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting and interviewing former Progenity employees. Lead Counsel also consulted with a damages and loss causation expert.

On February 4, 2021, Lead Plaintiffs filed their Amended Class Action Complaint for Violation of the Securities Act of 1933 ("First Amended Complaint") based on their counsel's investigation. ECF No. 38. The First Amended Complaint alleged that Progenity's IPO Registration Statement was materially misleading for failing to disclose that: (i) Progenity had overbilled government payors for its Preparent genetic tests; and

(ii) Progenity was suffering from negative trends in test volumes, test average selling prices, and revenue.

On April 5, 2021, Defendants moved to dismiss the First Amended Complaint. ECF No. 40. On June 4, 2021, Lead Plaintiffs served their papers in opposition. ECF No. 41. On July 19, 2021, Defendants served their reply. ECF No. 44. On September 1, 2021, the Court granted Defendants' motion and dismissed Lead Plaintiffs' claims without prejudice, allowing 21 days to amend. ECF No. 48.

**D.      Lead Counsel's Continuing Investigation and the Second Amended Complaint**

Lead Counsel continued their investigation, including additional work with their private investigator to conduct further interviews with former Progenity employees, as well as consultations with an accounting expert. Lead Counsel also submitted freedom of information requests to multiple state and federal healthcare and law enforcement agencies for documents about Progenity's billing and collection practices. Based on this continuing investigation, on September 22, 2021, Lead Plaintiffs filed their Second Amended Class Action Complaint for Violation of the Securities Act of 1933 ("Second Amended Complaint"). ECF No. 49. The Second Amended Complaint added substantial new allegations concerning statements from former Progenity employees, recent developments in Progenity's business, required disclosures under U.S. Generally Accepted Accounting Principles ("GAAP"), government healthcare program regulations, and SEC guidance. The Second Amended Complaint also added a new theory of falsity concerning Defendants' alleged failure to disclose that shortly before the IPO Progenity abandoned its key illegal marketing practice of waiving patient payment amounts.

On November 15, 2021, Defendants served a motion to dismiss the Second Amended Complaint. ECF No. 52. On January 14, 2022, Lead Plaintiffs served their papers in opposition. ECF No. 54. On February 22, 2022, Defendants served their reply papers. ECF No. 55. On May 6, 2022, the Parties participated in a status conference before Magistrate Judge Allison H. Goddard to discuss positions on settlement. ECF Nos. 57-

58. No settlement was reached at that conference. On January 13, 2023, the Court granted Defendants' motion to dismiss the Second Amended Complaint and dismissed Lead Plaintiffs' claims without prejudice, allowing 21 days to amend. ECF No. 63

### E.    Lead Counsel's Continuing Investigation and the Third Amended Complaint

Lead Counsel again continued their investigation, and on February 3, 2023, Lead Plaintiffs filed their Third Amended Class Action Complaint for Violation of the Securities Act Of 1933 (the "Complaint" or "Third Amended Complaint"). ECF No. 64. The Third Amended Complaint added new allegations derived from responses to Lead Counsel's freedom of information requests, further corroborating and bolstering their theory of the case.

On March 20, 2023, Defendants served a motion to dismiss the Third Amended Complaint. ECF No. 67.  On May 4, 2023, Lead Plaintiffs served their papers in opposition. ECF No. 68. On June 5, 2023, Defendants served their reply papers. ECF No. 69. On July 12, 2023, the Court granted Defendants' motion and dismissed Lead Plaintiffs' claims with prejudice. ECF No. 70.

### F.    Lead Plaintiffs' Appeal From The Court's Dismissal Of the Action, Settlement Negotiations, And Remand

On July 12, 2023, the Clerk entered judgment. ECF No. 71. On August 11, 2023, Lead Plaintiffs filed their Notice of Appeal, appealing from the judgment. ECF No. 72. On September 7, 2023, the Parties participated in an assessment conference with Circuit Mediator Robert S. Kaiser to explore settlement potential. No settlement was reached at that conference. On September 13, 2023, Lead Plaintiffs sent Defendants a written settlement demand.

