ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
CASEY E. SADLER (#274241)
  *csadler@glancylaw.com*
GARTH SPENCER (#335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiffs*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION | Case No. 3:20-cv-01683-RBM-AHG |
| | **PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF** |
| | Hon. Ruth Bermudez Montenegro |

## TABLE OF CONTENTS

I.    Individual Class Member Recovery ................................................................. 1

II.   The *Bushansky* Derivative Action ................................................................ 4

III.  $10 Minimum Distribution............................................................................ 4

IV.   Estimated Notice Costs And Estimated Net Settlement Fund ......................... 7

V.    Damages Calculations ................................................................................. 8

VI.   *Cy Pres* ..................................................................................................... 9

VII.  Exclusion and Objection Requirements ......................................................... 11

VIII. Conclusion ................................................................................................. 14

PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF

# TABLE OF AUTHORITIES

<u>CASES</u>

*Ali v. Franklin Wireless Corp.*,
    2024 WL 270077 (S.D. Cal. Jan. 24, 2024) ..............................................................6

*Arena v. Intuit Inc.*,
    2021 WL 834253 (N.D. Cal. Mar. 5, 2021) ...............................................................13

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ...............................................................14

*Baron v. HyreCar Inc.*,
    2024 WL 3504234 (C.D. Cal. July 19, 2024) ...........................................................7

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...........................................................12

*Davis v. Yelp, Inc.*,
    2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ...........................................................14

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012) ...................................................................................10

*Hefler v. Wells Fargo & Co.*,
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...........................................................6

*Herman & MacLean v. Huddleston*,
    459 U.S. 375 (1983) ...............................................................................................10

*In re Apple Inc. Sec. Litig.*,
    2011 WL 1877988 (N.D. Cal. May 17, 2011) ...........................................................12

*In re BofI Holding, Inc. Sec. Litig.*,
    2022 WL 2068424 (S.D. Cal. June 8, 2022) ...........................................................14

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ...........................................................12

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    603 F.2d 1353 (9th Cir. 1979) ...............................................................................12

*In re Hewlett-Packard Co. Sec. Litig.*,
2014 WL 12656640 (C.D. Cal. May 2, 2014).........................................................14

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) ......................................................6, 7

*In re MGM Mirage Sec. Litig.*,
708 F. App'x 894 (9th Cir. 2017) ..........................................................................6

*In re Omnivision Techs., Inc. Sec. Litig.*,
2015 WL 12953228 (N.D. Cal. Mar. 4, 2015) .....................................................14

*In re Qualcomm Inc. Sec. Litig.*,
2024 WL 3209339 (S.D. Cal. June 27, 2024) ......................................................14

*In re Stable Rd. Acquisition Corp. Sec. Litig.*,
2025 WL 924929 (C.D. Cal. Mar. 24, 2025) ....................................................5, 11

*Kuhne v. Gossamer Bio, Inc.*,
2022 WL 770112 (S.D. Cal. Mar. 14, 2022).......................................................14

*Mandalevy v. BofI Holding, Inc.*,
2022 WL 1556160 (S.D. Cal. May 17, 2022) ......................................................14

*Mandalevy v. BofI Holding, Inc.*,
2022 WL 4474263 (S.D. Cal. Sept. 26, 2022) ......................................................6

*O'Hern v. Vida Longevity Fund, LP*,
2023 WL 3204044 (D. Del. May 2, 2023) ...........................................................12

STATUTES

15 U.S.C. §77k(e) ...........................................................................................................8
15 U.S.C. §77o...............................................................................................................8

RULES

Fed. R. Civ. P. 23(e)(5)..................................................................................................12

REGULATIONS

26 C.F.R. § 1.468B-2(b)(2) .............................................................................................7

Lead plaintiffs Lin Shen, Lingjun Lin, and Fusheng Lin ("Lead Plaintiffs") submit this supplemental brief in response to the Court's Order for Additional Briefing in Support of Motion for Preliminary Approval (ECF No. 93) ("Order"), and in further support of their Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 91) ("Motion").[1]

