# Exhibit 2

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE PROGENITY, INC.
SECURITIES LITIGATION

Case No. 3:20-cv-01683-RBM-AHG

**DECLARATION OF MICHAEL A. MAREK, CFA IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL PRELIMINARY APPROVAL BRIEF**

Hon. Ruth Bermudez Montenegro

I, Michael A. Marek, declare as follows:

1.    I am a founding member of Financial Markets Analysis, LLC ("FMA"), a securities analysis and consulting firm located in Yardley, Pennsylvania. A summary of my employment background, experience, and qualifications is set forth in Exhibit A. I was retained by Plaintiffs to consult on matters in this Action including loss causation and the calculation of damages for the Settlement Class (as defined in the Stipulation and Agreement of Settlement (the "Stipulation", ECF No. 91-3)).[1] I submit this declaration to address questions posed in the Court's Order for Additional Briefing in Support of Motion for Preliminary Approval (ECF No. 93), insofar as they relate to Plaintiffs' damages analysis.

2.    In preparing my damages analysis I reviewed, among other things:

   A.    Daily price and trading volume data for Progenity, Inc. ("Progenity" or the "Company") common stock;

   B.    Filings made by Progenity with the Securities and Exchange Commission ("SEC"), including documents relating to the Company's initial public offering ("IPO") and secondary offerings of common stock; and

   C.    The Second Amended Class Action Complaint (ECF No. 49) filed in this Action.

3.    I understand that Plaintiffs assert claims in this Action under Section 11 of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77k, and related control person claims under Section 15 of the Securities Act, 15 U.S.C. §77o.

4.    Section 11 provides for a cause of action where "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated

---

[1] Capitalized terms used but not otherwise defined herein have the same meanings as set forth in the Stipulation.

1
DECLARATION OF MICHAEL A. MAREK, CFA

therein or necessary to make the statements therein not misleading," on behalf of "any person acquiring such security." 15 U.S.C. §77k(a). In addition, "[t]o bring a claim under § 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023).

5.      Damages under Section 11 are set by the following statutory formula (subject to an affirmative defense for negative causation):

> The suit authorized under subsection (a) may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought.

15 U.S.C. §77k(e).

6.      Because Plaintiffs' claims under Section 15 merely provide for a controlling person's joint and several liability for violations committed by a controlled person (*see* 15 U.S.C. §77o), the Section 15 claims do not require a separate damages analysis, and do not change the class-wide damages in this Action.

7.      The Settlement Class is defined as "all persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby," with certain exclusions. Furthermore, "[t]he Plan of Allocation for the proposed Settlement considers Progenity common stock purchased or acquired during the period June 18, 2020 through December 2, 2020, both dates inclusive, to have been purchased or acquired

pursuant and/or traceable to Progenity's initial public offering Registration Statement." Notice (ECF No. 91-3 at Ex. A-1) at p. 1.

8. Based on my review of Progenity's SEC filings, the SEC declared the Company's IPO registration statement effective on June 18, 2020, and Progenity's stock was sold at $15 per share in the IPO.[2] Progenity sold 6,666,667 shares of common stock in the IPO, of which 3,366,666 were purchased by its then-CEO, Defendant Harry Stylli, or by its then-controlling shareholder, Athyrium Capital Management, LP ("Athyrium") and its affiliates.[3] As such, 3,300,001 IPO shares were available for purchase to persons other than Stylli, Athyrium, and its affiliates.

9. I understand that this Action was commenced on August 28, 2020. On that date, the closing price of Progenity's publicly traded common stock was $9.10 per share.  $9.10 per share was, therefore, the figure I referenced as "the value thereof as of the time such suit was brought" for purposes of the statutory Section 11 damage formula set forth above. Moreover, beginning on August 28, 2020, $9.10 per share serves as the "floor" or minimum proceeds when calculating the offset against purchase price (statutorily the lesser of $15.00 or actual purchase price) for Settlement Class members who: (1) purchased shares prior to August 28, 2020 and still held those shares at that date; or (2) purchased shares between August 28, 2020 and December 2, 2020.[4]

10. Based on my review of Progenity's SEC filings, the SEC declared the Company's registration statement for its secondary public offering of common stock

---

[2] Progenity's stock has since undergone multiple reverse stock splits. The share prices discussed herein refer to the prices in 2020, prior to any of the reverse splits.

[3] Stylli, Athyrium, and the Athyrium Affiliates are excluded from the definition of the Settlement Class. *See* Stipulation ¶1(vv).

[4] Progenity's common stock price closed above $9.10 on only twelve trading dates after August 28, 2020, with a high closing price of $9.60 on September 9, 2020.

DECLARATION OF MICHAEL A. MAREK, CFA

effective after the close of trading on December 2, 2020. I understand that, for purposes of Section 11, "when a company has offered shares under more than one registration statement, aftermarket purchasers usually will *not* be able to trace their shares back to a particular offering." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107–08 (9th Cir. 2013). The final purchase date capable of giving rise to damages in my model was, therefore, set as December 2, 2020.

