# Exhibit 4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED USMAN ALI, Individually and on Behalf of All Others Similarly Situated, Plaintiffs, vs. FRANKLIN WIRELESS CORP., OC KIM, and DAVID BROWN, Defendants. | Case No.: 21-cv-00687-AJB-MSB **ORDER GRANTING PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** **(Doc. No. 75)** |

Before the Court is Gergely Csaba's ("Plaintiff") renewed motion for preliminary approval of class action settlement. (Doc. No. 75.) Franklin Wireless Corp., OC Kim, and David Brown ("Defendants") filed a notice of joinder in Plaintiff's motion. (Doc. No. 76.) For the reasons set forth below, the Court **GRANTS** the motion.

## I.   BACKGROUND

On April 16, 2021, Mohammed Usman Ali filed a Class Action Complaint against Defendants for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). (Doc. No. 1.) On September 15, 2021, the Court appointed Gergely Csaba as Lead Plaintiff

1

21-cv-00687-AJB-MSB

and Pomerantz LLP ("Pomerantz") as Lead Counsel pursuant to section 21D(a)(3)(B) of the Exchange Act. (Doc. No. 15.)

The operative pleading in this case is the Amended Complaint ("FAC"). (Doc. No. 26.) The FAC details that Franklin is a provider of wireless solutions, including mobile hotspots, routers and modems, and markets and sells its products directly to wireless operators, as well as indirectly through partners and distributors. (*Id.* at 5.) According to the FAC, Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder by misleading the market to believe that the Company had no knowledge that its mobile hotspot devices were manufactured with defective lithium-ion batteries. (*Id.*) The FAC alleges that during the class period, Franklin knew, but did not disclose that the hotspot devices were manufactured with defective lithium-ion batteries that posed a serious safety hazard because the batteries could overheat and cause severe burns and, in some cases, catch fire. (*Id.* at 5, 11–18.) Defendants filed an Answer (Doc. No. 27), and discovery thereafter commenced with the parties exchanging documents on a rolling basis.

On January 3, 2023, the Court granted Plaintiff's motion for class certification and certified the following Class:

> All persons and entities other than defendants who purchased or otherwise acquired Franklin Wireless Corporation ("Franklin" or the "Company") common stock between September 17, 2020 and April 8, 2021 (the "Class Period"), inclusive. Excluded from the Class are any parties who are or have been Defendants in this litigation, the present and former officers and directors of Franklin and any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any current or former Defendant has or had a controlling interest.

(Doc. No. 50 at 3, 11.) The Court also appointed Plaintiff as class representative and Pomerantz as class counsel (hereinafter, "Class Counsel"). (*Id.* at 11.)

On May 1, 2023, the parties attended mediation with Jed D. Melnick, Esq., an experienced mediator. Prior to the mediation, the parties submitted comprehensive

21-cv-00687-AJB-MSB

mediation statements setting forth the strengths and weaknesses of their case. The mediation resulted in the parties' agreement to settle the action. The parties memorialized their agreement in a memorandum of understanding ("Memorandum"), which they fully executed on May 3, 2023. The Memorandum sets forth, among other things, the parties' agreement to settle and release all claims that were asserted or could have been asserted in the action in exchange for a payment by or on behalf of Defendants of $2,400,000 for the benefit of the Class.

Plaintiff subsequently filed a motion for preliminary approval of class action settlement. (Doc. No. 63.) The Court denied the motion without prejudice to renewal to cure certain deficiencies, including an indeterminate net settlement amount and redistribution of remaining funds, as well an overbroad release and unequal treatment of class members. (Doc. Nos. 63, 74.) This renewed motion for preliminary approval of class action settlement follows. (Doc. No. 75.)

## II.    TERMS OF THE PROPOSED SETTLEMENT

Plaintiff, on behalf of himself and the Class, and Defendants have executed an "Amended Stipulation and Agreement of Settlement" ("Amended Settlement Agreement"). (Doc. No. 75-2.) The primary terms of the Amended Settlement Agreement are as follows.

### A.    Settlement Amount

The parties agreed to settle the instant class action for $2,400,000 ("Settlement Amount") to be paid by Defendant in exchange for the release of claims. The Settlement Amount plus any interest earned thereon will be used to pay: (a) any Taxes; (b) any Notice and Administration Costs; (c) any Litigation Expenses awarded by the Court; and (d) any attorneys' fees awarded by the Court. The remaining balance ("Net Settlement Fund") will be distributed to Authorized Claimants. The below is Plaintiff's approximation of how the Settlement Amount will be allocated. (Doc. No. 75 at 11–12.)

