1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PROGENITY, INC. SECURITIES LITIGATION<br><br>                                    Plaintiffs | Case No.:  3:20-cv-01683-RBM-AHG<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[Doc. 91]** |

    Pending before the Court is Lead Plaintiffs Lin Shen, Lingjun Lin, and Fusheng Lin's ("Plaintiffs") Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion").  (Doc. 91.)  No opposition to the Preliminary Approval Motion was filed.  (*See* Doc. 92 at 2.)[1]

    The Court finds this matter suitable for determination without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, Plaintiffs' Preliminary Approval Motion (Doc. 91) is **<u>GRANTED</u>**.

---

[1] The Court cites the CM/ECF electronic pagination unless otherwise noted.

# I.  BACKGROUND

## A.  Factual Background

On behalf of themselves and similarly situated investors, Plaintiffs assert claims for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o arising from Progenity Inc.'s June 2020 initial public offering (the "IPO") against three groups of defendants (collectively, "Defendants"): (1) Progenity, Inc. ("Progenity"); (2) Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell (the "Individual Defendants"); and (3) Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG, LLC (the "Underwriter Defendants," and with the Individual Defendants, the "Remaining Defendants").  (Doc. 91-1 at 9.)[2]

### 1.  Parties

Progenity is a biotechnology company based in San Diego, California that develops and commercializes molecular testing products and precision medicine applications, including "in vitro molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis."  (Doc. 64, Third Amended Complaint ["TAC"] at 7.)  At the time of the IPO, Progenity's two most successful products were its Innatal and Preparent tests, which screen for fetal chromosomal conditions and mutations that cause genetic diseases, respectively.  (*Id.*)

The Individual Defendants were executives or directors of Progenity who signed, or authorized the signing of, the Registration Statement issued in connection with Progenity's IPO, "reviewed and helped prepare the Registration Statement," and "participated in the solicitation and sale of [Progenity's] common stock to investors in the IPO for their own financial benefit and the financial benefit of Progenity."  (*Id*. at 18.)

---

[2] The Court refers to Plaintiffs and the Remaining Defendants collectively as the "Parties."

The Underwriter Defendants are financial services companies that acted as underwriters for Progenity's IPO. (*Id.* at 18–19; Doc. 91-1 at 9 n. 2.) The Underwriter Defendants collectively "sold more than 6.6 million Progenity shares in the IPO at $15 per share and shared $7 million in underwriting discounts and commissions." (Doc. 64 [TAC] at 19.)

### 2.    Factual Allegations

In the operative Third Amended Class Action Complaint ("TAC"), Plaintiffs allege Defendants made materially misleading statements in the Registration Statement issued in connection with the IPO by failing to disclose that: "(i) Progenity had overbilled government payors for its Preparent genetic tests; (ii) shortly before the IPO Progenity abandoned its key illegal marketing practice of waiving patient payment amounts; and (iii) at the time of the IPO Progenity suffered from negative trends in test volumes, test average selling prices, and revenue." (Doc. 91-1 at 9–10.)

## B.    Procedural History

In 2020, two class actions were separately filed in this district on behalf of investors who purchased Progenity's securities in connection with the IPO.[3] On December 3, 2020, the Court consolidated the cases, appointed Plaintiffs as co-lead plaintiffs, and approved Glancy, Prongay, & Murray LLP as lead counsel ("Lead Counsel" or "GPM"). (Doc. 33.)

The Court previously granted Defendants' motion to dismiss the Amended Class Action Complaint (*see* Doc. 40) and their motion to dismiss the Second Amended Complaint (*see* Doc. 52), but allowed Plaintiffs leave to amend on both occasions. (Docs. 48, 63.) On February 3, 2023, Plaintiffs filed the operative TAC. (Doc. 64.) Defendants once again filed a motion to dismiss (Doc. 67), which the Court granted with prejudice. (Doc. 70.)

---

[3] The cases are captioned *Soe v. Progenity, Inc., et al.*, Case No. 20-cv-01683-RBM-AHG, and *Brickman Investments Inc. v. Progenity, Inc., et al.*, Case No. 3:20-cv-01795-RBM-AHG.

Plaintiffs appealed the Court's order dismissing the TAC on August 11, 2023. (Doc. 72.) On September 7, 2023, the Parties and Progenity participated in an assessment conference with Circuit Mediator Robert S. Kaiser to explore settlement potential. (Doc. 91-1 at 12–13.) Although no settlement was reached during this conference, the Parties and Progenity continued to engage in settlement negotiations while briefing Plaintiffs' appeal in the Ninth Circuit. (*Id.*) On March 11, 2024, the Parties and Progenity reached an agreement in principle to settle the action for $1 million on a class-wide basis. (*Id.*) On July 3, 2024, the Ninth Circuit granted Plaintiffs' Motion for Stay of Appeal and Limited Remand (Appeal Doc. 34) and remanded the action to this Court for the limited purpose of conducting proceedings relating to the settlement. (Doc. 75.) Plaintiffs then filed their original motion for preliminary settlement approval on September 23, 2024. (Doc. 77.)

On December 27, 2024, while Plaintiffs' original motion was pending, Progenity filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, which operated as an automatic stay of litigation against the debtor (*see* 11 U.S.C. § 362(a)). (Doc. 91-1 at 13 (citing *In re: Biora Therapeutics, Inc.*, Case No. 24-12849 (Bankr. D. Del.), ECF No. 1).) The Parties assessed the impact of Progenity's bankruptcy petition on the original settlement agreement and negotiated the instant Settlement Agreement to supersede it. (*Id.* at 13.) Plaintiffs withdrew their original preliminary approval motion on May 12, 2025 (Doc. 90) and filed the instant Preliminary Approval Motion on May 13, 2025 (Doc. 91-1). Per this Court's July 14, 2025 Order (*see* Doc. 93), Plaintiffs filed a Supplemental Preliminary Approval Brief on July 25, 2025 ("Supplemental Brief"). (Doc. 94.) On July 25, 2025, Defendants filed a Joinder in Plaintiffs' Supplemental Brief in Support of Motion for Preliminary Approval. (Doc. 95.)

