# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

IN RE PROGENITY, INC.
SECURITIES LITIGATION

Case No.:  3:20-cv-01683-RBM-AHG

**ORDER:**

**(1) GRANTING LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION [Doc. 98]; AND**

**(2) GRANTING LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES [Doc. 99]**

Pending before the Court are Lead Plaintiffs Lin Shen, Lingjun Lin, and Fusheng Lin's ("Plaintiffs") Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Motion") (Doc. 98) and Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fees Motion") (Doc. 99). On February 23, 2026, the Court held a hearing on the pending Motions.  For the reasons stated herein, Plaintiffs' Final Approval Motion and Fees Motion are **GRANTED**.

1

## I.    BACKGROUND

**A.    Factual Background**

On behalf of themselves and similarly situated investors, Plaintiffs assert claims for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k and 77o arising from Progenity Inc.'s ("Progenity") June 2020 initial public offering (the "IPO") against three groups of defendants (collectively, "Defendants"): (1) Progenity; (2) Harry Stylli, Eric d'Esparbes, Jeffrey Alter, John Bigalke, Jeffrey Ferrell, Brian L. Kotzin, Samuel Nussbaum, and Lynne Powell ("Individual Defendants"); and (3) Piper Sandler & Co., Wells Fargo Securities, LLC, Robert W. Baird & Co. Incorporated, Raymond James & Associates, Inc., and BTIG, LLC ("Underwriter Defendants," and with Individual Defendants, the "Remaining Defendants").[1]  (Doc. 91-1 at 9.)[2]

**1.    Parties**

Progenity is a biotechnology company based in San Diego, California that develops and commercializes molecular testing products and precision medicine applications, including "in vitro molecular tests designed to assist parents in making informed decisions related to family planning, pregnancy, and complex disease diagnosis."  (Doc. 64, Third Amended Class Action Complaint ["TAC"] at 7.)  At the time of the IPO, Progenity's two most successful products were its Innatal and Preparent tests, which screen for fetal chromosomal conditions and mutations that cause genetic diseases, respectively.  (*Id.*)

Individual Defendants were executives or directors of Progenity who signed, or authorized the signing of, the Registration Statement issued in connection with Progenity's IPO, "reviewed and helped prepare the Registration Statement," and "participated in the solicitation and sale of [Progenity's] common stock to investors in the IPO for their own financial benefit and the financial benefit of Progenity."  (*Id*. at 18.)

---

[1] The Court refers to Plaintiffs and the Remaining Defendants collectively as the "Parties."

[2] The Court cites the CM/ECF electronic pagination unless otherwise noted.

2

3:20-cv-01683-RBM-AHG

Underwriter Defendants are financial services companies that acted as underwriters for Progenity's IPO.  (*Id.* at 18–19; Doc. 91-1 at 9 n. 2.)  The Underwriter Defendants collectively "sold more than 6.6 million Progenity shares in the IPO at $15 per share and shared $7 million in underwriting discounts and commissions."  (TAC [Doc. 64] at 19.)

### 2.    Factual Allegations

Plaintiffs allege that Defendants made materially misleading statements in the Registration Statement issued in connection with Progenity's IPO by failing to disclose that: "(i) Progenity had overbilled government payors for its Preparent genetic tests; (ii) shortly before the IPO Progenity abandoned its key illegal marketing practice of waiving patient payment amounts; and (iii) at the time of the IPO Progenity suffered from negative trends in test volumes, test average selling prices, and revenue."  (Doc. 91-1 at 9–10.)

### B.    Procedural History

In 2020, two class actions were separately filed in this District on behalf of investors who purchased Progenity's securities in connection with the IPO.[3]  On December 3, 2020, the Court consolidated the cases, appointed Plaintiffs as co-Lead Plaintiffs, and approved Glancy, Prongay, & Murray LLP as lead counsel ("Lead Counsel" or "GPM").  (Doc. 33.)