On November 15, 2023, Lead Plaintiffs submitted their opening appellate brief. On January 11, 2024, Defendants responded to Lead Plaintiffs' settlement demand. Thereafter, the Parties continued to negotiate concerning a potential settlement. On January 16, 2024, Defendants submitted their answering appellate brief. On March 7, 2024, Lead Plaintiffs submitted their reply appellate brief.

On March 11, 2024, the Parties reached an agreement in principle to settle the Action for a payment of $1 million on a class-wide basis. After further negotiations, the Parties' agreement in principle to settle the Action was memorialized in a term sheet dated June 24, 2024.

On June 24, 2024, Lead Plaintiffs filed in the Appellate Court the Parties' Joint Notice of Settlement and Motion for Stay of Appeal and Limited Remand. Appeal ECF No. 34. On July 3, 2024, the Appellate Court granted the motion, and remanded the Action to this Court for the limited purpose of conducting proceedings relating to the settlement. Appeal ECF No. 36. After further substantial negotiations concerning Settlement terms, on September 19, 2024 the Parties executed the Stipulation, which reflects the final and binding agreement between the Parties.

## III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   does the proposal treat class members equitably relative to each other.

MEMORANDUM IN SUPPORT OF MOTION

These factors are not exclusive, nor intended to displace any factor previously adopted by the courts. *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919). Thus, the Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").[4] As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.    Lead Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

---

[3] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class. There is no government participant.

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

Here, Lead Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Lead Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiffs worked with Lead Counsel throughout the Action to achieve the best possible result for themselves and the Settlement Class.

Lead Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Spencer Decl., Ex. 2 (GPM firm résumé). Moreover, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation of the claims, consulting with experts, retaining an investigator to contact former Progenity employees, making freedom of information requests, drafting three detailed amended complaints, briefing three motions to dismiss, appealing the dismissal of the Action, and obtaining the $1 million Settlement for the benefit of the Settlement Class. *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

**2.      The Settlement Is the Result of Arm's-Length Negotiations**

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at

MEMORANDUM IN SUPPORT OF MOTION

arm's length." FED. R. CIV. P. 23(e)(2)(B).[5] The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Parties, all of whom are represented by experienced counsel who zealously advanced their clients' respective interests, engaged in arm's-length negotiations over several months, which culminated in an agreement that the Action be settled for $1 million.

The arm's-length nature of the extensive settlement negotiations support the conclusion that the Settlement is fair and was achieved free of collusion. *See Scott v. ZST Digital Networks, Inc.*, 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations in this case, which were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive. The parties were represented by experienced counsel who bargained in an adversarial manner"); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *4 (S.D. Cal. Oct. 30, 2020) ("Counsel possessed sufficient information to make an informed decision about the settlement . . . The Settlement was also the product of arm's length negotiations through back-and-forth communications and bargaining of terms").

### 3. The Settlement is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[6] As discussed below, each of these factors supports the Settlement's approval.

---

[5] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration (footnote continued)

**The Strength of Lead Plaintiffs' Case and Risk of Continued Litigation:** In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Here, the substantial risks to Lead Plaintiffs' case are readily apparent from the Court's three orders dismissing their amended complaints. *See* ECF Nos. 48, 63, 70; *see also In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved."). While Lead Counsel believe they had strong arguments on appeal, they also recognize that there was a substantial chance that the Ninth Circuit would affirm the Court's orders. Indeed, in 2023 the Ninth Circuit reversed in only 14.6% of private civil appeals.[7] Thus, Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable.

Assuming, *arguendo*, that Lead Plaintiffs were to prevail on their appeal and that this Action were to proceed, Lead Plaintiffs and Lead Counsel would still have to ***prove*** that the statements and omissions in Progenity's IPO Registration Statement were materially misleading, and would also have to overcome Defendants' expected defenses, including negative causation (*i.e.*, that factors other than the allegedly misleading statements caused the Settlement Class's losses) and due diligence (*i.e.* that the Individual Defendants and Underwriter Defendants reasonably investigated the statements at issue and did not believe they were misleading). *See* 15 U.S.C. §§ 77k(a), (b)(3), and (e).