## I.    Individual Class Member Recovery

It is not possible at this time to "identify individual class member recovery under the Proposed Settlement or the potential class member recovery on a claim-by-claim basis if Plaintiffs prevailed."  Order at 2.  This is because calculating an individual Settlement Class Member's potential recovery under the proposed Settlement requires detailed trading records reflecting that person's transactions in Progenity common stock. *See* Declaration of Paul Mulholland of Strategic Claims Services (the "Mulholland Decl."; filed herewith as Exhibit 1), at ¶4; Stipulation Ex. A-2 (Claim Form requesting the necessary information from Settlement Class Members).  Here, as in most securities class actions of this nature, the large majority of potential Settlement Class Members are expected to be beneficial purchasers whose securities are held in "street name" – *i.e.*, the securities are purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the respective nominees, on behalf of the beneficial purchasers.  As a result, neither Plaintiffs, Defendants, nor any third party possess the trading data required to determine an individual Settlement Class Member's potential recovery. Mulholland Decl. at ¶4.

A claimant's recovery will also depend on other presently unknown information, such as: (i) how many Settlement Class Members submit valid claims; and (ii) the total Recognized Loss Amounts reflected in all valid claims received. *See*

---

[1] Capitalized terms used but not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement (ECF No. 91-3) ("Stipulation").

Stipulation Ex. A-1 (Notice) at ¶¶60-72 (describing method of determining claimants' *pro rata* distribution amounts). As such, individual recoveries for Settlement Class Members who submit valid claims can only be calculated after completion of the notice and claims process.[2]

However, in response to the Court's inquiry, Plaintiffs in consultation with the proposed Claims Administrator, Strategic Claims Services ("SCS"), have developed a rough estimate of the average Settlement Class Member recovery based on the following analysis and assumptions. Actual results may vary significantly based on future developments such as the number of valid claims received.

The Settlement Amount is $1,000,000. Stipulation ¶1(uu). The amount in the Settlement Fund will be increased by interest earned in the Escrow Account, after the Settlement Amount is paid, which is due 21 days after the Court grants preliminary approval to the Settlement. *Id.* ¶¶1(xx), 8, 10. The Net Settlement Fund will be reduced by: (i) Taxes, which are expected to be minimal, if any (*see* Mulholland Decl. ¶18); (ii) Notice and Administration Costs, which are estimated to be approximately $64,600 (*see id.* ¶¶17, 19); (iii) Litigation Expenses awarded by the Court, which shall not exceed $110,000 (*see* Stipulation Ex. A-1 (Notice) at ¶5); and (iv) any attorneys' fees awarded by the Court, which shall not exceed 33⅓% of the Settlement Fund (*see id.*). *See* Stipulation ¶1(dd). Based on the foregoing, Plaintiffs provide the following rough estimate of the amount expected to be available in the Net Settlement Fund for distribution to Settlement Class Members with valid claims:

---

[2] Once the Claims Administrator has processed all of the claims it receives, Lead Counsel will move the Court to enter a Class Distribution Order. *See* Stipulation ¶26. In conjunction with that motion, Lead Counsel will provide the Court with information concerning all of the claims received by SCS, and SCS's recommendations regarding the acceptance and rejection of claims.

PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF

| Settlement Amount | $1,000,000 |
|---|---|
| Estimated Interest Earned Through Final Approval | $20,000 |
| Estimated Settlement Fund at Final Approval | $1,020,000 |
| Estimated Taxes | $(0) |
| Estimated Notice and Administration Costs | $(64,600) |
| Maximum Litigation Expenses | $(110,000) |
| Estimated Maximum Attorneys' Fees | $(340,000) |
| Estimated Net Settlement Fund After Payment of Notice Costs, Expenses and Fees | $505,400 |
| Estimated Interest Earned From Final Approval Through Initial Distribution | $10,000 |
| Estimated Net Settlement Fund Available For Distribution To Valid Claims | $515,400 |

SCS estimates that the Settlement Class includes approximately 7,500 persons, and that approximately 1,609 valid claims will be submitted. Mulholland Decl. at ¶7. Based on the foregoing assumptions, Lead Counsel estimates that the average recovery per valid claim will be approximately $320, if Lead Counsel requests and is awarded the maximum fee and expense amounts reflected above. However, recoveries by Settlement Class Members will vary considerably from one another based on their individual trading data. *Id.* at ¶8.