11. To calculate class-wide damages under the Section 11 statutory formula for purchasers of Progenity common stock between the IPO and December 2, 2020, I estimated aggregate Settlement Class Member damages on a daily basis through the use of a "multi-trader" model. The model incorporates empirical and observable data regarding ownership and trading in Progenity common shares from Progenity's June 18, 2020 IPO to December 2, 2020, as well as parameters derived from published research.[5] My model allowed me to estimate damages suffered by Settlement Class Members through the statistical simulation of share purchase, sale and holding patterns for each relevant trading date. In my experience, similar multi-trader models are widely used by both plaintiff and defense experts for calculating aggregate damages in the course of litigation, in settlement discussions, and for drafting plans of allocation subsequent to settlement.

12. Based upon parameters consistent with publicly available research in this area, I assumed Settlement Class Members are divided into two trading categories.

---

[5] *See*, for example, William H. Beaver *et al.*, *Stock Trading Behavior and Damage Estimation in Securities Cases* (Cornerstone Research 1997); Marcia K. Mayer, *Best-Fit Estimation of Damaged Volume in Shareholder Class Actions: The Multi-Sector, Multi-Trader Model of Investor Behavior*, (National Economic Research Associates, 3d ed. Oct. 2000); William M. Bassin, *A Two Trader Population Share Retention Model for Estimating Damages in Shareholder Class Action Litigations*, 6 STAN. J. L. BUS. & FIN. 49 (2000); Michael Barclay & Frank C. Torchio, *A Comparison of Trading Models Used for Calculating Aggregate Damages in Securities Litigation*, 64 LAW & CONTEMP. PROBS. 105 (2001); and John Finnerty & George Pushner, *An Improved Two-Trader Model for Measuring Damages in Securities Fraud Class Actions*, 8 STAN. J. L. BUS. & FIN. 213 (2003).

DECLARATION OF MICHAEL A. MAREK, CFA

The first category encompasses low activity traders, who are assumed to account for 80% of non-insider ownership and 20% of reported trading. The second category encompasses high activity traders, who are assumed to account for 20% of non-insider ownership and 80% of reported trading. Based on these parameters, high activity traders would have a relative propensity to trade of 16. That is, high activity traders would be 16 times more likely to trade than low activity traders. [6, 7]

13.    Based on holdings of 3,300,001 IPO shares, and publicly available daily reported trading data, my model relied on statistical probabilities that assigned each share of Progenity stock purchased in the IPO or in the open market between June 18, 2020 and December 2, 2020 to a subsequent sale date and price and/or a final holding date and price. Summed over the distribution of all purchases, sales and holdings and in conjunction with the statutory damages language of Section 11 set forth in ¶5, I determined aggregate Section 11 damages to be $20,925,111.  By way of comparison, this figure is 7.5% higher than a first-cut aggregate statutory damages estimate of $19,470,000 based on 3,300,001 IPO shares simply multiplied by $5.90 per share ($15.00 IPO stock price - $9.10 stock value at date of suit).  The higher damages estimate under the multi-trader model reflects its ability to incorporate additional

---

[6] Calculated as the ratio of low activity traders' to high activity traders' holdings (80%/20%) (=4) divided by the ratio of low activity traders' trading to high activity traders' trading (20%/80%) (=¼); *i.e.*, 4 / ¼ = 16.

[7] As is also customary in this type of model, I reduced trading data input (estimated as 35% of Progenity daily reported volume) assumed to be executed by a third category of traders, commonly known as high-frequency traders.  An estimate of this type of trading is typically excluded from consideration when estimating class member damages when using this type of model because the intra-day, non-price-directional, bid-ask spread-based matched purchase and sale transactions executed by high-frequency trading strategies generally do not result in a Recognized Loss under a Plan of Allocation such as the one in this matter.

DECLARATION OF MICHAEL A. MAREK, CFA

statutory damages allowable for share sales prior to the August 28, 2000 date of suit filing at prices below $9.10 per share.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 21st day of July 2025.

Michael A. Marek

DECLARATION OF MICHAEL A. MAREK, CFA

# Exhibit A

**MICHAEL A. MAREK, CFA**
1651 Fairfield Road
Yardley, PA 19067
Phone: (215) 968-4142
e-mail: mmarek@fmavalue.com

## Professional Experience

| | | |
|---|---|---|
| 05/01 – Present | **Financial Markets Analysis, LLC** | Princeton, NJ / Newtown, Yardley PA |
| 12/97 - 04/01 | **Triumph Partners, LLC** | Princeton, NJ |

Founding Member
Provide financial analysis, valuation services and expert litigation support and testimony. Areas of concentration include valuation of securities and businesses, securities law and economic issues. Testimonial experience in securities class action litigation. Clients include corporations, government agencies (SEC), law firms, institutional and individual investors.

| | | |
|---|---|---|
| 10/86 - 12/97 | **Princeton Venture Research, Inc.** | Princeton, NJ |

Vice President
Performed securities valuation and financial analysis in connection with investment banking, venture capital and securities law expert consulting operations. Prepared company and industry research reports, valuations and fairness opinions. Responsible for project management and supervision of financial analysts and research personnel.

| | | |
|---|---|---|
| 05/85 - 06/86 | **Sage Data, Inc.** | Princeton, NJ |

Research Analyst
Developed and maintained econometric models and business forecasting systems for Fortune 500 clients. Created, produced and instructed customized PC hardware and software application seminars.

## Education

| | |
|---|---|
| 1984 | **Wharton School of Finance, University of Pennsylvania** |

B.S. Economics
Double Major: Finance / Decision Sciences

## Professional Designations and Affiliations

Chartered Financial Analyst (CFA)
Member, New York Society of Security Analysts (NYSSA)
Member, CFA Institute