//

//

21-cv-00687-AJB-MSB

|  | Total | Per Share |
|---|---|---|
| Settlement Amount | $2,400,000 | $0.95 |
| Estimated Attorneys' Fees (33.33%) | ($799,920) | ($0.32) |
| Estimated Litigation Expenses | ($200,000) | ($0.08) |
| Estimated Notice and Administration Costs | ($100,000) | ($0.04) |
| Projected Interest | $114,000 | $0.05 |
| Projected Taxes | ($10,000) | ($0.01) |
| **Net Settlement Fund** | **$1,404,080** | **$0.55** |

## B. Settlement Notice and Administration

The proposed Notice contains detailed information about this action, including what the lawsuit is about, why there is a settlement, who is included in the settlement, the settlement benefits, how to receive payment, how to object to or be excluded from the settlement, lawyer representation, and the final approval hearing. (Doc. No. 75-4.) The Notice also contains the proposed "Plan of Allocation" and the calculations to be used to determine a claimant's recognized loss per share of Frankin stock. (*Id.* at 21–30.) After at least six months from the initial distribution, the settlement administrator must redistribute funds equitably among Authorized Claimants to the extent feasible and economical, contributing any remains to the Consumer Federation of America ("CFA") (Doc. No. 75-2 at 18.)

The parties selected Epiq to administer the settlement. (Doc. No. 75-2 at 6.) Franklin will provide Epiq the names and addresses of the holders of Franklin Securities during the Class Period. Epiq will mail the Notice to Class Members. In addition, Epiq will publish a summarized version of the Notice ("Summary Notice") on a national business newswire and maintain a website containing a copy of the Notice, Summary Notice, Claim Form and Release Form, and Amended Settlement Agreement. Epiq estimates that its "notice and administration costs will be approximately $125,000." (Doc. No. 75-8 at 3.)

4

21-cv-00687-AJB-MSB

## C.  Attorneys' Fees and Litigation Expenses

The class Notice states that Class Counsel will seek an award for attorneys' fees "in an amount not to exceed 33.33% of the Settlement Fund plus interest" and litigation expenses "in an amount not to exceed $300,000." (Doc. No. 75-4 at 5.)

## D.  Releases

In exchange for Defendants' $2,400,000 payment, Class Members who do not opt out of the Class release the following claims against Defendants.

> [A]ny and all claims, demands, rights, causes of action and liabilities, of every nature and description whatsoever, whether based in law or equity, arising under federal, state, local, statutory or common law, or any other law, rule or regulation, including both known and Unknown Claims, that have been or could have been asserted in any forum by the members of the Class, or the successors or assigns of any of them, in any capacity, arising out of or based on the factual allegations in the operative complaint or the circumstances and conduct giving rise to the Action.

(Doc. No. 75-2 at 11.) They do not include any claims relating to the enforcement of the Amended Settlement Agreement; any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court; and any claims that already have been brought derivatively related to Franklin Securities during the Class Period. (*Id.*)

## III.  LEGAL STANDARD

The Ninth Circuit has a strong policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).[1] A class action, however, may not be settled without approval of the court. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998) (citing Fed. R. Civ. P. 23(e)). The primary concern is the protection of class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

---

[1] Internal citations, alterations, and quotations are omitted from the case citations in this Order, unless otherwise indicated.

21-cv-00687-AJB-MSB

Court approval of a settlement involves a two-step process—preliminary approval, followed by final approval of the settlement. *See In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009). The court "need not review the settlement in detail at this juncture; instead, preliminary approval is appropriate so long as the proposed settlement falls within the range of possible judicial approval." *Id.* At the same time, however, "a district court may not simply rubber stamp stipulated settlements." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, at *1 (N.D. Cal. June 19, 2007).

## IV. DISCUSSION

Upon review of the renewed motion, the Court finds that the previously identified deficiencies in the parties' earlier proposed settlement have been cured, and for the reasons set forth below, concludes that the Amended Settlement Agreement merits preliminary approval.

### A. Propriety of Class Certification

To approve a settlement, a district court must first make a finding that a class can be certified. Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). The Court has previously found these elements met and granted Plaintiff's motion for class certification. (Doc. No. 50.) *See also supra* § I. Accordingly, the settlement class satisfies Rule 23's requirements.