## II.    TERMS OF THE PROPOSED SETTLEMENT

Plaintiffs, on behalf of themselves and similarly situated investors, and the Remaining Defendants executed a "Stipulation and Agreement of Settlement" on May 7, 2025 (the "Settlement Agreement"). (Doc. 91-3.) The primary terms of the Proposed Settlement are as follows.

## A. Proposed Settlement Class

The Settlement Agreement proposes to settle all claims on behalf of a class of individuals defined as:

> All persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby.

("Settlement Class" or "Class Members").  (Settlement Agreement [Doc. 91-3] ¶ 1(vv).)

## B. Release of Claims

Any Class Member who does not submit a timely request for exclusion will release:

> [A]ll claims and causes of action of every nature and description, whether known claims or Unknown Claims (including waiving the protections of California Civil Code § 1542), whether arising under federal, state, local, common, statutory, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class or individual in nature, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, that Plaintiffs or any other member of the Settlement Class: (i) asserted in the Action; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Action and that relate to the purchase or acquisition of Progenity common stock pursuant and/or traceable to Progenity's initial public offering Registration Statement.

(Settlement Agreement [Doc. 91-3] ¶ 1(qq).)

## C. Settlement Amount

Defendants agree to pay a maximum gross settlement totaling $1,000,000 (the "Settlement Amount") in exchange for the release of claims.  (Settlement Agreement [Doc. 91-3, Ex. 1] ¶ 1(uu).)  The Settlement Amount will be used to pay: (i) taxes; (ii) notice and administration costs; (iii) attorneys' fees (not to exceed 33.33% of the Settlement Amount plus interest); and (iv) litigation expenses (not to exceed $110,000).  (*Id*. ¶¶ 1(dd), 9.)  In their Supplemental Brief, Plaintiffs provide the following estimated deductions and added interest to yield the remaining balance (the "Net Settlement Fund"):

|  | Total |
|---|---|
| Settlement Amount | $1,000,000 |
| Projected Interest (Through Final Approval) | $20,000 |
| Projected Interest (Final Approval to Initial Distribution) | $10,000 |
| Estimated Attorneys' Fees (33.33%) | $(340,000) |
| Estimated Litigation Expenses | $(110,000) |
| Estimated Notice and Administration Costs | $(64,600) |
| Projected Taxes | N/A |
| **Net Settlement Fund** | **$515,400** |

(Doc. 94 [Suppl. Br.] at 7.)  The Net Settlement Fund will be distributed to Class Members who submit a valid Claim Form ("Authorized Claimants") on a pro rata basis according to the relative size of their respective alleged economic losses.  (Settlement Agreement [Doc. 91-3, Ex. 1] ¶¶ 1(g), 20, 24 (a)–(e) (outlining conditions for a Class Member to be considered an Authorized Claimant); Doc. 91-3, Ex. A-1 at 77–78.)

**D.    Plan of Allocation**

Under the Proposed Plan of Allocation (*see* Doc. 91-3, Ex. A-1 at 74–79), each Authorized Claimant's pro rata share (the "Distribution Amount") is calculated as "the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund."  (Doc. 91-1 at 21; *see* Doc. 91-3, Ex. A-1 at 78.)

Each Class Member's "Recognized Claim" is the sum of their respective "Recognized Loss Amounts" for "all shares of the Progenity common stock purchased or otherwise acquired pursuant or traceable to the Registration Statement."  (Doc. 91-3, Ex. A-1 at 77.)  The "Recognized Loss Amount" will be determined using a formula which considers when Authorized Claimants purchased or acquired Progenity shares relative to the dates of the alleged corrective disclosures.  (*See* Doc. 91-3, Ex. A-1 at 76.)    This formula also considers the amount of artificial inflation that affected Progenity stock prices

6

during the Class Period and "assumes that the decline in the price of Progenity common stock, net of market and industry effects, in response to disclosures allegedly correcting the alleged misrepresentations is the only compensable loss." (*Id*. at 75.)

Under the Proposed Plan of Allocation, Authorized Claimants are entitled to a share of the Net Settlement Fund only if their respective Distribution Amount is equal to $10 or greater. (Doc. 91-3, Ex. A-1 at 76, 78.) Authorized Claimants whose Distribution Amount is less than $10 will not receive payment and will not be included in the calculation. (*Id*.)

**E.    Settlement Notice and Administration**

The Parties selected Strategic Claims Services ("SCS") to provide notice to the Settlement Class and administer the Proposed Settlement ("Claims Administrator"). (Doc. 91-1 at 19, 30.) Potential Class Members will be identified through three sources: (1) the Individual Defendants, (2) the Underwriter Defendants, and (3) brokerage firms and other nominees who purchased or otherwise acquired Progenity common stock during the Class Period "for the benefit of another person or entity." (Doc. 91-3, Ex. A at 49–52.)

The Individual Defendants will provide the Claims Administrator with "lists of purchasers of record (consisting of names, addresses and email addresses) of Progenity common stock between June 18, 2020 and December 2, 2020," in electronic format "at no cost to the Settlement Fund, Lead Counsel, Plaintiffs, or the Claims Administrator." (Doc. 91-3, Ex. A at 49.)

The Parties further agreed that, as this action concerns an IPO, the Underwriter Defendants will either provide the Claims Administrator with lists of purchasers of record of Progenity common stock during the Class Period or provide notice to all identifiable beneficial owners. (*See* Doc. 91-1 at 30 n.15 (citing Doc. 91-3, Ex. A at 49).) To the extent an Underwriter Defendant elects to provide notice to potential Class Members themselves, the Underwriter Defendant will be "responsible for all direct costs and expenses of communicating notice by those means." (*Id*. at 31 n.15.)

Finally, the Claims Administrator will notify brokers and other nominees "of the methods by which notice may be provided to their clients." (*Id*. at 30; *see* Doc. 91-3, Ex.