The Court previously granted Defendants' motion to dismiss the Amended Class Action Complaint (*see* Doc. 40) and their motion to dismiss the Second Amended Complaint (*see* Doc. 52), but allowed Plaintiffs leave to amend on both occasions.  (Docs. 48, 63.)  On February 3, 2023, Plaintiffs filed the operative TAC.  (Doc. 64.)  Defendants once again filed a motion to dismiss (Doc. 67), which the Court granted with prejudice and entered judgment.  (Docs. 70–71.)

Plaintiffs appealed the Court's order dismissing the TAC on August 11, 2023.  (Doc. 72.)  On September 7, 2023, the Parties and Progenity participated in an assessment

---

[3] The cases are captioned *Soe v. Progenity, Inc., et al.*, Case No. 20-cv-01683-RBM-AHG, and *Brickman Investments Inc. v. Progenity, Inc., et al.*, Case No. 3:20-cv-01795-RBM-AHG.

3:20-cv-01683-RBM-AHG

conference with Circuit Mediator Robert S. Kaiser to explore settlement potential.  (Doc. 91-1 at 12–13.)  Although no settlement was reached during this conference, the Parties and Progenity continued to engage in settlement negotiations while briefing Plaintiffs' appeal in the Ninth Circuit.  (*Id*.)  On March 11, 2024, the Parties and Progenity reached an agreement in principle to settle the action for $1 million on a class-wide basis.  (*Id*.)  On July 3, 2024, the Ninth Circuit granted Plaintiffs' Motion for Stay of Appeal and Limited Remand (Appeal Doc. 34) and remanded the action to this Court for the limited purpose of conducting proceedings relating to the settlement.  (Doc. 75.)  Plaintiffs then filed their original motion for preliminary settlement approval on September 23, 2024.  (Doc. 77.)

On December 27, 2024, while Plaintiffs' original motion was pending, Progenity filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, which operated as an automatic stay of litigation against the debtor (*see* 11 U.S.C. § 362(a)).  (Doc. 91-1 at 13 (citing *In re: Biora Therapeutics, Inc.*, Case No. 24-12849 (Bankr. D. Del.), ECF No. 1).)  The Parties assessed the impact of Progenity's bankruptcy petition on the original settlement agreement and negotiated the instant Settlement Agreement to supersede it.  (*Id.* at 13.)  Plaintiffs withdrew their original preliminary approval motion on May 12, 2025. (Doc. 90.)  On May 13, 2025, Plaintiffs filed a renewed Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 91-1), the terms and conditions of which are set forth in the Settlement Agreement (Doc. 91-3).[4]  On October 23, 2025, the Court granted the Unopposed Motion for Preliminary Approval ("Preliminary Approval Order").  (Doc. 96.)

Plaintiffs filed the Final Approval Motion and the Fees Motion on January 20, 2026.  (Docs. 98–99.)  Plaintiffs then filed a Reply in Further Support of the Final Approval Motion and the Fees Motion on February 17, 2026.  (Doc. 101.)

---

[4]  The capitalized terms used in this Order have the same meaning as defined in the Settlement Agreement except as otherwise noted.

3:20-cv-01683-RBM-AHG

## II.    MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

A class action may not be settled without court approval, "which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)) ("*Bluetooth*").    The Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).    However, when presented with a motion for final approval, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

### A.    Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure ("Rules") 23(a) and (b).    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–22 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).    In its Preliminary Approval Order, the Court found that Plaintiffs satisfied the prerequisites for class certification under Rule 23.    (Doc. 96 at 9–16.)    The Court reaffirms and incorporates its analysis under Rules 23(a) and (b)(3) as set forth in its Preliminary Approval Order.    (*See id.*)    Accordingly, for purposes of this Settlement, the Court **CERTIFIES** the following Settlement Class:

> All persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.) pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby.

(Doc. 91-3, Stipulation and Agreement of Settlement ["Settlement Agreement"] ¶ 1(vv).)