---

of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

[7] *See* U.S. Courts of Appeals Statistical Tables For The Federal Judiciary (December 31, 2023) (https://www.uscourts.gov/statistics/table/b-5/statistical-tables-federal-judiciary/2023/12/31).

Defendants successfully argued in their motions to dismiss, and would undoubtedly continue to argue, that Lead Plaintiffs failed to allege material misrepresentations. Lead Counsel anticipates Defendants would present strong arguments presenting their defenses and challenging Lead Plaintiffs' proof, both in Defendants' expected motion(s) for summary judgment and at trial.

Finally, even if Lead Plaintiffs prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years, including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[8]

**Risks of Maintaining Class Action Status:** While Lead Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. IV.B, *infra*, the class has not yet been certified, and Lead Counsel is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Lead Counsel expects that Defendants would have challenged class certification if the case reached that stage. Thus, risks surrounding class certification also support approval of the Settlement. *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y.

---

[8] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

2019) ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

### 4.     Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each of these factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[9] *See Ivan Baron v. HyreCar Inc. et al.*, 2024 WL 3504234, at *9 (C.D. Cal. July 19, 2024) (finding nearly identical distribution process "effective" and granting preliminary approval).

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice and Postcard Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount

---

[9] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also reasonable in comparison to awards in similar complex class action cases, in which similar percentage awards are often granted. *See In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement); *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes conditions under which Progenity may terminate the Settlement if Settlement Class Members totaling a certain percentage of purchases of Progenity common stock request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### 5. The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See Yang v. Focus Media Holding Ltd*., 2014 WL 4401280, at *10

(S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

### 6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s factors.[10] These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Mgmt., LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019).

Here, the $1 million recovery represents approximately 4.8% of estimated maximum damages of approximately $20.9 million (based on Section 11's statutory damages formula and Progenity's stock price on the date this suit was initiated). This maximum damages figure represents Lead Plaintiffs' best-case scenario—assuming that: (i) Lead Plaintiffs prevailed on their appeal; (ii) the Court certified the class; (iii) Lead Plaintiffs survived summary judgment on all elements and also convinced a jury that liability was proven; and (iv) the trier of fact accepted Lead Plaintiffs' damages theory. This recovery is similar to the typical percentage recovery for securities class action cases of a similar magnitude. *See, e.g.,* Spencer Decl., Exhibit 3 (excerpt from Edward Flores

---

[10] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

MEMORANDUM IN SUPPORT OF MOTION

and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review (NERA Jan. 23, 2024)), at p. 25 (median settlement recovery was 5.1% for securities class actions with investor losses of $20-$49 million that were settled during January 2014-December 2023)). And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether.

In the light of the risks of continued litigation, first and foremost the Court's dismissal of all of Lead Plaintiffs' claims and the uncertainty of the outcome of Lead Plaintiffs' pending appeal, the percentage of recovery is reasonable. Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that, due to the PSLRA's stay of discovery during the pendency of a motion to dismiss a securities class action (*see* 15 U.S.C. § 77z–1(b)(1)), formal discovery had not yet begun, does not weigh against preliminary approval. *See e.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement"). Here, Lead Counsel conducted an extensive investigation of Progenity, including consulting with experts, contacting former employees through an investigator, analyzing numerous publicly available documents, and obtaining additional relevant documents through freedom of information requests. Moreover, Lead Plaintiffs engaged in substantial briefing on three motions to dismiss, and their appeal of the Court's dismissal of the Action. Therefore, Lead Plaintiffs and Lead Counsel had a thorough understanding of the strengths and significant risks of this Action. *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly

available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

**The Experience and Views of Counsel:** Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017). Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval. Concomitantly, Defendants have been vigorously represented by Gibson, Dunn & Crutcher LLP and O'Melveny & Myers LLP throughout the Action and settlement negotiations. Counsel for Defendants are highly experienced and capable, and are equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class. Because the Settlement is the product of informed arm's-length negotiations among experienced counsel, preliminary approval is warranted. *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement.").