If the Action continued to be litigated and Plaintiffs prevailed through their pending appeal, class certification, summary judgment, trial, and post-trial appeals, then Lead Counsel, in consultation with their damages expert, estimate maximum class-wide damages of $20,925,111. *See* Declaration of Michael A. Marek, CFA (the "Marek Decl.", filed herewith as Exhibit 2) at ¶13. As with the Settlement, any such post-trial damages award would be reduced by items including, *inter alia*, attorneys' fees (which Lead Counsel would anticipate requesting in the amount of 33⅓% of the damages award, or roughly $7 million), litigation expenses (which Lead Counsel estimates would be *at least* $1 million after trial), and notice and administration costs. As such, it is likely that even after a complete victory at trial, less than $13 million

would be available to distribute to claimants. Assuming 1,609 valid post-trial claims (the same assumption used for valid Settlement claims), this would result in an average recovery of less than $8,080 per valid claim (assuming that valid claims are submitted with damages sufficient to exhaust the available funds).

## II.    The *Bushansky* Derivative Action

On June 4, 2021, Stephen Bushansky filed a shareholder derivative action on behalf of Progenity against certain of its directors and officers. *See* Case No. 3:21-cv-01065, ECF No. 1 (*Bushansky* complaint). Though he brings different claims than those at issue in the instant Action, and his claims are brought on behalf of Progenity rather than on behalf of purchasers of Progenity common stock as in the instant Action, certain of Bushansky's allegations overlap with events at issue here. *See id.* Litigation in the *Bushansky* action is currently stayed, pursuant to the *Bushansky* parties' joint motion and subsequent order of the Court. *See* Case No. 3:21-cv-01065, ECF No. 10 (stay order). The stay is in effect "until the time to appeal the Court's order granting the motion to dismiss in *In re Progenity, Inc. Securities Litigation*, Case No. 20-cv-1683-CAB-AHG (the 'Securities Class Action') expires and/or any such appeal is resolved by the Ninth Circuit Court of Appeals." *Id*.

Lead Counsel anticipates that once the Court grants final approval to the proposed Settlement, enters the proposed Judgment resolving this Action, and such Judgment becomes Final, then the Parties will notify the Ninth Circuit and Plaintiffs will dismiss their appeal. At that time, the stay in the *Bushansky* action would presumably be lifted. Other than the lifting of the stay, the Settlement is not expected to affect the *Bushansky* action, as the Parties have expressly excluded the claims at issue in *Bushansky* from the Releases provided for in the Settlement. *See* Stipulation ¶¶1(v), 1(pp), 1(qq).

## III.    $10 Minimum Distribution

The Plan of Allocation provides that "The Net Settlement Fund will be allocated among all Authorized Claimants whose Distribution Amount . . . is $10.00

or greater." Stipulation Ex. A-1 (Notice), at ¶64. The Plan of Allocation further provides:

> If any Authorized Claimant's Distribution Amount calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to such Authorized Claimant. Any Distribution Amounts of less than $10.00 will be included in the pool distributed to those Settlement Class Members whose Distribution Amounts are $10.00 or greater.

*Id.* at ¶72. This limitation is designed to ensure that distributions are made to claimants who are likely to cash their checks, and to avoid increases in administration costs that are likely to be disproportionate to the benefit to Settlement Class Members of distributing smaller checks. Similar $10 minimum payment requirements are routinely used in securities class action settlements. *See* Mulholland Decl. ¶10.[3]

The Claims Administrator recommends employing a $10 minimum payment because "[p]ayments of less than $10.00 are economically impractical as compared to the administrative, printing and mailing costs required to make such small distributions." Mulholland Decl. at ¶11. Use of the $10 minimum "will facilitate a greater proportion of the Settlement Amount being received by claimants rather than being spent on administration costs." *Id.* at ¶13.