### B. Fairness of the Proposed Settlement

Next, Rule 23(e) requires a district court to determine whether a proposed class action settlement is fundamentally fair, adequate, and reasonable. *See Class Plaintiffs,* 955 F.2d at 1276. It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026; *see also Officers for Justice*, 688 F.2d at 630 (holding a settlement must stand or fall in its entirety because a district court cannot "delete, modify or substitute certain provisions"). Rule 23(e)(2), effective December 1, 2018, enumerates factors for the court to consider in

21-cv-00687-AJB-MSB

making this determination; they are whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

### 1) Adequacy of Representation

As to the first Rule 23(e)(2) factor, the Court finds, as previously analyzed in the Order granting class certification,[2] that Plaintiff and Class Counsel have adequately represented the class. *See* Fed. R. Civ. P. 23(e)(2)(A). *See also Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020) ("This analysis is redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively.").

### 2) Arm's Length Negotiations

As to the second Rule 23(e)(2) factor, the Court notes that after extensive discovery and months of preparation and investigation, the parties attended mediation, submitted comprehensive mediation statements setting forth the strengths and weaknesses of their case, and engaged in hard-fought negotiations facilitated by an experienced mediator—ultimately resulting in their agreement to settle the case. (Doc. No. 75 at 10, 15.) Thus, the Court finds the settlement resulted from an arm's length negotiation. *See* Fed. R. Civ. P. 23(e)(2)(B).

### 3) Adequacy of Relief Provided to the Class

As to the third Rule 23(e)(2) factor, subsection (C) directs courts to consider (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C). With respect to the latter two considerations, the Court notes that it is not

---

[2] (Doc. No. 50 at 8.)

7

21-cv-00687-AJB-MSB

required to rule on a proposed award of attorney's fees at this stage, and there is no indication of an ancillary agreement made in connection with the proposed settlement between Plaintiff, Defendants, or their respective counsel of record. The Court therefore turns to the other two considerations to determine whether the proposed settlement provides adequate relief to the Class.

### a. Costs and Risks of Litigation

Regarding the costs, risks, and delay of trial and appeal, it appears the strengths and risks of the case support the compromises reached by both sides. While Plaintiff believes his case is very strong, the proposed settlement provides the Class with substantial, certain, and immediate relief, without the delay and expense of further motion practice, trial, and post-trial proceedings, and the risk of an uncertain outcome. The proposed settlement eliminates these uncertainties and allows for timely receipt of relief. *See In re Nvidia Derivs. Litig., No.*, C 06 06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.").

Moreover, Class Counsel represents that they have a thorough understanding of the action and the parties' respective positions and have determined that the settlement is in the best interests of the Class. Considering their experience with similar class action litigation, the Court accords deference to Class Counsel's decision to settle the case, as well as the terms of the settlement. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

The Court also finds that its concern with respect to the original release being overbroad has been cured. The revised release is appropriately tailored and applies only to those claims "arising out of or based on the factual allegations in the operative complaint or the circumstances and conduct giving rise to the Action." (Doc. No. 75-2 at 11.) *See also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (Release provisions are

8

21-cv-00687-AJB-MSB

enforceable "only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.").

As to the Settlement Amount, the parties have made it clear that the $2.4 million will be used to pay only the Class Members' relief, taxes, notice and administration costs, and attorneys' fees and litigation expenses awarded by the Court. The renewed motion contains projected estimates for these categories and thereby addressed the Court's earlier concern that the net settlement amount was indeterminate. As projected, the proposed settlement provides for an estimated net recovery of $0.55 per share, which is higher than other settlements approved in this district. *See, e.g.*, *Mandalevy v. BofI Holding, Inc.*, No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263, at *2 (S.D. Cal. Sept. 26, 2022) (approving "a gross average recovery of $0.05 per damaged share"); *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *3 (S.D. Cal. Nov. 30, 2021) ($0.19 average recovery per share); *Mauss v. NuVasive, Inc.*, No. 13-cv-2005-JM-JLB, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ($0.13 average net recovery per share). Class Counsel further represents that the $2.4 million settlement provides a recovery of about 12.9% of estimated damages, well beyond the median recovery of 1.8% of estimated damages in securities class actions settled in 2022. (Doc. No. 75 at 18.)

At this stage, the Court is satisfied that the Settlement Amount is adequate relative to Defendants' potential exposure and falls within the range of possible approval.

### b. Effectiveness of Distributing Relief and Claim Processing

Regarding the effectiveness of the proposed method of distributing relief to the class and processing their claims, the parties selected Epiq to administer the settlement, and Franklin will provide Epiq the names and addresses of the holders of Franklin Securities during the Class Period. Epiq will determine each Authorized Claimant's share of the Net Settlement Fund based upon a "recognized loss formula" developed by Plaintiff's damages expert in consultation with Class Counsel. (Doc. No. 75-4 at 21–22.)