7

A at 51–52.)  The Claims Administrator will then mail the Proposed Postcard Notice (Doc. 91-3, Ex. A-4 at 100–101) by first-class mail to Class Members based on the records provided and upon request.  (Doc. 91-1 at 30.)  The Claims Administrator will also e-mail a link to the Proposed Notice and Claim Form to Class Members whose e-mail addresses are available or can be found with reasonable effort.  (*Id*.)  Class Members may submit their claims through a settlement website where the Proposed Notice, Claim Form, and "other important documents" will also be available.  (*Id*. at 30–31.)  The Proposed Summary Notice (*see* Doc. 91-3, Ex. A-3 at 97–99) will also be "published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*" no more than ten business days after the Postcard Notice is mailed.  (Doc. 91-1 at 30.)

## F.    Opt-Outs and Objections

To object to the Proposed Settlement, the Proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and litigation costs, Class Members must file "a written objection with the Court and serve copies of such objection on Lead Counsel and Defendants' counsel . . . no later than twenty-one (21) calendar days prior to the Settlement Hearing."  (Doc. 91-3, Ex. A at 55–56.)

To be excluded, Class Members must request exclusion in writing and must:

(i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity 'requests exclusion from the Settlement Class in *In re Progenity Inc. Securities Litigation*, 20-cv-01683'; (iii) state the number of shares of Progenity common stock that the person or entity requesting exclusion purchased/acquired and/or sold between June 18, 2020 and December 2, 2020, as well as the dates and prices of each such purchase/acquisition and sale; (iv) state the number of shares of Progenity common stock that the person or entity requesting exclusion sold between December 3, 2020 and June 2, 2021, as well as the dates and prices of each such sale; and (v) be signed by the person or entity requesting exclusion or an authorized representative.

(*Id*. at 54.)  Class Members must mail or deliver such requests "no later than twenty-one (21) calendar days prior to the Settlement Hearing, to: *In re Progenity Inc. Securities*

8

*Litigation*, EXCLUSIONS, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063." (*Id*.)

### III.    LEGAL STANDARD

The Ninth Circuit has a "strong judicial policy" in support of class action settlements. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)). A class action, however, may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)) ("*Bluetooth*").

When parties seek approval of a class settlement before class certification, courts analyze "both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To do so, courts must engage in a two-step process. First, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (noting that at the preliminary approval stage, "the settlement need only be *potentially* fair.") (emphasis in original). After providing the class with notice of the proposed settlement, the Court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

### IV.    CLASS CERTIFICATION

Before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). To obtain certification of a proposed class, Plaintiffs must

9

satisfy the requirements under Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23(a) sets out four prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Plaintiffs seek provisional certification under Rule 23(b)(3) which also requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (quoting Fed. R. Civ. P. 23(b)(3)).

In this case, the Settlement Class is defined as:

> All persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby.

(Settlement Agreement [Doc. 91-3] ¶ 1(vv).) For the reasons discussed below, the Court finds the Settlement Class satisfies the requirements for conditional class certification.

## A.    Rule 23(a)

### 1.    Numerosity

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). (quoting Fed. R. Civ. P. 23(a)(1)). "Although the absolute number of class members is not the sole determining factor, where a class is large in numbers, joinder will usually be impracticable." *Jordan v. Los Angeles Cnty.*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982).

In the Proposed Notice, Plaintiffs inform potential Class Members that Progenity issued and sold 6,666,667 shares of common stock in connection with its June 2020 IPO. (Doc. 91-3 at 74 n.5.) The Claims Administrator estimates "the Settlement Class includes approximately 7,500 persons, and that approximately 1,609 valid claims will be

submitted."  (Doc. 94 [Suppl. Br.] at 7 (citing (Doc. 94-2, Declaration of Paul Mulholland of Strategic Claims Services ["Mulholland Decl."] ¶ 7).)  Thus, the Court may reasonably conclude the numerosity requirement has been satisfied.  *See Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, 270 F.R.D. 488, 493 n.2 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

### 2.    Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Commonality is established if class members' claims "depend upon a common contention . . . capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Not every question of law or fact must be common to the class.  *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013).

In this case, the Proposed Class is composed of individuals who purchased or otherwise acquired Progenity securities during the Class Period.  There are a number of questions common to the Proposed Class, including "whether the Registration Statement contained untrue statements of material fact or material omissions, whether the individual defendants were controlling persons under Section 15, and whether defendants can meet their burden to prove affirmative defenses."  (Doc. 91-1 at 26 (quoting *In re Talis Biomedical Corp. Sec. Litig.*, Case No. 22-cv-00105-SI, 2024 WL 536303, at *3 (N.D. Cal. Feb. 9, 2024).)  Thus, the Court finds the commonality requirement is satisfied.  *See, e.g.*, *In re Lyft Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2021 WL 3711470, at *3 (N.D. Cal. Aug. 20, 2021) ("Common questions include whether the IPO Registration Statement contained untrue statements of material fact or omitted to disclose material facts").

### 3.    Typicality

Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "The

11

test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Haw. State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up).  The named plaintiff must therefore "possess the same interest and suffer the same injury" as proposed class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted).

As the Court previously noted in appointing Plaintiffs as lead plaintiffs, Plaintiffs allegedly "purchased Progenity common stock pursuant to or traceable to the Registration Statement and suffered losses as a result of their transactions." (Doc. 33 at 11.)  Indeed, Plaintiffs "purchased their Progenity shares on June 19, 2020 (the IPO date) and maintained their ownership through all three alleged corrective disclosures and the filing of this lawsuit." (*Id.*)  Plaintiffs' claims are therefore typical of the remaining Class Members' claims because their losses also "arise from the artificial inflation of Progenity common stock caused by defendants' alleged misrepresentations and omissions." (*Id.*)

Accordingly, Plaintiffs' claims for damages are predicated on the same legal theories, events, and course of conduct as those of the remaining Settlement Class Members.  *See In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988) ("The plaintiff's claim must arise from the same event or course of conduct giving rise to the claims of other class members . . . [and] must be based on the same legal theory."); *In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737 JM (JLB), 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015).

### 4. Adequacy

Under Rule 23(a)(4), "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *Bluetooth*, 654 F.3d at 948 ; *see also Hanlon*, 150 F.3d at 1020 ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them.") (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)).  The adequacy

requirement is satisfied when: (1) the named plaintiffs and their counsel have no conflicts of interest with the other class members; and (2) the named plaintiffs and their counsel will "prosecute the action vigorously on behalf of the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020).