### B.    Settlement Administration

#### 1.    Notice

The Court must also determine whether the Settlement Class received adequate notice, as it "is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025; *see* Fed. R. Civ. P. 23(e)(1).    The Court preliminarily approved the

3:20-cv-01683-RBM-AHG

method and form of the Proposed Notice.  (Doc. 96 at 27–30.)  In support of their Final Approval Motion, Plaintiffs filed the Declaration of Margery Craig, a project manager at Strategic Claims Services ("SCS" or the "Claims Administrator").  (Doc. 99-3, Decl. of Margery Craig ["Craig Decl."] ¶ 1; *see also* Doc. 101-1, Suppl. Decl. of Margery Craig ["Craig Suppl. Decl."].)  Craig recounts the Claims Administrator's actions taken to provide notice to Class Members in accordance with the Preliminary Approval Order.  (*See id*. ¶¶ 6–17 (attesting the notice process consisted of physical first-class mailings, emails, skip traces for undeliverable mailings, publication in *Investor's Business Daily*, transmission over the *PR Newswire*, a toll-free phone line, and a Settlement Website).)  Having reviewed Craig's declarations, the Court finds that Class Notice was executed in accordance with the Preliminary Approval Order and was reasonably directed to Class Members.  *See Silber v. Mabon*, 18 F.3d 1449, 1452–54 (9th Cir. 1994) (holding the "best notice practicable" requirement is satisfied by "what notice is reasonably certain to inform the absent members of the plaintiff class") (quoting *In re Victor Techs. Sec. Litig.*, 792 F.2d 862, 865 (9th Cir. 1986)); *see also* Fed. R. Civ. P. 23(c)(2)(B).  The Class Notice also satisfied the notification requirements of Rule 23, due process, the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA") (*see* Craig Decl. [Doc. 99-3] ¶¶ 3–5), and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7) ("PSLRA").

### 2.    Plan of Allocation

A plan for allocation should be "fair, reasonable and adequate."  *Class Plaintiffs*, 955 F.2d at 1284–85.  "Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Ali v. Franklin Wireless Corp.*, Case No.: 21-cv-00687-AJB-MSB, 2024 WL 5179910, at *9 (S.D. Cal. Dec. 19, 2024) (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008)).

Although it "need not be perfect," an allocation formula that has a "reasonable, rational basis" satisfies the requirement, "particularly if recommended by competent class counsel."  *Brown v. Brewer*, Case No. CV 06-3731-GHK (SHx), 2012 WL 12882380 (C.D.

Cal. Jan. 18, 2012), *order approved*, No. 2:06-CV-03731-GHK-SH, 2012 WL 12881953 (C.D. Cal. Mar. 19, 2012).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *Mauss v. NuVasive, Inc.*, Case No.: 13cv2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) (citation omitted).

Under the proposed Plan of Allocation, the Net Settlement Fund will be distributed to Class Members who submit a valid Claim Form on a *pro rata* basis.  (Doc. 98-1 at 21.) Each Authorized Claimant's share will be calculated based on their Recognized Losses divided by the total Recognized Losses of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund.  (*Id*.)

The formula for the calculation of the claims, as set forth in the Plan of Allocation, provides a fair and reasonable basis for allocating the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative convenience and necessity.  *See Baron v. HyreCar Inc.*, No. 2:21-CV-06918-FWS-JC, 2024 WL 3504234, at *9 (C.D. Cal. July 19, 2024); *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at *2, 7 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  Accordingly, the Court reaffirms its findings in the Preliminary Approval Order (*see* Doc. 96 at 21–23) and concludes that the Plan of Allocation is fair and reasonable to the Settlement Class.  The Plan of Allocation is therefore **<u>APPROVED</u>**.

**C.     Settlement Approval**

Having certified the Settlement Class, the Court must determine whether the Settlement Agreement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In its Preliminary Approval Order, the Court made an initial fairness determination under Rule 23(e)(2) and found that all the pertinent factors weighed in favor of approving the Settlement.  (*See* Doc. 96 at 16–27.)  Because no pertinent facts have changed, the Court reaffirms its prior conclusions and finds that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