**B.    Class Certification is Appropriate for Settlement Purposes**

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class. Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for purpose of the Settlement, whether the certification of the Settlement Class appears to be appropriate. *Hanlon*, 150 F.3d at 1019; FED. R. CIV. P. 23(e)(1). Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that one of the three conditions of Rule 23(b) is

satisfied. *Id.* Under subsection (b)(3), the Court must find the questions of law or fact common to the class members predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of "all persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby." Stipulation, ¶1(vv).[11] This Action satisfies all the factors for certification of a Settlement Class.[12] The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities litigation. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[13]

---

[11] Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) present and former parents, subsidiaries, assigns, successors, predecessors and Affiliates of Progenity or the Underwriter Defendants; (iii) any person who served as an officer and/or director of Progenity or the Underwriter Defendants and who would otherwise be a member of the Settlement Class and their Immediate Family members; (iv) any entity in which the Defendants have or had a controlling interest; (v) Athyrium Capital Management, LP, Athyrium Opportunities 2020 LP, and any Athyrium Affiliate; (vi) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vii) Defendants' liability insurance carriers; and (viii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vii) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

[12] Defendants take no position on this issue and expressly reserve all rights to challenge the appropriateness of class certification in this Action if the Settlement does not become final.

[13] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. (footnote continued)

17

MEMORANDUM IN SUPPORT OF MOTION

### 1.    The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impractical to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id*. Lead Counsel estimates that there were hundreds, if not thousands, of purchasers of Progenity common stock pursuant and/or traceable to Progenity's IPO Registration Statement. The threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g. Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

### 2.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019. Generally, courts have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. This factor is "construed permissively, and the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*. at 1019 (cleaned up). Here, "[c]ommon questions include whether the Registration Statement contained untrue statements of material fact or material omissions, whether the individual defendants were controlling persons under Section 15, and whether defendants can meet their burden to

---

1991); *see also In re Verisign, Inc. Sec. Litig*., 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

prove affirmative defenses." *In re Talis Biomedical Corp. Sec. Litig.*, 2024 WL 536303, at *3 (N.D. Cal. Feb. 9, 2024).

### 3. Lead Plaintiffs' Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Lead Plaintiffs allege that they purchased Progenity common stock pursuant and/or traceable to Progenity's IPO Registration Statement and were subsequently damaged due to Defendants' conduct. Similarly, the interest of Lead Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Lead Plaintiffs and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Sec. IV.A.1, *supra*, Lead Plaintiffs and Lead Counsel are adequate representatives. First, Lead Plaintiffs and Settlement Class Members purchased Progenity common stock pursuant and/or traceable to Progenity's IPO Registration Statement, and were all injured by Defendants' allegedly materially misleading statements. If Lead Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations). Thus, the interests of Lead Plaintiffs and other

MEMORANDUM IN SUPPORT OF MOTION

members of the Settlement Class are aligned, as they share the common objective of maximizing their recovery from Defendants. *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Lead Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel. Lead Counsel has extensive experience and expertise litigating securities class actions. *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits.").

**5.     The Predominance and Superiority Requirements Are Satisfied**

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Common Questions Predominate:** "Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011). "The plaintiff in a § 11 claim must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). "[M]ateriality is judged according to an objective standard." *Amgen*, 568 U.S. at 459. "These are common questions that will be resolved on common evidence. Similarly, whether the individual defendants are control persons under Section 15 present common factual and legal questions." *In re Talis Biomedical Corp. Sec. Litig.*, 2024 WL 536303, at *7 (N.D. Cal. Feb. 9, 2024). And

"[t]he plain language of section 11(e) prescribes the method of calculating damages, *see* 15 U.S.C. § 77k(e), and the court must apply that method in every case." *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995). The commonality requirement is, therefore, met. *Amchem Prods., Inc. v. Windsor*, 521 U. S. 591, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging ... securities fraud.").