Prior to completion of the claims process, neither Plaintiffs nor the Claims Administrator know how many Settlement Class Members with otherwise valid claims would not receive a distribution due to the $10 threshold. *Id.* at ¶14. However,

---

[3] *See also Derr v. RA Medical Sys., Inc.*, No. 3:19-cv-01079-JLS-AHG, ECF No. 101, ¶7 (S.D. Cal. April 3, 2024) (class distribution order with $10 *de minimis* provision) (filed herewith as Exhibit 6); *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2025 WL 924929, at *1 (C.D. Cal. Mar. 24, 2025) (same); *Yaron v. Intersect ENT, Inc.*, Case No. 4:19-CV-02647-JSW, ECF No. 86, ¶7 (N.D. Cal. April 10, 2023) (same) (filed herewith as Exhibit 7); *In re K12 Inc. Sec. Litig.*, Master File No. 4:16-cv-04069-PJH, ECF No. 122, ¶7 (N.D. Cal. Feb. 1, 2021) (same) (filed herewith as Exhibit 8); *Davis v. Yelp, Inc.*, Case No. 3:18-cv-00400-EMC, ECF No. 216, ¶7 (N.D. Cal. Aug. 29, 2023) (same) (filed herewith as Exhibit 9).

based on its experience administering numerous securities class action settlements, SCS estimates that "roughly 20% of otherwise valid claims will not receive a distribution due to the $10 requirement." *Id.* at ¶15.

The Order cites *Ali v. Franklin Wireless Corp.*, as "denying preliminary approval of securities class action settlement where the plaintiff failed to explain how similar threshold disqualification was fair or reasonable." 2024 WL 270077, at *4 (S.D. Cal. Jan. 24, 2024). In that case, after the court's initial denial of preliminary approval without prejudice, the plaintiffs filed a renewed motion for preliminary approval explaining that "because small check amounts are typically discarded by recipients and serve only to add to the administration costs, applying a minimum threshold is fair." *See Ali v. Franklin Wireless Corp.*, Case No. 21-CV-00687-AJB-MSB, ECF No. 77 (S.D. Cal. Apr. 22, 2024) (filed herewith as Exhibit 4). Judge Battaglia found "the explanation sufficient," noted that "[o]ther courts have approved similar thresholds for recovery," and granted preliminary approval. *Id.* at 10 (citing *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017), and *Mandalevy v. BofI Holding, Inc.*, 2022 WL 4474263, at *2, 16 (S.D. Cal. Sept. 26, 2022)).

Indeed, "[a] $10 threshold . . . is standard in securities class actions and benefit[s] the Settlement Class as a whole because [it] reduce[s] the costs associated with printing and mailing checks for de minimis amounts, as well as costly follow-up to ensure those checks have been received and cashed." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).[4] "Not paying these *de minimis* claims does not disturb the fairness of the allocation plan. Such small checks are frequently discarded by recipients and cause a disproportionate administrative expense to the fund, and, thus, other Settlement Class members." *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *12 (S.D. Cal. June 16, 2025).

---

[4] All internal quotes and citations are omitted herein unless otherwise noted.

PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF

As such, "courts within the Ninth Circuit regularly approve settlement agreements including such provisions." *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *11 (C.D. Cal. July 19, 2024); *id.* ("the court finds that the exclusion of claims less than $10.00 in this case presents no significant indication of preferential treatment"); *see also ImmunityBio*, 2025 WL 1686263, at *11 ("courts in this Circuit regularly approve of settlement agreements that include such provisions").

### IV.    Estimated Notice Costs And Estimated Net Settlement Fund

Based on the Settlement Class definition, and SCS's estimates of the numbers of Settlement Class Members, claims received, and valid claims received, SCS estimates that it will incur approximately $64,600 of Notice and Administration Costs. *See* Mulholland Decl. at ¶¶17, 19. This is only an estimate and may change depending on factors including the number of claims actually submitted. *Id.* at ¶19.

As reflected in the table above in Section I, Lead Counsel estimates that the Settlement Fund will earn approximately $20,000 of interest from payment of the Settlement Amount until final approval, and an additional $10,000 of interest from final approval until the initial distribution of the Net Settlement Fund. These estimates are based on: (i) the Settlement Amount; (ii) the current interest rates offered by U.S. Treasury Bills and other products in which the Escrow Account may be invested (*see* Stipulation ¶10); (iii) the anticipated timing of the payment of the Settlement Amount, final approval, and the initial distribution; and (iv) the anticipated timing and amounts of withdrawals from the Settlement Fund.