The process for receiving relief is simple and straightforward. Epiq will provide Class Members a Notice of the settlement along with a claim form they can complete and

mail. (Doc. No. 75-4 at 19.) They can also access and submit an electronic claim form via the website maintained by Epiq. (*Id.*) Epiq will distribute the relief via check and make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks. Any remaining funds will be distributed to the chosen cy pres beneficiary, the CFA, an association focused on investor protection. (Doc. No. 75-2 at 18.) The Court finds that this proposed method of distributing relief is effective for purposes of Rule 23(e).

Accordingly, based on the foregoing factors, the Court finds the proposed settlement provides adequate relief to the Class and supports preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(C).

### 4) Equitable Treatment of Class Members

As to the fourth and final Rule 23(e)(2) factor, the court examines whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In the prior Order, the Court observed that the original proposal appeared to treat Class Members unequally because claimants whose distributions would amount to less than $10 would not receive a distribution and limited what would be deemed an eligible purchase or acquisition of Franklin shares for purposes of distribution. Plaintiff's renewed motion explains that these aspects of the settlement should not disturb a fairness finding.

As to excluding claims below $10.00, Plaintiff states that because small check amounts are typically discarded by recipients and serve only to add to the administration costs, applying a minimum threshold is fair. The Court finds the explanation sufficient. Other courts have approved similar thresholds for recovery. *See In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) ("Nor did the district court abuse its discretion in approving the allocation plan, which set a minimum threshold of $10 to receive a distribution from the settlement fund."); *Mandalevy*, No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263, at *2, 16 (approving plan of allocation with $10 minimum threshold).

As to excluding claimants who received their shares as a gift, inheritance, or a conveyance by operation of law, Plaintiff explains this limitation is fair because such shareholders would not otherwise be able to sustain a suit under Section 10(b) of the

Exchange Act. Because the exclusion appears to fairly limit recovery to those who have a valid claim, the Court finds the explanation satisfactory. And other courts have approved similar exclusions. *See In re Envision Healthcare Corp. Sec. Litig.*, No. 3:17-cv-01112, 2023 WL 8110157, at *20 (M.D. Tenn. Nov. 20, 2023); *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC-JLC, 2021 WL 11114633, at *24 (S.D.N.Y. Oct. 26, 2021).

The Court further finds that the method of calculating relief for each Class Member appears reasonable, fair, and effective. Relief will be distributed to Authorized Claimants on a pro rata basis based on the relative size of their recognized claims, with the computation taking into account their number of shares and the time period such shares were purchased. (Doc. No. 75-4 at 21–26.) *See also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (plan allocation was "even handed" where claimants received a pro rata reimbursement based on when they bought and sold their shares).

* * *

Upon consideration of the above factors, the Court finds that the settlement proposal is fair, adequate, and reasonable. The Court next considers the proposed Notice's form and method.

## C. Proposed Notice Form and Method

Rule 23(b)(3) provides that for any class certified thereunder, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(b)(3). Regular mail, electronic mail, and other appropriate means should all be considered. *See* Fed. R. Civ. P. 23(c)(2)(B). Additionally, where there is a class settlement, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(b)(3). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

11

21-cv-00687-AJB-MSB

According to the renewed motion, after the Court's entry of this Order, Epiq will (1) mail the Notice and Claim Form to all purchasers of Franklin common stock during the Class Period, (2) post the Notice and Claim Form to the Settlement Administrator's website, and (3) cause the Summary Notice to be published over GlobeNewswire. In addition, Epiq will make copies of the Notice available to nominee holders such as brokerage firms who held Franklin stock, and will request them to forward the Notice to all beneficial owners of such shares or, alternatively, to provide Epiq with their names and addresses so it can mail them the Notice directly.

The Court agrees with Plaintiff that providing the long-form Notice by mail, along with publishing the Summary Notice via a major business newswire service and posting the Notice and Claim Form on the Settlement Administrator's website, is the best notice practicable under the circumstances, is typical of the notice given in other class actions, and satisfies Rule 23 and due process. *See e.g.*, *Mandalevy*, No. 3:17-cv-667-GPC-MSB, 2022 WL 4474263, at *8 (approving of mailing notice, publishing summary notice via newswire, and posting the notice and other information on a settlement-specific website); *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 WL 7351449, at *4–5 (N.D. Cal. Nov. 20, 2015) (same).