Here, Plaintiffs and the remaining Class Members purchased or acquired Progenity stock during the Class Period and were injured by Defendants' allegedly misleading statements. (Doc. 91-1 at 27; *see also* Doc. 64 [TAC] ¶¶ 26–28.) Plaintiffs have also shown their commitment to this litigation by retaining qualified counsel and working with them throughout this litigation to achieve the best possible result for themselves and the Settlement Class. Plaintiffs' interests in maximizing their recovery are therefore aligned with the remaining Settlement Class Members. *See Mild v. PPG Indus., Inc*., Case No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Additionally, Lead Counsel have extensive experience and expertise litigating securities class actions, as well as "a long and successful track record of representing investors in such cases. *See Cheng Jiangchen v. Rentech, Inc.*, Case No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) ("Lead Counsel has also adequately represented the class. [GPM] has significant experience in securities class action lawsuits."). Lead Counsel vigorously prosecuted the present action and expended significant time and effort by "conducting an extensive investigation of the claims, consulting with experts, retaining an investigator to contact former Progenity employees, making [F]reedom of [I]nformation requests, drafting three detailed amended complaints, briefing three motions to dismiss, appealing the dismissal of the Action, and obtaining the $1 million Settlement for the benefit of the [Proposed] Settlement Class." (Doc. 91-1 at 15–16; *see id*. at 27 (referencing adequacy discussion under Rule 23(e) as applicable to

adequacy requirement for class certification purposes under Rule 23(a).)  Plaintiffs and Lead Counsel therefore appear to be adequate representatives of the Settlement Class.

**B.    Rule 23(b)(3)**

Rule 23(b)(3) requires that questions of law or fact common to the members of the class "predominate" over questions affecting only individual members, and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); *see Hanlon*, 150 F.3d at 1022 ("Rule 23(b)(3) focuses on the relationship between the common and individual issues.").

### 1.    Predominance

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3).  The predominance analysis "focuses on the relationship between the common and individual issues in the case and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Wang v. Chinese Daily News*, 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022) (cleaned up); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).").

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc., v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  In a Section 11 securities action, as in this case, a plaintiff "must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *Kaplan v. Rose*, 49 F.3d 1363, 1371 (9th Cir. 1994), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017).

As the Court previously noted (*see supra* IV.A.4), Plaintiffs allege that they purchased Progenity stock during the Class Period and, like the remaining Class Members,

were subsequently injured by Defendants' allegedly misleading statements issued in connection with Progenity's IPO. Plaintiffs' claims therefore raise common questions where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citation omitted). Although Class Members will need to rely upon individual evidence to calculate their pro rata share of the recovery, "[t]he presence of individualized damages calculations . . . does not defeat predominance." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (citation omitted). Indeed, "[t]he plain language of Section 11(e) prescribes the method of calculating damages, *see* 15 U.S.C. § 77k(e), and the court must apply that method in every case." *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995). Accordingly, the Court finds that Plaintiffs' claims raise common questions which predominate over questions affecting only individual members of the Settlement Class. The predominance requirement is therefore met for purposes of this Proposed Settlement.

### 2. Superiority

Rule 23(b)(3) requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Whether a class action is the superior method of litigation depends on: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions;" (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members;" (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum;" and (4) "the likely difficulties in managing a class action." *Id.* "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation omitted). "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Id.*

Here, Plaintiffs assert there is no evidence that proposed Class Members desire to bring separate individual actions and, to the Court's knowledge, there is no other pending litigation involving these claims.  Each Class Member will not have to litigate "numerous and substantial separate issues to establish his or her right to recover individually."  *See Zinser*, 253 F.3d at 1192.  Accordingly, the Court finds the instant class action is superior to individual litigation.

## C.    Conclusion

Based on the foregoing reasons, Plaintiffs sufficiently establish that the four requirements of Rule 23(a) and the Rule 23(b) requirements are met.[4]  The Court therefore finds that conditional certification of the Settlement Class is proper.

## V.    <u>PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT</u>

Having certified the Settlement Class, the Court must determine whether the Settlement Agreement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "At the preliminary approval stage, the question is whether approval under the 'fair, reasonable, and adequate' standard is likely."  *Loreto v. Gen. Dynamics Info. Tech., Inc.*, Case No. 3:19-cv-01366-GPC-MSB, 2021 WL 3141208, at *3 (S.D. Cal. July 26, 2021) (quoting Fed. R. Civ. P. 23(e)(1)(B)); *see Acosta*, 243 F.R.D. at 386  ("[T]he settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.").

Under Rule 23(e)(2), the Court must consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account: "the costs, risks, and delay of trial and appeal; the effectiveness of any proposed method of distributing relief to the class . . . ; the terms of any proposed award of attorney's fees,

---

[4] As the Court has found that the Rule 23(b)(3) requirements have been met, it need not analyze the other subsections of Rule 23(b).

including timing of payment; and any agreement required to be identified under Rule 23(e)(3)"; and (d) the proposal treats class members equitably relative to each other.

In addition to the Rule 23(e) requirements, district courts in the Ninth Circuit traditionally consider the following set of factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d 935 at 946–47 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)); *see Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021) (holding the revised Rule 23(e) requires courts "to go beyond our precedent" by applying the heightened scrutiny to all class action settlements).[5] "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

As relevant here, where "a settlement agreement is negotiated prior to formal class certification," the Court must also find that "the settlement is not the product of collusion among the negotiating parties." *Bluetooth*, 654 F.3d at 946–47 (cleaned up).

Based on its analysis below of all applicable factors, the Court finds that the Settlement Agreement appear "fair, reasonable, and adequate" such that approval is likely. *See* Fed. R. Civ. P. 23(e)(2).

---

[5] The factors are also commonly referred to as the "*Hanlon* factors" after the Ninth Circuit's decision in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

**A.    Rule 23(e)(2) Factors**

### 1.    Adequate Representation[6]

The Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "This analysis is redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." *Hudson v. Libre Tech. Inc.*, No. 3:18-CV-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 13, 2020).

Thus, for the same reasons previously discussed (*see supra* IV.A.4), the Court finds that Plaintiffs and Lead Counsel have adequately represented the class. This factor therefore favors approval.