3:20-cv-01683-RBM-AHG

In addition to the Rule 23(e) requirements, district courts in the Ninth Circuit traditionally consider another set of factors to determine whether the Settlement is fair, adequate, and reasonable. *See Briseño v. Henderson*, 998 F.3d 1014, 1025–26 (9th Cir. 2021) (holding the revised Rule 23(e) requires courts "to go beyond our precedent" by applying the heightened scrutiny set forth in *Bluetooth* to all class action settlements). In making this determination, courts consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth*, 654 F.3d 935 at 946–47 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). "The district court's approval order must show not only that 'it has explored [these] factors comprehensively,' but also that the settlement is 'not . . . the product of collusion among the negotiating parties.'" *Id*. (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

The Court finds that the $1,000,000 non-revisionary Settlement Amount provides adequate relief to the Settlement Class relative to Defendants' potential exposure based on the strength of the Parties' positions and the risk of further litigation. While Lead Counsel asserts they have strong arguments on appeal (*see* Doc. 98-1 at 9), the substantial risks to Plaintiffs' case are readily apparent from the Court's previous orders dismissing their complaints. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1041–42 (holding the risk of continued litigation weighed in favor of settlement approval where the plaintiffs "still faced a number of problems in actually proving their case on the merits.").

The Court also reaffirms its prior conclusion, set forth in the Preliminary Approval Order, and finds that the Settlement was achieved in the absence of collusion. (Doc. 96 at 18–19.) The Settlement resulted from serious and informed arm's length negotiations by experienced counsel, who were well-informed on the strengths and weaknesses of the case.

3:20-cv-01683-RBM-AHG

*See Bluetooth*, 654 F.3d at 948. Since 2020, Lead Counsel conducted an extensive investigation and the Parties engaged in substantial motion practice before this Court and the Ninth Circuit, adversarial settlement negotiations, and vigorous litigation. (*See* Doc. 98-1 at 23–24.)

Moreover, no Class Members filed an objection to the Settlement or requested exclusion. (*See* Craig Decl. [Doc. 99-3] ¶¶ 18–19; Craig Suppl. Decl. [Doc. 101-1] ¶ 9.) "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

Balancing the complexity, uncertainty, and delay of continued litigation against the immediacy and certainty of settlement, the Court concludes the Settlement is "fair, reasonable, and adequate." The Final Approval Motion is therefore **GRANTED**.

## III.   FEES MOTION

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941 (citations omitted). In the Fees Motion, Lead Counsel requests: (1) attorneys' fees in the amount of $250,000; (2) litigation costs and expenses in the amount of $79,409.10; and (3) PSLRA awards of $2,500 to each of the three Lead Plaintiffs. (Doc. 99-1 at 10.) The Court addresses each request in turn.

### A.   Attorneys' Fees

Under Federal Rule of Civil Procedure 23(h), any award of attorneys' fees must be reasonable. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Bluetooth*, 654 F.3d at 942. "Whichever method is chosen, courts often employ the other method as a cross-check that the award is reasonable." *In re Apple Inc.*

9

*Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). Further, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6).

Under the percentage-of-recovery method, the Ninth Circuit has determined a benchmark for a reasonable fee award is 25% of the common fund. *In re Apple*, 50 F.4th at 784. This rate is just a starting point for analysis and "similar to the lodestar, the benchmark percentage 'can be adjusted upward or downward, depending on the circumstances.'" *Id*. (quoting *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021)). Courts in the Ninth Circuit may consider "the extent to which class counsel 'achieved exceptional results for the class,' whether the case was risky for class counsel, whether counsel's performance 'generated benefits beyond the cash settlement fund,' the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 963–64).

In this case, the requested $250,000 in attorneys' fees represents a 25% benchmark of the Settlement Amount ($1,000,000). This amount represents a 0.29 negative multiplier on Lead Counsel's lodestar, which is approximately $850,081.25 as of January 8, 2026 and is based on 875.65 collective hours of work. (Doc. 99-1 at 11–12, 29–32.) In support of their lodestar analysis, Lead Counsel submitted a "table[] summarizing the amount of work each timekeeper performed at different stages of this litigation" which is "sufficient for

10

purposes of performing a lodestar cross-check." *Thomas v. MagnaChip Semiconductor Corp.*, Case No. 14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *see also Baker v. SeaWorld Ent., Inc.*, Case No.: 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *9 (S.D. Cal. July 24, 2020) ("[T]he lodestar cross-check need not be as exhaustive as a pure lodestar calculation because it only serves as a point of comparison by which to assess the reasonableness of a percentage award.") (cleaned up).