**A Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 239 (S.D.N.Y. 2015).

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]"); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire

as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 6. The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in December 2020 (ECF No. 33), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1, *supra*, GPM has substantial experience prosecuting securities class actions. *See* Spencer Decl., Ex. 2 (GPM firm résumé). Therefore, Lead Plaintiffs respectfully request that the Court appoint GPM to serve as Class Counsel.

### C. The Court Should Approve the Proposed Form and Method of Notice

Lead Plaintiffs respectfully submit that the Court should approve the form and content of the proposed Notice, Summary Notice, and Postcard Notice. *See* Stipulation, Exs. A-1, A-3, and A-4. The Notice is written in plain language and clearly sets out all relevant information necessary to inform a Settlement Class Member of their rights and options, including the nature of the Action, the definition of the Settlement Class, and the binding effect of a class judgment on Settlement Class Members. *See* Stipulation Exhibit A-1 at ¶¶1, 20, 31, 39-42. The Notice also: (i) satisfies the disclosure requirements imposed by the PSLRA (*see* 15 U.S.C. § 77z-1(a)(7)); (ii) provides the date, time, and location of the Settlement Hearing; and (iii) sets forth the procedures and deadlines for the submission of Claim Forms, requests for exclusion from the Settlement Class, and objections to any aspect of the Settlement, the Plan of Allocation, or Fee and Expense

Application. *See* Stipulation Ex. A-1 at ¶¶2-7, 46, 77, 82-84.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail copies of the Postcard Notice (Stipulation, Ex. A-4), and/or email a link to the Notice and Claim Form (Stipulation, Exs. A-1 and A-2), to all Settlement Class Members who can be identified with reasonable effort.[14] The Claims Administrator will also provide notice of the Settlement to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, informing such firms of the methods by which notice may be provided to their clients.[15] Copies of the Notice and the Claim Form will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form, and other important documents, can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail copies of the

---

[14] Lead Plaintiffs request that the Court approve retention of SCS as the claims administrator for this case. SCS has successfully administered numerous complex securities class action settlements. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (SCS served as claims administrator in $250 million securities class action settlement); *In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (SCS served as claims administrator for $80 million settlement).

[15] Because this is an IPO case, the Parties have agreed that the Underwriter Defendants shall either: (i) provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel, Lead Plaintiffs, or the Claims Administrator) lists of purchasers of record (consisting of names, addresses and, to the extent such information is reasonably available, email addresses) of Progenity common stock between June 18, 2020 and December 2, 2020; (ii) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; or (iii) request from the Claims Administrator a link to the Notice and Claim Form and email the link to all such beneficial owners for whom valid email addresses are available within seven (7) calendar days of receipt of the link from the Claims Administrator. *See* Preliminary Approval Order, ¶7(a). Moreover, to the extent an Underwriter Defendant elects either option (ii) or (iii), it shall be responsible for all direct costs and expenses of communicating notice by those means. *Id.* at n.5.

MEMORANDUM IN SUPPORT OF MOTION

Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Stipulation Ex. A-3) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed postcard directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice).

Accordingly, the proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.

## V.  PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Postcard Notice and publication of the Summary Notice, and deadlines for submitting claims or for opting out of, or objecting to, the Settlement. Lead Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |

| Event | Proposed Timing |
|---|---|
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order. As this motion is unopposed, Lead Plaintiffs respectfully request that the Court consider this motion for preliminary approval on the papers at this time.

MEMORANDUM IN SUPPORT OF MOTION

DATED: September 23, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: _s/ Garth Spencer_

ROBERT V. PRONGAY (#270796)
 _rprongay@glancylaw.com_
CASEY E. SADLER (#274241)
 _csadler@glancylaw.com_
GARTH SPENCER (#335424)
 _gspencer@glancylaw.com_
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

_Attorneys for Lead Plaintiffs_

MEMORANDUM IN SUPPORT OF MOTION

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On September 23, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 23, 2024, at Wilmington, North Carolina.

*s/ Garth Spencer*
Garth Spencer