SCS will prepare and file the tax return for the Settlement Fund. Interest income earned by the Settlement Fund is taxable, but "[a] deduction is allowed for administrative costs and other incidental expenses incurred in connection with the operation of the qualified settlement fund." 26 C.F.R. § 1.468B-2(b)(2). As such, "settlement administration fees and expenses will normally offset the interest income earned," and "SCS does not anticipate significant tax liabilities for the Settlement Fund." Mulholland Decl. at ¶18.

Therefore, SCS estimates that total Notice and Administration Costs attributable to it will be approximately $64,600. *Id.* at ¶19. As reflected in the table above in Section I, Lead Counsel estimate that the Net Settlement Fund available for distribution to valid claims will be approximately $515,400 if Lead Counsel requests and is awarded the maximum fee and expense amounts disclosed in the Notice and reflected in the table, *supra*.

## V.    Damages Calculations

Plaintiffs' claims in this Action arise under Section 11 and Section 15 of the Securities Act of 1933. Damages under Section 11 are set by the following statutory formula:

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. §77k(e). Section 15 provides that a controlling person shall be "liable jointly and severally" for violations committed by a controlled person. 15 U.S.C. §77o. As such, Section 15 does not give rise to additional damages beyond those already arising under Section 11.

Plaintiffs' consulting damages expert, Michael Marek, calculated the $20.9 million in damages figure referred to in Plaintiff's preliminary approval motion. *See* ECF No. 91-1 at 15. Mr. Marek has extensive experience as an expert and litigation consultant on issues of damages in securities class actions. *See* Marek Decl. at Ex. A (Marek résumé).

To arrive at the $20.9 million damages figure, Mr. Marek applied the relevant facts of this case (*e.g.*, the date, timing, and quantity of shares sold in Progenity's

IPO) to the statutory formula for damages for Plaintiffs' Section 11 claim. *Id.* at ¶¶8-13. Mr. Marek then used standard methods of damages analysis in securities class actions, such as the use of a "multi-trader" model that incorporates "empirical and observable data regarding ownership and trading in Progenity common shares." *Id.* at ¶11. Based on this methodology and the statutory damages formula, Mr. Marek calculated class-wide damages to be $20,925,111. *Id.* at ¶13. Further details of this methodology are set forth in Mr. Marek's declaration.

Mr. Marek also provides a simplified "first cut calculation" resulting in $19.47 million in potential damages. This is equal to the 3,300,001 IPO shares available for purchase by the Settlement Class, multiplied by the difference between the IPO price ($15.00) and the closing price of Progenity's stock on the date this Action was initiated ($9.10). *Id.* That the results of this simplified method are relatively close to Mr. Marek's more sophisticated multi-trader model confirms the magnitude of the damages at issue.

## VI. Cy Pres

The Notice provides that:

> At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to nonsectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.

Stipulation Ex. A-1 at ¶73. Importantly, diligent efforts will be made to distribute funds to Settlement Class Members who submit valid claims, to have them cash their checks, and to conduct redistributions of remaining funds to Settlement Class Members who have previously cashed checks, to the extent it is cost-effective to do so. *Id.* at ¶¶72-73. *Only* if the amount remaining in the Net Settlement Fund is so small that conducting such a redistribution would not be cost-effective will Plaintiffs move the Court to allow distribution of the remainder to a *cy pres* recipient.

Lead Counsel anticipates that in such circumstance it will seek the Court's

approval to distribute any remaining amount of the Net Settlement Fund to the Public Justice Foundation. The Public Justice Foundation is "a 501(c)(3) non-profit charitable public foundation dedicated to advancing the public interest," and that is affiliated with "Public Justice, P.C., a national public interest law firm that advances the Public Justice Foundation's goals." Declaration of Sharon M. McGowan of the Public Justice Foundation (the "McGowan Decl.", filed herewith as Exhibit 3), at ¶1.

As explained by the Public Justice Foundation's CEO, Ms. McGowan, Public Justice undertakes many activities to advocate for investors harmed by public companies' misleading statements. Such efforts include, among others, outreach to "the S.E.C. and Members of Congress speaking out against terms that would bar or deter investors from pursuing claims under the federal and state securities laws" (*id.* ¶5), presenting at educational seminars for investors and attorneys (*id.* ¶¶6-7), authoring articles "addressing threats to cases under the federal and state securities laws" (*id.* ¶8), and filing amicus briefs in support of investors in securities litigation (*id.* ¶9).