Regarding the substance, the proposed Notice is thirty-six pages long, the first several of which contains an easy-to-read summary of the class action, and the recipient's legal rights and options. (Doc. No. 75-4 at 1–8.) The remainder of the Notice provides detailed information about this case, including what the lawsuit is about, why there is a settlement, who is included in the settlement, the settlement benefits, the Plan of Allocation, how to receive payment, how to object to or be excluded from the settlement, lawyer representation, and the final approval hearing. The information is written in plain English, organized by topic, and indexed in a descriptive table of contents. The Court is satisfied that the Notice describes the terms of the Settlement "in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 96.

21-cv-00687-AJB-MSB

Having carefully reviewed the proposed Notice, the Court finds that its method of delivery and contents comply with the requirements of Rule 23 and due process. Accordingly, the Court approves the proposed Notice.

## V. CONCLUSION

Accordingly, for the reasons stated herein, the Court enters the following orders.

- **Preliminary Approval of Settlement**: The Court finds, on a preliminary basis, that the Amended Settlement (Doc. No. 75-2), incorporated by reference in full and made a part of this Order, appears fair, adequate, and within the range of reasonableness which could ultimately be given final approval by this Court. Accordingly, the Court **GRANTS** Plaintiff's renewed motion for preliminary approval of class action settlement. (Doc. No. 75.)

- **Notice of Settlement**: The Court **APPROVES**, as to form and content, the Notice, the Claim Form, and the Summary Notice (respectively, Doc. Nos. 75-4; 75-5; 75-6) and finds them consistent with the requirements of Rule 23 and due process to provide the best practicable notice under the circumstances.

- **Settlement Administration**: The Court **APPOINTS** Epiq as the Settlement Administrator to supervise and administer the notice procedure in connection with the Amended Settlement as well as the processing of claims as more fully set forth below.

  o Within 5 business days of the entry of this Order, Franklin must provide or cause to be provided to Epiq in electronic format, such as an Excel spreadsheet, (at no cost to the Settlement Fund, Class Counsel or the Settlement Administrator) its reasonably available lists (consisting of names and addresses) of the holders of Franklin common stock shares during the Class Period;

  o Within 20 business days of the entry of this Order (the "Notice Date"), Epiq must cause a copy of the Notice and the Proof of Claim Form ("Claim Form"), substantially as they appear in form at Doc. Nos. 75-4

13

21-cv-00687-AJB-MSB

and 75-5 ("Notice Packet"), to be mailed by first-class mail to potential Class Members at the addresses set forth in the records provided by Franklin or in the records which Franklin caused to be provided, or who otherwise may be identified through further reasonable effort;

- o Contemporaneously with the mailing of the Notice Packet, Epiq must cause copies of the Notice and the Claim Form to be posted on a website to be developed for the settlement, from which copies of the Notice and Claim Form can be downloaded;

- o No later than 10 business days after the Notice Date, Epiq must cause the Summary Notice, substantially as it appears in form at Doc. No. 75-6, to be published once in GlobeNewswire; and

- o No later than July 25, 2024, Class Counsel must serve on Defendants' Counsel and file with the Court proof, by affidavit or declaration, of such mailing and publication.

- **Objections**:  Written letters of objection to the Amended Settlement must be filed with the Court and served on Plaintiff's and Defendants' counsel as set forth in the Amended Settlement no later than August 1, 2024.

- **Final Approval Hearing**: The Court sets a Final Approval Hearing on October 10, 2024 at 2:00 PM in Courtroom 4A, of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101, to consider:

  - o Whether the Amended Settlement should be finally approved as fair, reasonable, and adequate;

  - o Class Counsel's application for attorneys' fees and expenses; and

  - o The Settlement Administrator's expenses.

- **Other Filing Deadlines**: The Court **ORDERS** the following schedule for further proceedings:

14

21-cv-00687-AJB-MSB

- o The motion for final approval of class action settlement and motion for attorneys' fees and costs must all be filed <u>no later than September 19, 2024</u>.
  - The motion for final approval **MUST INCLUDE AND ADDRESS** any Objections or responses received as of the filing date.
  - As for the fee motion:
    - Class Counsel **MUST PROVIDE** documentation detailing the number of hours incurred by attorneys in litigating this action, supported by detailed time records, as well as hourly compensation to which those attorneys are reasonably entitled.
    - Class Counsel **MUST ADDRESS** the appropriateness of any upward or downward departure in the lodestar calculation, as well as reasons why a percentage-of-the-fund approach to awarding attorney fees may be preferable in this case and why any upward or downward departure from the 25% benchmark may be merited.
    - Class Counsel **MUST BE PREPARED** to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

**IT IS SO ORDERED.**

Dated: April 22, 2024

Hon. Anthony J. Battaglia
United States District Judge

15

21-cv-00687-AJB-MSB