### 2.    Arm's Length Negotiations

Under Rule 23, the Court must also consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). Under the revised Rule 23(e), "district courts must [also] determine if collusion may have led to class members being shortchanged." *See Briseño*, 998 F.3d at 1026.

Courts must ensure that a settlement agreement "is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625. An agreement reached in good faith after well-informed, arms-length negotiation is "entitled to a presumption of fairness." *In re Am. Apparel, Inc. S'holder Litig.*, CASE NO. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

Here, the Court finds the Parties engaged in fair arm's length negotiations which support a finding that the Settlement Agreement was achieved in the absence of collusion.

---

[6] The Court notes the considerations in Rule 23(e)(2)(A)–(B) "overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Andrade-Heymsfield v. NextFoods, Inc.*, Case No.: 3:21-cv-01446-BTM-MSB, 2024 WL 3871634, at *3 (S.D. Cal. Apr. 8, 2024).

As previously summarized (*see* Sec.I.B), the Settlement Agreement arises out of months of negotiations following Plaintiffs' appeal to the Ninth Circuit and Progenity's bankruptcy filing.  (Doc. 91-1 at 8–9, 12–13.)  Throughout the four years of this contested litigation, the Parties were represented by experienced counsel who understood the strengths and weaknesses in this action.  The Court concludes, for the purpose of preliminary approval, that this factor is likely satisfied.  *See Scott v. ZST Digital Networks, Inc.*, CV 11-3531 GAF (JCx), 2013 WL 12123989, at *6 (C.D. Cal. Mar. 27, 2013) ("There can be little doubt that the negotiations . . . which were conducted at arm's-length by counsel over the span of several months, were serious, informed and noncollusive" especially when "[t]he parties were represented by experienced counsel who bargained in an adversarial manner").

### 3.    Adequacy of Relief

To determine whether the relief provided for the Settlement Class is adequate, the Court must consider:

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Loreto*, 2021 WL 3141208, at *4 (citation omitted).

In the Settlement Agreement, the Parties agreed to pay a non-reversionary Settlement Amount of $1,000,000.  (*See* Doc. 91-1 at 20 n.9 (citing Doc. 91-3, Ex. A-1 at 65).)  In their Supplemental Brief, Plaintiffs provide projected estimates that address the Court's concern as to the indeterminate nature of the Net Settlement Amount.  (Doc. 94 [Suppl. Br.] at 5–8, 11–15.)  After deductions for attorneys' fees, litigation expenses, notice and administration costs, and taxes, Lead Counsel estimates the Net Settlement Fund available for distribution to valid claims will be approximately $515,400.  (*Id*. at 12.)

19

Plaintiffs will also seek the Court's approval to distribute any remaining amount of the Net Settlement Fund to a *cy pres* recipient "*[o]nly* if the amount remaining in the Net Settlement Fund is so small that conducting such a redistribution would not be cost-effective." (*Id.* at 13 (emphasis in original).) If any remaining funds remain after redistribution, such funds will be distributed to the Public Justice Foundation, a non-sectarian, not-for-profit 501(c)(3) organization dedicated to, among other things, advocacy "for investors harmed by public companies' misleading statements." (*Id.* at 15; *see* Doc. 94-4, Declaration of Sharon M. McGowan ["McGowan Decl."], Ex. 3 ¶¶ 1, 4–10.) The Court finds that the *cy pres* recipient is "the next best distribution" and therefore proper.

### a. Costs and Risks of Litigation

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Loreto*, 2021 WL 3141208 at *8 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). When assessing "the costs, risks, and delay of trial and appeal" under Rule 23(e)(2)(C)(i), courts in the Ninth Circuit also take into account "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial[.]" *Hanlon*, 150 F.3d at 1026.

Based on Section 11's statutory damages formula and Progenity's stock price on the date this action was filed, Plaintiffs estimate the Settlement Amount "represents approximately 4.8% of estimated maximum damages of approximately $20.9 million." (Doc. 91-1 at 22.) Plaintiffs provide a supporting declaration from their consulting damages expert, Michael A. Marek, who calculated the $20.9 million in maximum damages. (Doc. 94-3, Declaration of Michael A. Marek, CFA ["Marek Decl."].) Mr. Marek applied the facts of this case to Section 11's statutory damages formula and "used standard methods of damages analysis in securities class actions, such as the use of a 'multi-trader' model that incorporates 'empirical and observable data regarding ownership and trading in Progenity common shares.'" (Doc. 94 [Suppl. Br.] at 13 (citing Marek Decl. [Doc. 94-3] ¶ 11).)

Moreover, while Plaintiffs believe their arguments on appeal were strong, "they also recognize that there was a substantial chance that the Ninth Circuit would affirm the Court's orders." (Doc. 91-1 at 17.) Indeed, the substantial risks to Plaintiffs' case are readily apparent from the Court's three previous orders dismissing their complaints. (*See* Docs. 48, 63, 70.) *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder [] litigation to assess the risks involved."). The risk that the Settlement Class would recover little to nothing if litigation were to continue therefore supports a finding that the Settlement Amount will adequately compensate the Class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041–42 (N.D. Cal. 2008) (holding the risk of continued litigation weighed in favor of approval where the plaintiffs "still faced a number of problems proving their case on the merits."); *In re Nvidia Deriv. Litig., No.*, C-06-06110-SBA (JCS), 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008) ("The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation.").

Accordingly, the strength of the Parties' positions and the risk of further litigation likely renders the Settlement Amount adequate relative to Defendants' potential exposure. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citation omitted).

### b. Effectiveness of Proposed Distribution Method

Rule 23(e)(2) requires that the Court weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). In doing so, the Court must "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" and is not "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, Class Members will be ascertained from records maintained by Defendants. (*See* Doc. 91-3, Ex. A at 49.) The Claims Administrator will mail the Proposed Postcard Notice (Doc. 91-3, Ex. A-1) or e-mail a link to the Notice (*id.*, Ex. A-1) and Claim Form (*id.*, Ex. A-2) to potential Class Members who may be identified through reasonable effort. (Doc. 91-1 at 30.) "The Claims Administrator will also provide notice of the Settlement to brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock, informing such firms of the methods by which notice may be provided to their clients." (*Id.*) The Proposed Notice and Claim Form will also be posted on a settlement website. (*Id.* at 30–31.) The Summary Notice (Doc. 91-3, Ex. A-3) will be published in a national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire.* (Doc. 91-1 at 31.)