Courts in this Circuit have routinely authorized similar awards. (*See* Doc. 99-7 at 2–15 (collecting cases where courts within the Ninth Circuit awarded attorneys' fees within or above the 25% benchmark).) Accordingly, the Court finds the requested attorneys' fees are within the limit Ninth Circuit's benchmark. The Court also finds the requested attorneys' fees are within the limit originally contemplated and noticed to the potential class members.

Given the efforts expended, the results obtained for this type of high-risk case, and the compromise reached in the best interests of the class members, the Court finds the requested amount of attorneys' fees are reasonable and therefore **<u>GRANTS</u>** the award of attorneys' fees in the amount of $250,000.

**B.      Litigation Expenses**

Lead Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton*, 327 F.3d at 974. This amount "should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("*In re Media Vision*")).

Lead Counsel seeks reimbursement of $79,409.10 in expenses, which is within the maximum preliminarily approved by the Court and noticed to the Class Members. (Doc. 99-1 at 33 & n.17.) Specifically, Lead Counsel requests reimbursement of the following expenses:

//

//

3:20-cv-01683-RBM-AHG

| Expenses | Amount Paid |
|---|---|
| Appellate Filing Services, Printing, and Postage | $4,517.52 |
| Court Fees | $718 |
| Document Management Services | $6,500 |
| Document production Reimbursement and postage | $721.22 |
| Experts (accounting, damages & Plan of Allocation) | $22,424 |
| Online Research | $15,855.99 |
| Private Investigator | $27,665.98 |
| Travel airfare and hotel (Final Approval Hearing) | $1,006.39 |
| **Total:** | **$79,409.10** |

(Doc. 99-2, Decl. of Garth Spencer ¶ 120; *see* Doc. 99-12, Ex. 10 at 1–5.)

The Court finds that Lead Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation and were advanced by Lead Counsel for the benefit of the Class. Accordingly, the Court **GRANTS** the request for reimbursement of litigation costs and expenses in the full amount of $79,409.10.

**C. PSLRA Awards**

Plaintiffs also seek $2,500 for each of the three Lead Plaintiffs. *See* 15 U.S.C. § 77z-1(a)(4). The PSLRA authorizes the Court to award class representatives "reasonable costs and expenses (including lost wages) that were directly related to their role in representing the class. 15 U.S.C. § 78u-4(a)(4). In common fund cases, named plaintiffs may also be granted "reasonable incentive payments" in addition to reimbursement for their "litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel." *Staton*, 327 F.3d at 977 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)). Courts have granted incentive awards of $10,000 or more to individuals who carry out litigation efforts on behalf of absent class members. *See In re Illumina, Inc. Sec. Litig.*, Case No.: 3:16-cv-3044-L-MSB, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in incentive award to one plaintiff and $1,000 to remaining two

3:20-cv-01683-RBM-AHG

plaintiffs); *In re Stable Rd. Acquisition Corp.*, Case No. 2:21-CV-5744-JFW(SHKx), 2024 WL 3643393, at *16 (C.D. Cal. Apr. 23, 2024) (granting $10,000 to Lead Plaintiff); *Davis v. Yelp, Inc.*, Case No. 18-cv-00400-EMC, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (granting $15,000 to Lead Plaintiff).

In this action, Lead Plaintiffs actively participated in, and made significant contributions to, this litigation for a period of over five years. (*See* Doc. 99-8, Decl. of Lead Plaintiff Lin Shen ¶¶ 4–6; Doc. 99-9, Decl. of Lead Plaintiff Lingjun Lin ¶¶ 4–6; and Doc. 99-10, Decl. of Lead Plaintiff Fusheng Lin ¶¶ 4–6.) Each Lead Plaintiff devoted significant time, effort, and resources to litigating on behalf of the Settlement Class and protecting the Settlement Class's interests. Additionally, the lack of objections to the proposed PSLRA awards also supports their reasonableness. *See Khoja v. Orexigen Therapeutics, Inc.*, Case No.: 15-cv-00540-JLS-AGS, 2021 WL 5632673, at *11 (S.D. Cal. Nov. 30, 2021). For these reasons, the Court finds the PSLRA awards to the Lead Plaintiffs are appropriate. Accordingly, the Court **GRANTS** the request for service awards and awards $2,500 to each Lead Plaintiff for a total of $7,500.