Therefore, there is "a driving nexus between the plaintiff class" in this Action "and the *cy pres* beneficiar[y]," the Public Justice Foundation. *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012). While "[a] *cy pres* award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members," those requirements are easily met here. *Id.* "[T]he basic purpose of the [Securities] Act" is "to provide greater protection to purchasers of registered securities." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 383 (1983). Section 11 of the Securities Act "was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Id.* at 382. Public Justice's advocacy on behalf of investors furthers the objectives to provide greater investor protection and assure compliance with the Securities Act's disclosure provisions. The interests of silent Settlement Class Members will be furthered by such work, as it is highly likely

that the vast majority of Settlement Class Members continue to invest in the stock market, and are therefore benefited by increased investor protections.

Given the close nexus between Public Justice's work on behalf of investors, and the interests of plaintiff classes in securities litigation, since 2010 the Public Justice Foundation has received at least two dozen *cy pres* designations from securities related cases. McGowan Decl. at ¶13; *see, e.g.*, *Stable Rd.*, 2025 WL 924929, at *2 ("the remaining funds will be donated to the Public Justice Foundation, a non-sectarian, not-for-profit 501(c)(3) organization dedicated to, among other things, investor education and advocacy"); *Zaidi v. Adamas Pharms., Inc.*, Case No. 4:19-cv-08051, ECF No. 155 at ¶8 (N.D. Cal. May 16, 2025) (filed herewith as Exhibit 5); *Derr v. RA Medical Sys., Inc.*, Case No. 3:19-cv-01079, ECF No. 101 at ¶8 (S.D. Cal. Apr. 3, 2024) (filed herewith as Exhibit 6).

## VII.   Exclusion and Objection Requirements

The Notice and proposed preliminary approval order set forth certain information required from Settlement Class Members seeking to object to, or request exclusion from, the Settlement. *See* Stipulation Ex. A (proposed order) at ¶¶13, 18; Stipulation Ex. A-1 (Notice) at ¶¶77, 84. For both objections and exclusion requests, this includes information about the Settlement Class Member's relevant transactions in Progenity common stock. *Id.* Such requirements are common in securities class action settlements (*see* Mulholland Decl. ¶21), and are warranted here.

Progenity stock transaction records are necessary for exclusion requests in order for the Parties to determine whether the threshold set forth in their Supplemental Agreement has been reached so as to allow the Remaining Defendants to terminate the Settlement. *See* Stipulation ¶35. As stated in Plaintiffs' preliminary approval motion, the confidential Supplemental Agreement "establishes conditions under which the Remaining Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of purchases of Progenity common stock

request exclusion (or 'opt out') from the Settlement." ECF No. 91-1 at 13.[5]

This information is likewise necessary for objections, because only Settlement Class Members have standing to object to any aspect of the Settlement in this Action. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (finding that a party "lacks standing to object to, or to appeal from the Plan of Allocation or its approval by the court below" where it "is not a member of the plaintiff classes in the MDL securities litigation, nor is it otherwise a claimant to any portion of the settlement fund"); *see also In re Apple Inc. Sec. Litig.*, 2011 WL 1877988, at *3 (N.D. Cal. May 17, 2011) (granting final settlement approval and noting that objector "lacks standing to object as he did not provide evidence to show that he is a class member").

The requirement that objectors state "the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention" is likewise necessary to allow Plaintiffs to respond to, and the Court to evaluate, any such objections. *See* Stipulation Ex. A (proposed order) at ¶18; Stipulation Ex. A-1 (Notice) at ¶84. This requirement is supported by the text of Federal Rule of Civil Procedure 23(e)(5), which states that an objection must "state with specificity the grounds for the objection." The Advisory Committee Notes for the 2018 amendment further state that "[t]he rule is . . . amended to clarify that objections must provide sufficient specifics to enable the parties to respond to them

---

[5] "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest"); *O'Hern v. Vida Longevity Fund, LP*, 2023 WL 3204044, at *7 (D. Del. May 2, 2023) (characterizing "agreement allowing Defendants to terminate the settlement if the exclusion requests exceed a specific threshold" as "standard").

and the court to evaluate them," and that "[f]ailure to provide needed specificity may be a basis for rejecting an objection."