Potential Class Members will be required to submit a Claim Form and supporting records establishing their loss. (Settlement Agreement [Doc. 91-3] ¶ 24(a).) Class Members will be able to file their claims electronically through the settlement website. (Doc. 91-1 at 31.) The Claims Administrator will process the claims and may reject claims that do not meet submission requirements. (Doc. 91-1 at 19.) However, Class Members will have an opportunity to cure any deficiencies or request that the Court review a denied claim. (*Id.*; Settlement Agreement [Doc. 91-3] ¶ 24(d)–(e)). The Class Administrator will then distribute the Net Settlement Fund, via check or wire, to Class Members who submit a valid claim on a pro rata basis in accordance with the Plan of Allocation based on the relative size of their Recognized claims. (Doc. 91-3, Ex. A-1 at 78.) After the initial distribution, the Claims Administrator will "make reasonable and diligent efforts to have Authorized Claimants cash their distribution checks." (*Id.*)

The Court finds the proposed distribution process is straightforward and does not require intensive labor on the part of any Class Member. It also effectively distributes *pro rata* relief based on demonstrable injury. *See Baron v. HyreCar Inc.*, No. 2:21-CV-06918-FWS-JC, 2024 WL 3504234, at \*9 (C.D. Cal. July 19, 2024); *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at \*2, 7 (N.D. Cal. Dec. 18, 2018), *aff'd*

*sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (finding the distribution method was effective where "class members who submit[ted] timely claims [would] receive payments on a pro rata basis based on the date(s) class members purchased and sold [the company's] common stock, as well as the total number and amount of claims filed"). This factor therefore weighs in favor of preliminary approval.

### c. Attorneys' Fees and Costs

To determine the fairness and adequacy of a settlement, Rule 23(e) requires the Court to assess "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(2)(C)(iii); *see Staton*, 327 F.3d at 963. "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Nonetheless, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

In a common fund case, district courts may use either the percentage-of-the-fund method or the lodestar method to calculate an appropriate attorneys' fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-the-fund method, an attorneys' fee award of "[t]wenty-five percent is the 'benchmark' that district courts should award." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The following factors have been used as grounds to adjust the benchmark when special circumstances indicate it is appropriate: "(1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee; (5) the burdens carried by the class counsel; and (6) the awards in similar cases." *Walters v. Target Corp.*, Case No.: 3:16-cv-1678-L-MDD, 2019 WL 6696192, at *7 (S.D. Cal. Dec. 6, 2019) (citing *Monterrubio v. Best Buy Stores, LP*, 291 F.R.D. 443, 455 (E.D. Cal. 2013); *Craft v. San Bernardino*, 624 F.Supp.2d 1113, 1116–17 (C.D. Cal. 2008)).

The Proposed Notice informs the Settlement Class that Lead Counsel may apply for an award not to exceed 33.3 % of the Settlement Fund, or approximately $340,000. (Doc.

23

91-1 at 20; *see* Doc. 94 [Suppl. Br.] at 7.)  Lead Counsel may also apply for reimbursement of their out-of-pocket litigation expenses up to $110,000 and "reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Settlement Class in an aggregate amount not to exceed $7,500." (Doc. 91-3, Ex. A-1 at 62–63.)  The Settlement Agreement is not conditioned on the Court's award of the requested attorneys' fees.  (Doc. 91-1 at 20; *see* Settlement Agreement [Doc. 91-3] ¶ 16.)

At the preliminary approval stage, the Court need not determine whether it will ultimately approve Plaintiffs' award in the range requested.  "It is sufficient for the Court to conclude that this is not a situation in which the attorney's fee provision of the Settlement Agreement is so out of proportion with the relief provided to the class that it 'calls into question the fairness of the proposed settlement.'" *Loreto v. Gen. Dynamics Info. Tech., Inc.*, Case No.: 3:19-cv-01366-GPC-MSB, 2021 WL 1839989, at *10 (S.D. Cal. May 7, 2021) (quoting *Pokorny v. Quixtar Inc.*, No. 07-0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).  Accordingly, this factor weighs in favor of approval.

The Court will closely scrutinize Lead Counsel's application for attorneys' fees, costs, and expenses upon filing of the motion for final approval of class action settlement. While Plaintiffs contend the maximum attorneys' fee award is reasonable (Doc. 91-1 at 20), the Court notes that special circumstances must be established to support an attorneys' fee award exceeding the 25% benchmark. *See Six (6) Mexican Workers*, 904 F.2d at 1311 (affirming a twenty-five percent award where "the litigation lasted more than 13 years, obtained substantial success, and involved complicated legal and factual issues").  Lead Counsel is therefore directed to provide a thorough fee award motion, as well as any supporting records, which also addresses the previously identified adjustment factors.

### d. Side Agreements

Rule 23 requires that the Parties "file a statement identifying any agreement made in connection with the [settlement] proposal." Fed. R. Civ. P. 23(e)(3).  The Settlement Agreement in this case allows Defendants to terminate the Proposed Settlement if enough Class Members opt out.  (Doc. 91-1 at 20; *see* Settlement Agreement [Doc. 91-3] ¶ 35.)

While the Notice discloses this clause to Class Members, the percentage of shares that triggers Defendants' right to terminate is not disclosed.  (*See* Doc. 91-3, Ex. A-1 at 80.)