## IV.   CONCLUSION

For the reasons stated in this Order, as well as in the Court's Preliminary Approval Order (*see* Doc. 96), Plaintiffs' Final Approval Motion (Doc. 98) and Plaintiffs' Fees Motion (Doc. 99) are **GRANTED**. The Court further **ORDERS** as follows:

1. **Incorporation of Settlement Documents**. This Order incorporates by reference: (a) the Court's Preliminary Approval Order (Doc. 96); (b) the Settlement Agreement (Doc. 91-3), as well the definition of words and terms contained therein; and (c) the Plan of Allocation (Craig Decl., Ex. D [Doc. 99-3] at 29–30).

2. **Final Certification of a Settlement Class**. Subject to the exceptions in section 1(vv) of the Settlement Agreement (*see* Doc. 91-3 at 17), the Court **CERTIFIES** the following Settlement Class: all persons and entities that purchased or otherwise acquired the common stock of Progenity, Inc. (n/k/a Biora Therapeutics, Inc.)

13

pursuant and/or traceable to Progenity's initial public offering Registration Statement and were damaged thereby.

3. **Notice**.  The Court finds the forms and methods of notifying the Settlement Class of the Settlement and its terms and conditions satisfied the requirements of Rule 23, the United States Constitution (including the Due Process Clause), CAFA, to the extent applicable to the instant action, the PSLRA, 15 U.S.C. § 77z-1, as amended, and all other applicable law and rules.

4. **Approval of Plan of Allocation**.  The Court hereby finds that the proposed Plan of Allocation is a fair and reasonable method to allocate the Net Settlement Fund among Settlement Class members.

5. **Final Settlement Approval**.  The Court finally **APPROVES** the Settlement Amount of $1,000,000 as a non-reversionary settlement payment to settle and resolve all claims in the action by or on behalf of the Settlement Class.  The Court therefore **DIRECTS** the Parties and the Claims Administrator to effectuate the Settlement according to its terms and conditions.

6. **Binding Effect**.  The terms of the Settlement Agreement and this Order are binding on the Remaining Defendants, Lead Plaintiffs and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns.

7. **Reasonable Modifications**.  The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments or modifications of the Settlement Agreement that: (i) are not materially inconsistent with this Order, and (ii) that do not limit the rights of Class Members under the Settlement.  Without further order of the Court, Lead Plaintiffs and the Remaining Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

14

3:20-cv-01683-RBM-AHG

8. **Award of Attorney Fees and Expenses**.  The Court finally **APPROVES** Glancy, Prongay, & Murray LLP as adequate Lead Counsel and **AWARDS** Lead Counsel $250,000 in attorneys' fees and $79,409.10 in litigation expenses.

9. **Appointment and Compensatory Award to Lead Plaintiffs**.  The Court finally **APPROVES** Lead Plaintiffs Lin Shen, Lingjun Lin, and Fusheng Lin as adequate Class Representatives and **GRANTS** PSLRA awards of $2,500 for each Lead Plaintiff, for a total of $7,500.

10. **Retention of Jurisdiction**.  Without affecting the finality of this Final Approval Order, the Court **RETAINS JURISDICTION** over the implementation, administration, and enforcement of this judgment and the Settlement.

11. **Dismissal of Claims**.  This action and all released claims set forth in the Settlement Agreement are **DISMISSED WITH PREJUDICE**.  The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Settlement.

12. **Entry of Final Judgment**.  This Order constitutes a Final Judgment and separate document pursuant to Federal Rules of Civil Procedure 54 and 58(a).

**IT IS SO ORDERED.**

DATE:  March 4, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:20-cv-01683-RBM-AHG