As the Court noted in the Order, the same Advisory Committee Note continues, "Courts should take care, however, to avoid unduly burdening class members who wish to object, and to recognize that a class member who is not represented by counsel may present objections that do not adhere to technical legal standards." The information requested here is not unduly burdensome. Settlement Class Members should be able to easily obtain records of their transactions in Progenity stock over the relevant period by calling their brokerage firm or logging into its website. Likewise, simply specifying the reasons for an objection is not unduly burdensome.[6]

Furthermore, Plaintiffs share the Court's objective to honor the intentions of Settlement Class Members with respect to the Settlement. Plaintiffs have no intention of attempting to treat mere foot-faults in the information supplied, or other curable deficiencies, as an arbitrary bar to objections or exclusion requests. Indeed, the Parties have drafted the Stipulation and proposed preliminary approval order to acknowledge the Court's undisputed ability to waive shortcomings in exclusion requests. *See, e.g.*, Stipulation Ex. A (proposed order) at ¶13 ("A request for exclusion shall not be effective unless it provides all the required information and is received within the time stated above, *or is otherwise accepted by the Court*"). Plaintiffs would similarly agree with the Court exercising its discretion to consider objections despite minor deficiencies, so long as it appears that the objectors are in fact Settlement Class

---

[6] The facts of this case are starkly different from *Arena v. Intuit Inc.*, cited in the Court's order. 2021 WL 834253, at *10 (N.D. Cal. Mar. 5, 2021). In *Arena*, the court found the opt-out procedures at issue "unduly burdensome given the *unique circumstances of this litigation*," in which "[f]or tens of thousands of class members who are arbitrating claims against Intuit," and whose arbitration claims would be released by the settlement, "opting out is the obvious financial choice." *Id.* at *11. In that specific context, not present here, the opt-out provisions "appear[ed] designed to suppress opt outs." *Id.*

Members with standing to object.

In sum, the proposed requirements for objections and exclusion requests are reasonably necessary and are not unduly burdensome. Courts have repeatedly approved substantially similar requirements for objections and exclusion requests in securities class action settlements. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *15 (S.D. Cal. June 8, 2022) (granting preliminary approval to settlement with similar objection and exclusion requirements); *Mandalevy v. BofI Holding, Inc.*, 2022 WL 1556160, at *13-15 (S.D. Cal. May 17, 2022) (similar); *Kuhne v. Gossamer Bio, Inc.*, 2022 WL 770112, at *4-5 (S.D. Cal. Mar. 14, 2022) (similar); *In re Omnivision Techs., Inc. Sec. Litig.*, 2015 WL 12953228, at *5 (N.D. Cal. Mar. 4, 2015) (similar); *In re Hewlett-Packard Co. Sec. Litig.*, 2014 WL 12656640, at *5 (C.D. Cal. May 2, 2014) (similar).[7]

### VIII. Conclusion

For the foregoing reasons, and those set forth in Plaintiffs' memorandum in support of the preliminary approval motion (ECF No. 91-1), Plaintiffs submit that the Settlement merits preliminary approval, and respectfully request that the Court grant the Motion.

---

[7] In some securities cases where classes have been certified prior to settlement, the exclusion request process is not repeated in the settlement context, but courts have nonetheless repeatedly approved similar objection procedures to those in the instant Action. *See, e.g.*, *In re Qualcomm Inc. Sec. Litig.*, 2024 WL 3209339, at *5 (S.D. Cal. June 27, 2024) (granting preliminary approval to settlement of certified securities class action with similar objection requirements); *Davis v. Yelp, Inc.*, 2022 WL 21748777, at *8 (N.D. Cal. Aug. 1, 2022) (similar); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 818893, at *6 (S.D. Cal. Feb. 19, 2020) (similar).

DATED: July 25, 2025

**GLANCY PRONGAY & MURRAY LLP**

By: _s/ Garth Spencer_

ROBERT V. PRONGAY (#270796)
  _rprongay@glancylaw.com_
CASEY E. SADLER (#274241)
  _csadler@glancylaw.com_
GARTH SPENCER (#335424)
  _gspencer@glancylaw.com_
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

_Attorneys for Lead Plaintiffs_

PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF

**<u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On July 25, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 25, 2025, at Wilmington, North Carolina.

*s/ Garth Spencer*
Garth Spencer