This type of provision, also known as a "blow-up" clause, is common in securities class actions "and guard[s] against the possibility that a sufficient number of class members opt out of a class action settlement such that the Defendant's potential future liability is not reduced in a way that renders the settlement worthwhile."  *Mandalevy v. BofI Holding, Inc.*, No. 3:17-CV-667-GPC-MSB, 2022 WL 4474263, at *9 (S.D. Cal. Sept. 26, 2022); *see Mondrian v. Trius Trucking, Inc.*, No. 1:19-cv-00884-DAD-SKO, 2022 WL 2306963, at *20 n.20 (E.D. Cal. June 27, 2022) (citing cases preliminarily approving securities class action settlements containing blow-up clauses)).  Courts have found that a blow-up clause "does not weigh against preliminary approval."  *In re Immunitybio, Inc. Sec. Litig.*, No. 3:23-CV-01216-GPC-VET, 2025 WL 1686263, at *10 (S.D. Cal. June 16, 2025) (quoting *Baron*, 2024 WL 3504234, at *10); *see In re Illumina, Inc. Sec. Litig.*, Case No.: 3:16-cv-3044-L-MSB, 2019 WL 6894075, at *9 (similar).  "To protect the settlement class, the specific terms of the [blow-up clause] are confidential 'to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.'"  *Farrar v. Workhorse Grp., Inc.*, Lead Case No.: CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *10 (C.D. Cal. July 24, 2023) (quoting *Thomas v. MagnaChip Semiconductor Corp.*, Case No. 14-cv-01160-JST, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017)).

As the blow-up clause's threshold does not relate to the Class Members' expected recovery or indicate a side agreement made solely for the benefit of the attorneys, its non-disclosure alone does not weigh against approval.

### 4.    Equitable Treatment of Class Members

The Court must also consider whether the Settlement Agreement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "In doing so, the Court determines whether the settlement 'improperly grants preferential treatment to class representatives or segments of the class.'"  *In re ImmunityBio*, 2025 WL 1686263, at *10

25

(quoting *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (citation omitted).

Under the Proposed Plan of Allocation (*see supra* V.A.3.b), Class Members who submit valid claims will receive a pro rata payment based on the size of their recognized loss relative to the total recognized losses of all valid claims submitted. (Doc. 91-1 at 21; *see* Doc. 91-3, Ex. A-1 at 74.) Class Members will receive differing payouts based on the number of Progenity shares purchased, when such shares were purchased and sold as compared to the alleged corrective disclosure dates, and the relative amount of artificial inflation that affected Progenity stock prices during the Class Period. (Doc. 91-3, Ex. A-1 at 75.) If a Class Member's distribution amount is less than $10, it will not be included in the calculation and that Class Member will not receive compensation. (*Id.* at 64, 78.)

In their Supplemental Brief, Plaintiffs explain that the $10 minimum distribution "is designed to ensure that distributions are made to claimants who are likely to cash their checks, and to avoid increases in administration costs that are likely to be disproportionate to the benefit to Settlement Class Members of distributing smaller checks." (Doc. 94 [Suppl. Br.] at 9.) Plaintiffs also provide a declaration from Paul Mulholland, the President of the Claims Administrator, SCS. (*See* Mulholland Decl. [Doc. 94-2].) In his declaration, Mr. Mulholland states that "[p]ayments of less than $10.00 are economically impractical as compared to the administrative, printing and mailing costs required to make such small distributions." (*Id.* ¶ 11.) Based on his experience administering securities class action settlements, Mr. Mulholland estimates that "roughly 20% of otherwise valid claims will not receive a distribution due to the $10 requirement." (*Id.* ¶ 15.)

Plaintiffs also cite several cases where California district courts found similar $10 minimum disqualifications did not affect the fairness determination of securities class action settlements. (Doc. 94 [Suppl. Br.] at 10 (citing cases).) Indeed, "[w]hile the proposed Plan of Allocation excludes any claimant whose distribution amounts calculates

to less than $10.00, courts in this Circuit 'regularly approve' of settlement agreements that include such provisions because this is 'no significant indication of preferential treatment.'" *In re Immunitybio*, 2025 WL 1686263, at *10 (quoting *Baron*, 2024 WL 3504234, at *11). The Court therefore finds the minimum disqualification in this case does not constitute improper preferential treatment.

Accordingly, the Proposed Plan of Allocation is reasonable, fair, and equitable. *See Hampton*, 2021 WL 4553578, at *10 ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon . . . the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.") (cleaned up); *Vinh Nguеyn v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (finding a similar distribution method equitable).

### 5. Conclusion

For the reasons set forth above, the Court finds the Proposed Settlement to be "fair, reasonable, and adequate" pursuant to Rule 23(e) and within the range of possible approval.

## B. Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice of the settlement must clearly state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (cleaned up). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (cleaned up).

Notice must also satisfy the Private Securities Litigation Reform Act ("PSLRA"), which "requires that notice include: (1) the amount of the settlement . . . determined in the aggregate and on an average per share basis, (2) the average amount of [the] potential damages per share, (3) a statement of any fees or costs that counsel intends to seek from the settlement fund, (4) class counsel's contact information, and (5) '[a] brief statement explaining the reasons why the parties are proposing the settlement.'" *In re Lyft, Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2022 WL 17740302, at *7 (N.D. Cal. Dec. 16, 2022) (citing 15 U.S.C. § 78u-4(a)(7)).[7]

### 1.    Proposed Method

The "best notice that is practicable under the circumstances" is determined under a "reasonableness" standard. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1117 (9th Cir. 2018). This "depends upon the information available to the parties about that person." *Hilsley v. Ocean Spray Cranberries, Inc.*, Case No.: 17cv2335-GPC(MDD), 2019 WL 718807, at *1 (S.D. Cal. Feb. 5, 2019) (citation omitted). "[I]f the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Id.* (citation omitted).

In support of their Preliminary Approval Motion, Plaintiffs submit the Proposed Notice (Doc. 91-3, Ex. A-1), Claim Form (*id.*, Ex. A-2), Summary Notice (*id.*, Ex. A-3), and a Postcard Notice (*id.*, Ex. A-4). Plaintiffs propose to provide Class Members with

---

[7] While Plaintiffs cite the disclosure requirements under 15 U.S.C. § 77z-1(a)(7), 15 U.S.C. § 78u-4(a)(7) provides the same the requirements for notice of settlement in a securities class action. *See Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *3 n.2 (S.D. Cal. Dec. 6, 2018).

notice by: (1) mailing the Postcard Notice to all Class Members who can be identified with reasonable effort; (2) e-mailing the Proposed Notice and Claim Form to all Class Members who can be identified with reasonable effort; (3) publishing the Summary Notice in the national edition of *Investor's Business Daily*; and (4) transmitting once over the *PR Newswire*. (Doc. 91-1 at 30–31.)  The Proposed Notice and Claim Form also will be posted on a settlement website, from which important documents can be downloaded and Class Members can submit claims.  (*Id*. at 30–31.)

Having carefully reviewed these submissions, the Court finds the procedures direct notice in a "reasonable manner."  *See Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999–GPC (KSC), 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice); *In re ImmunityBio, Inc. Sec. Litig.*, Case No.: 3:23-CV-01216-GPC-VET, 2025 WL 834767, at *14 (S.D. Cal. Mar. 17, 2025) ("Courts routinely find that these methods of notice satisfy the requirements of Rule 23, the PSLRA, and due process in securities class actions, where the Parties lack access to a complete list of investors who purchased shares during the Class Period.").

### 2.    Proposed Form

The Court also finds the Proposed Notice's form complies with the requirements of Rule 23(c) and the PSLRA.  The Proposed Notice clearly and concisely explains the allegations and claims in plain English.  (*See* Doc. 91-3, Ex. A-1 ¶¶ 11–30.)  The Proposed Notice defines the Settlement Class (*id*. ¶ 31) and the Settlement Amount (*id*. ¶ 2), informs Class Members of their rights and options (*id*. ¶7), includes contact information for Lead Plaintiffs' Counsel (*id*. ¶¶ 6, 83) and Defendants' Counsel (*id*. ¶ 83), and directs Class Members to a website with more information (*id*. ¶¶ 31, 46, 92).  It also summarizes the proposed attorneys' fee award (*id*. ¶¶ 5, 76), the release provisions (*id*. ¶¶ 40–45), and relevant information about the hearing including instructions for requesting exclusion from the Proposed Settlement and filing an objection (*id*. ¶¶ 77–89).  The Proposed Notice further thoroughly describes the Proposed Plan of Allocation and explains how the recognized loss amount will be calculated per share.  (*Id*. ¶¶ 57–63).

Accordingly, the Proposed Notice conforms with due process requirements and "describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (citation omitted). The Court therefore approves the form of the Proposed Notice and directs that it be provided to Class Members in accordance with the proposed method of notice.

## VI.    <u>CONCLUSION</u>

Based on the foregoing, the Court **GRANTS** Plaintiffs' Preliminary Approval Motion (Doc. 91). The Court further **<u>ORDERS</u>** as follows:

1. The Settlement Agreement and the definition of words and terms contained therein are incorporated by reference in full and made a part of this Order.

2. **<u>Conditional Class Certification</u>**. The Court conditionally **CERTIFIES**, for settlement purposes only, the following Settlement Class: "all persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby."

3. **<u>Preliminary Approval of Settlement</u>**. The Court finds the Settlement Agreement appears fair, adequate, and within the range of reasonableness which could ultimately be given final approval by this Court. Plaintiff's Preliminary Approval Motion (Doc. 91) is therefore **GRANTED** and the Settlement Agreement (Doc. 91-3, Ex. 1 at 1–43) is **PRELIMINARILY APPROVED**.

4. **<u>Notice of Settlement</u>**. The Court finds the Proposed Notice (Doc. 91-3, Ex. A-1 at 60–83) provide the best practicable notice under the circumstances consistent e with the requirements of Rule 23 and due process. The Proposed Notice is **APPROVED**.

5. **<u>Settlement Administration</u>**. The Court **APPOINTS** Strategic Claims Services as the Claims Administrator to supervise and administer the notice procedure in connection with the Proposed Settlement as well as the processing of claims set forth

30

in the Settlement Agreement.  The Court further **APPROVES** the implementation schedule of the Notice Plan.  (*See* Doc. 91-1 at 32; Doc. 91-3, Ex. 1 at 49–50.)

6.  **Objections**.  Written letters of objection to the Settlement Agreement must be filed with the Court and served on Plaintiffs' and the Remaining Defendants' counsel as set forth in the Settlement Agreement on or before **Tuesday, February 3, 2026**.

7.  **Filing Deadlines.**  The motion for final approval of class action settlement and motion for attorneys' fees and costs must be filed and served on all parties on or before **Tuesday, January 20, 2026**.  Responses—including an opposition, a notice of non-opposition, or any objections by Class Members—must be filed and served on all parties on or before **Tuesday, February 3, 2026**.  Any reply by Plaintiffs must be filed and served on all parties on or before **Tuesday, February 17, 2026**.  Plaintiffs' motions must comply with the following:

    a.  In support of the motion for attorneys' fees and costs, Lead Counsel must:

        i.  **Provide** documentation detailing the number of hours incurred by attorneys in litigating this action supported by time records, as well as hourly compensation to which those attorneys are reasonably entitled.

        ii.  **Provide** documentation detailing any litigation expenses they seek to be reimbursed accompanied by detailed records and explanations for such expenses.

        iii.  **Address** the appropriateness of any departure in the lodestar calculation, as well as reasons why a percentage-of-the-fund approach to awarding attorney fees may be preferable in this case and why any departure from the 25% benchmark may be merited.

        iv.  **Be prepared** to address any questions the Court may have regarding the application for fees at the Final Approval Hearing.

8.  **Final Settlement Approval Hearing**.  The Court **SETS** a hearing on fairness and final approval of settlement on **Monday February 23, 2026 at 10:00 AM** in

31

Courtroom 5B, of the Edward J. Schwartz United States Courthouse, 221 W. Broadway, San Diego, CA 92101.

9.    The schedule for Settlement Administration and final approval process is as follows:

| EVENT | DEADLINE |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (the "Notice Date") | **Friday November 21, 2025** |
| Deadline for publishing the Summary Notice | **Tuesday December 9, 2025** |
| Deadline to file Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees and Costs | **Tuesday, January 20, 2026** |
| Deadline for receipt of exclusion requests and objections | **Tuesday, February 3, 2026** |
| Deadline for submitting Claim Forms | **Tuesday, February 3, 2026** |
| Deadline for filing reply brief | **Tuesday, February 17, 2026** |
| Final Settlement Approval Hearing | **Monday February 23, 2026 at 10:00 AM** |

**IT IS SO ORDERED.**

DATE:  October 23, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:20-cv-01683-RBM-AHG